IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| RANDALL SCARBOROUGH | * | |
| | * | CIVIL ACTION NO. |
|    Plaintiff | * | |
| | * | 6:12-cv-00396-RFD-CMH |
| VERSUS | * | |
| | * | Judge Rebecca F. Doherty |
| INTEGRICERT, LLC | * | Magistrate Judge C. Michael Hill |
| | * | |
|    Defendant | * | JURY TRIAL DEMANDED |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON VALIDITY OF U.S. PATENT NOS. 6,848,322 AND 7,284,447**

In support of his Motion for Partial Summary Judgment of Validity related to U.S. Patent No. 6,848,322 and U.S. Patent No. 7,284,447, and pursuant to Local Rule 56.1, Plaintiff Randall Scarborough ("Scarborough") provides the following statement of material facts that are not genuinely[1] in dispute.

1. Scarborough has asserted that Defendant IntegriCert, LLC infringes at least Claims 1-4 and 7-12 of U.S. Patent No. 6,848,322 ("the '322 Patent") and Claims 1, 6-12, 14, 15, 18-23 and 26-31 of U.S. Patent No. 7,284,447 ("the '447 Patent"). Doc. No. 31.

2. In response to Scarborough's claims for infringement, IntegriCert has asserted that the '322 Patent and the '447 Patent are invalid. Doc. No. 37 at 4.

---

[1] "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Sant v. United States*, 896 F. Supp. 639, 640 (W.D. La. 1995).

6:12-cv-00396-RFD-CMH                                                                                                                                                                        1
Plaintiff's Memorandum in Support of
Motion for Summary Judgment on Validity

3. The United States Patent and Trademark Office has considered all of the prior art asserted by IntegriCert and has determined both the '322 Patent and the '447 Patent to be valid despite that prior art.

4. Scarborough is the inventor and owner of the '322 Patent and the '447 Patent.

5. The patents-in-suit relate to methods and apparatuses for testing the integrity of welds used to attach lifting points, referred to as pad eyes or lifting lugs, to structures intended to be lifted.

6. After answering the Complaint, IntegriCert filed a proposed Motion for Partial Summary Judgment on Invalidity of the '322 Patent, as part of a motion for leave to file excess pages. Doc. No. 26.

7. Before this Court could hear IntegriCert's Motion for Partial Summary Judgment on Invalidity of the '322 Patent, IntegriCert filed requests for reexamination of both patents with the United States Patent and Trademark Office ("USPTO").

8. The USPTO granted IntegriCert's requests for reexamination and has now concluded its review of both patents and issued a certificate of reexamination for each. Exhibit A to the Declaration of Holly Barnes includes the reexamination certificate for the '322 Patent. Exhibit B includes the reexamination certificate for the '447 Patent.

*Original Patent Prosecution*

9. On February 12, 2003, Scarborough filed the patent application that eventually became the '322 Patent. Exhibit A. Scarborough also filed a continuation-in-part of that first application, which eventually issued as the '447 Patent. Exhibit B.

10. During the prosecution, all but one of the independent claims of the '322 Patent were initially rejected by the USPTO as being anticipated under 35 U.S.C. § 102 by a prior patent issued to Gram in 1984. May 6, 2004 Office Action, Exhibit C at 2. The remaining independent claim was rejected as obvious under 35 U.S.C. § 103 in light of the Gram patent combined with a 1976 patent to Hoyt. *Id.* at 3.

11. Scarborough distinguished those prior patents and explained to the examiner that his invention was specific to the non-destructive testing of the attachment weld connecting a pad eye to a device to be tested. Response to Non-final Rejection, Exhibit D at 9. Scarborough successfully argued to the examiner that the Gram patent was directed to a testing method where a test specimen is removed from the test subject and is placed inside the testing device, whereas Scarborough's claims are related to non-destructive testing that is done "substantially external to the testing apparatus" to provide a pulling force on the test piece. *Id.*

12. Scarborough pointed out to the examiner that his

    invention does not require the removal of the object to be tested, rather [Scarborough's] invention attaches to the pad eye or lug to be tested in an external fashion such [that] the pad eye or lifting lug is not placed into the internal mechanisms of [Scarborough's] invention in order to be tested and does not preferably damage or destroy the testing piece.

    *Id.* at 10.

13. The examiner determined that the Hoyt reference, which relates to pull testing of an anchor embedded in the ground, was not sufficient to overcome the deficiencies in Gram. *Id.* at 10-11. Immediately following Scarborough's response to the office

action, the examiner issued a notice of allowance, and the '322 Patent was issued on February 1, 2005. Exhibits E and A.

14. Several claims of the application for the '447 patent were initially rejected by the USPTO. *See* June 1, 2006 Office Action, Exhibit F. The examiner rejected claims 1 and 31-32 "under 35 U.S.C. § 102 as being anticipated by Hodo et al." and rejected claims 3-5, 7-15 and 33 because they were dependent upon a rejected claim. Exhibit F at 2-3. The examiner determined that Claims 16-30 were allowable as originally filed. *Id.*

15. Scarborough successfully argued to the examiner that the meaning of "non-destructive" in the context of the claims prevents "substantial disassembly of the piece to be tested," in contrast to prior art references, like Hodo, that necessarily destroy the test piece. Response to Non-final Rejection, Exhibit G at 12.

16. The examiner accepted Scarborough's arguments with respect to the prior-art cited in the first office action on the '447 Patent but declared them moot in light of a new reference cited by the examiner. Final Rejection, Exhibit H at 4. The examiner cited a patent to Tiegel as disclosing the elements of claims 1-2 of the '447 patent. *Id.* at 3.

17. Scarborough distinguished Tiegel as requiring a "shear force," which is functionally different from the tensioning claimed by Scarborough. Response to Final Rejection, Exhibit I at 11.

18. Following an advisory action stating that Scarborough's claim 1 would not be allowed as written, Scarborough amended claim 1 to incorporate the limitations

from dependent claim 10, thereby adding limitations related to a base, bracket and clamp. Amendment after Advisory Action, Exhibit J at 2, 11. The USPTO issued a notice of allowance in response to the amendment, and the '447 Patent was issued. Exhibit K and Exhibit B.

*Reexamination*

19. IntegriCert's request for *ex parte* reexamination asked the USPTO to invalidate five claims of the '447 Patent and all claims of the '322 Patent alleging that "each is invalid under either *35 U.S.C. § 102 or 35 U.S.C. § 103.*" Exhibit L at 1 and Exhibit M at 1 (emphasis in the original).

20. IntegriCert provided the USPTO with a detailed explanation of IntegriCert's position regarding both obviousness and anticipation of the claims it asserted to be invalid. *See, e.g.,* Exhibit L at 4-15 (Claim chart and IntegriCert's arguments under 35 U.S.C. § 102 and § 103 related to Claim 1).

21. The USPTO accepted IntegriCert's assertion that a substantial new question of patentability existed with respect to both patents and ordered that they be reexamined in light of the prior art provided by IntegriCert. Office Action Granting Reexamination of the '447 Patent, Exhibit N. In its order granting reexamination, the USPTO adopted IntegriCert's explanation of the prior art and accompanying claims charts. Exhibit N at 8.

22. IntegriCert provided the following prior art to the USPTO that it asserted as invalidating the '447 patent:

    U.S. Patent No. 5,548,997 to Bauer

      U.S. Patent No. 3,738,163 to McEntire
      U.S. Patent No. 4,584,881 to Hogan
      U.S. Patent No. 6,095,498 to Lemoine
      U.S. Patent No. 3,595,072 to Richards
      U.S. Patent No. 2,763,149 to Long
      U.S. Patent No. 3,203,231 to Klatchko
      U.S. Patent No. 3,377,847 to Aske
      U.S. Patent No. 5,361,639 to Thorsen
      U.S. Patent No. 6,167,764 to Calhoun
      U.S. Patent No. 4,475,404 to Rutledge
      U.S. Patent No. 5,948,994 to Jen
      U.S. Patent No. 4,478,086 to Gram
      U.S. Patent No. 3,994,158 to Weinhold
      U.S. Patent No. 5,587,537 to Simmons
      U.S. Patent No. 2,884,986 to Heldenbrand
      U.S. Patent No. 1,861,345 to Brown

23. IntegriCert identified the same patents as relevant to the reexamination of the '322 Patent, with the addition of the following patents:

      U.S. Patent No. 3,690,160 to Kriesten
      U.S. Patent No. 4,606,225 to Thomason
      U.S. Patent No. 2,431,295 to Eksergian
      U.S. Patent No. 4,353,190 to Gleeson
      U.S. Patent No. 5,437,191 to Dripke

Exhibit L.

24. The USPTO ordered that the '322 Patent be reexamined as well, again adopting IntegriCert's statement of the prior art. Exhibit O at 6. The USPTO found that, of the art provided by IntegriCert, the references to Bauer, McEntire, Lemoine, Hogan, Simmons and Richards, "either alone or in view of others" were the most relevant in the USPTO's determination that a substantial new question of patentability existed. Exhibit N at 8 and Exhibit O at 6 (relying on IntegriCert's claim charts, referred to as "item matching").

25. Just as in the original prosecution, during both reexaminations, the claims were initially rejected. S*ee* Exhibit P, Dec. 19, 2013 Office Action Rejecting Claims 1, 14, 15, 27 and 29[2] of the '447 Patent and Exhibit Q, April 9, 2014 Office Action Rejecting Claims 1-21 of the '322 Patent.

26. None of the prior art references submitted by IntegriCert discloses the use of a pulling force to non-destructively test weld strength and integrity of an attachment weld.

27. The patent examiner stated that "none of the references of record teach or suggest an apparatus for non-destructive[ly] testing weld strength and integrity of at least one attachment weld including an attachment structure for attaching to a pad eye or other device joined by the at least one attachment weld" as in Claim 1 of the '447 Patent. Exhibit R, Sept. 5, 2014 Office Action on the '447 Patent at 3; *See also*, Exhibit S, Sept. 5, 2014 Office Action on the '322 Patent at 3 (finding that no references of record teach the apparatus or method in claims 1, 13, 20 and 21 of the '322 Patent).

*Certificates of Reexamination*

28. On December 24, 2014 and January 13, 2015, the USPTO issued certificates of reexamination for the '322 Patent and the '447 Patent, respectively. Exhibits A and B. With respect to the '322 Patent, claims 1, 2, 7, 8, 10-17 and 20-21 were found "patentable as amended," and the remaining claims "3-6, 9, 18 and 19, dependent on an amended claim, are determined to be patentable." Exhibit A.

---

[2] Scarborough elected to cancel Claim 29 during the reexamination.

29. Claim 1 of the '322 Patent is representative of the non-substantive amendment made to the claims and now reads as follows (underlined text represents additions to the claim and deleted text is struck through):

> 1. An apparatus for testing the weld strength and integrity of an <u>attachment</u> weld, comprising:
>
> a framework including a base, top, and side pieces;
> at least one fluid containing cylinder, mounted with the framework, for moving a piston therein inwardly and outwardly as fluid is moved out or in respectively; and
> structure for releaseably or permanently attaching to a pad eye, <u>lifting lug</u> or ~~any~~ other device ~~to be tested~~ <u>joined by the attachment weld to another structure;</u>
> whereby moving fluid into the cylinder causes the piston to move outwardly to tension the pad eye, <u>lifting lug or other device</u> to ~~testing~~ <u>test</u> the integrity of the ~~welding~~ <u>attachment weld</u> in a non<u>-</u>destructive manner.
>
> The '322 Patent Reexam. Certificate, Exhibit A at 1:23-36.

30. The amendments to the claims are limited to clarifying that the weld referenced is an attachment weld for joining a pad eye, lifting lug or other device to a structure to be lifted. Exhibit U at 8 ("Patentee believes that no new matter has been added by these amendments and the claims' scope remains substantially identical, if not actually identical, because the amended claim language inherently reflects how the original claims should have been construed").

31. The '322 Patent's claims were limited to testing the integrity of attachment welds even before the reexamination. *See e.g.*, the '322 Patent, Exhibit A at Abstract and at 1:6-8 ("The present apparatus relates, generally, to nondestructive testing of

weld integrity and strength in the <u>attachment weld</u> of pad eyes and other lifting lugs").

32. IntegriCert argued during claim construction that the '322 Patent and the '447 Patent are limited to testing weld strength and integrity of an attachment weld joining a pad eye or lifting lug to another structure: "This phrase appears to uniformly refer (in both the '322 and '447 patents) to that weld attaching a pad eye, lifting lug or 'any other device to be tested' to its substrate, e.g. that 'heavy equipment' referred to by the '447 patent's specification." Doc. No. 66 at 28.

***IntegriCert has no additional Prior Art.***

33. Every one of the prior art references submitted by IntegriCert to the USPTO was included in IntegriCert's Proposed Motion for Summary Judgment on Invalidity. *See* IntegriCert's Memo. in Support of Partial MSJ at Doc. No. 26-5.

34. IntegriCert has not identified any other prior art it contends would be more relevant to the validity of either the '322 Patent or the '447 Patent than what it has already submitted.

35. In response to Scarborough's interrogatories and requests for production seeking any information supporting IntegriCert's defense of invalidity, IntegriCert referred back to the materials it submitted to the USPTO in its requests for reexamination:

> Plaintiff is respectfully directed to those materials submitted to the United States Patent and Trademark Office in the course of application nos. 90/012,842 (concerning the '447 patent) and 90/012,840 (concerning the '322 patent), in particular documents coded "RXOSUB.R" and the patents cited therein, for the '447 patent; and "RXOSUB.C" and the patents cited therein, for the '322 patent. All documents referred to are publicly available from the USPTO's Patent Application Information Retrieval system.

IntegriCert's Supplemental Discovery Responses, attached as Exhibit T, at Interrogatory No. 4 and Request for Production 3 and 4.

36. IntegriCert has no prior art beyond that which has already been considered by the USPTO.

### IntegriCert's Prior Art

**1. U.S. Patent No. 5,548,997 to Bauer**

37. IntegriCert argued both to this Court and the USPTO that U.S. Patent No. 5,548,997 to Bauer "contains each and every element recited in" Claims 1-4, and 7-20 of the '322 Patent and claims 1, 14, 15, and 27 of the '447 Patent.

38. IntegriCert concedes that the Bauer patent is related to a device "for the testing of a valve stem under desired operating load conditions." IntegriCert Reexam Request, Exhibit C at 9; Exhibit D at 4.

39. Bauer fails to describe any reference to an "attachment weld," much less "testing the integrity of the attachment weld." In fact, the term "weld" is not found in the Bauer patent.

40. Bauer fails to disclose a piston or shaft in a cylinder that moves or exerts a force along an axis substantially perpendicular to the tested weld. Instead, Bauer teaches a force applied axially or in parallel to a valve stem being tested.

**2. U.S. Patent No. 3,738,163 to McEntire**

41. According to IntegriCert, the McEntire patent "discloses a device for testing dead man anchors embedded in the earth by employing a substantial force at the desired angle for the particular anchor of interest." Exhibit C at 9.

42. McEntire describes pulling upon an anchor to see if it will remain in the ground. McEntire does not contain any references to any kind of weld, nor does it contain any disclosure of "an apparatus for testing the weld strength and integrity of an attachment weld."

### 3.  U.S. Patent No. 4,584,881 to Hogan

43. The Hogan patent discloses a device for testing a weld connecting two adjacent lugs in an interior battery partition. Those lugs are spaced apart on vertical surfaces, and a first portion of the device engages the top surface of one of the lugs to hold it down, while a second portion of the device is clamped onto the second lug. A predetermined, upward force is exerted upon the second lug, intended to shear off the weld if it is of poor strength or fail to move the weld if it is strong.

44. Hogan does not disclose testing of an attachment weld that attaches a pad eye, lifting lug or other device to another structure to be lifted. The lugs in the Hogan patent are not the "lifting" lugs or pad eyes described and claimed in the Scarborough patents but are instead a connection between a wire and a battery's positive or negative adaptors.

45. The Hogan lugs are welded together for electrical conductivity rather than for structural support.

46. The Hogan patent fails to disclose the piston and cylinder arrangement of Scarborough's claims.

### 4. U.S. Patent No. 6,095,498 to Lemoine

47. Lemoine relates to a device and method for pulling elongated objects such as stakes, pins and spikes from another object.

48. IntegriCert characterizes Lemoine as disclosing "an apparatus for pulling an elongated first objected [sic] embedded in a second object." Exhibit C at 9. Lemoine does not include any references to a "weld" or to "testing the integrity of" a weld.

### 5. U.S. Patent No. 3,595,072 to Richards.

49. The Richards patent describes a device for testing the strength, cure and structure of concrete by pulling a test member that was previously buried in a concrete slab. Richards pulls up on the test member, thereby applying a force on the concrete from below, to test a conical section of the concrete.

50. IntegriCert concedes that the Richards device is used "to apply a desired test load [to a] test piece embedded in concrete." Exhibit C at 23. Richards fails to make any reference to a weld or any device used to test an attachment weld in a non-destructive manner.

### 6. U.S. Patent No. 5,587,537 to Simmons

51. IntegriCert describes the Simmons patent as disclosing a device "to tension test a cable butt weld non-destructively." Exhibit C at 10.

52. The weld disclosed in Simmons is not an attachment weld of the type claimed by Scarborough, nor is the testing disclosed by Simmons "non-destructive."

53. Simmons relates to a device for testing the quality of a weld in an elongated object" by first pressing the ends of a cable together, welding them together, and pulling the strands apart to evaluate the elongation of the weld.

54. Simmons only tests a portion of an object prior to assembly, rather than an entire, intact object.

### 7. IntegriCert's remaining references asserted for obviousness

55. In addition to asserting invalidity under 35 U.S.C. § 102, IntegriCert argued to the USPTO that the claims of both the '322 Patent and the '447 Patent were invalid as obvious under 35 U.S.C. § 103. *See e.g.*, Exhibit C at 3-9 and Exhibit D at 2-4.

56. Scarborough overcame those rejections before the USPTO.

57. No combination of the prior art references relied upon by IntegriCert discloses each and every element of any one of Scarborough's claims.

58. There is no evidence that would suggest that a person of ordinary skill in the art would endeavor to combine the asserted by IntegriCert.

59. IntegriCert argued to the USPTO that the Kriesten patent (U.S. Patent No. 3,690,160), when combined with one or more of the above references, would have made certain claims of the '322 Patent obvious.

60. IntegriCert has not argued that the Kriesten reference anticipates the Scarborough patents, but instead has used the reference in an attempt to create an argument that Kriesten supplies the missing elements of McEntire, Bauer, Simmons, Lemoine and/or Hogan to invalidate Claim 5 of the '322 Patent. Exhibit C at 5, 40-41.

61. Claim 5 is dependent upon Claim 1 but adds the limitation, "wherein said bridge plate or cross bar can be curved." Exhibit A at 10:3-4. IntegriCert alleged to the USPTO that Kriesten supplied the limitation that a bridge plate or cross bar can be curved, but IntegriCert did not identify any additional elements alleged to be met by Kriesten that are not included in the prior art supplied by IntegriCert. Exhibit C at 40.

62. Kriesten relates to an apparatus for testing blades of a turbine and does not reference any kind of weld or any device for testing a weld. It fails to describe the "pulling" force required by the claims of the Scarborough patents because it teaches a compressive force instead.

63. Kriesten does not overcome the shortcomings in the cited prior art, nor has IntegriCert argued as such. The same is true of the additional obviousness references submitted by IntegriCert.

64. The USPTO found that none of those additional references was relevant to the patentability of either the '322 Patent or the '447 Patent. *See* Exhibit N and Exhibit O.

65. The prior art references asserted by IntegriCert, alone or in combination, do not contain each and every element of any claim of the '322 Patent or the '447 Patent.

66. IntegriCert is not in possession of any evidence regarding the validity of the '322 Patent aside from that presented to the USPTO in IntegriCert's request for reexamination.

67. IntegriCert is not in possession of any evidence regarding the validity of the '447 Patent aside from that presented to the USPTO in IntegriCert's request for reexamination.

DATED: February 5, 2015

RESPECTFULLY SUBMITTED,

**MATTHEWS LAWSON McCUTCHEON & JOSEPH, PLLC**
*/s/Holly H. Barnes*
Holly H. Barnes
Texas Bar No. 24045451
Guy E. Matthews
Texas Bar No. 1320700
2000 Bering, Suite 700
Houston, Texas 77057
Telephone: (713) 355-4200
Facsimile: (713) 355-9689
Email: hbarnes@matthewsfirm.com
Email: gmatthews@matthewsfirm.com

and

**DOMENGEAUX, WRIGHT, ROY, EDWARDS & COLOMB, LLC**
*/s/ Elwood Stevens*
Bob F. Wright (La. Bar #13,691)
Elwood C. Stevens, Jr. (T.A.)
(La. Bar #12,459)
P. O. Box 3668
Jefferson Towers, Suite 500
556 Jefferson Street
Lafayette, LA 70501-3668
Telephone: (337) 233-3033
Facsimile: (337) 232-8213
Email: bobw@wrightroy.com
Email: elwoods@wrightroy.com
*ATTORNEYS FOR PLAINTIFF, RANDALL SCARBOROUGH*