IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE/OPELOUSAS DIVISION

| | | |
|---|---|---|
| **RANDALL SCARBOROUGH** | * | **CIVIL ACTION NO.: 6:12-cv-00396** |
| Plaintiff | * | |
| | * | **JUDGE REBECCA F. DOHERTY** |
| **VERSUS** | * | |
| | * | |
| **INTEGRICERT, LLC** | * | **MAGISTRATE JUDGE HILL** |
| Defendant | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM
FOR MARKMAN CLAIM CONSTRUCTION**

**Now into Court**, through undersigned counsel, comes Defendant, **IntegriCert, L.L.C.**, and submits this supplemental memorandum on Markman claim construction as ordered at hearing on April 22, 2015 (Rec. Doc. 131).

**I. Court must construe the scope of claims before and after they were amended during reexamination**

Plaintiff Scarborough has asserted that original Claims 1-21 of the '322 Patent and original Claims 1, 14, 15, and 27 of the '447 survived reexamination without a substantive change and thus is asserting the scope of these claims are the same both before and after reexamination. In order to determine whether Plaintiff's assertions are supported, the Court's Markman consideration must include a construction of these claims as they existed both before and after reexamination. *En Liung Huang v. Auto Shade, Inc.*, 945 F.Supp. 1307, 65 USLW 2400, 41 U.S.P.Q.2d 1053 (C.D.Cal.,1996); *Huang v. Autoshade*, 950 F.Supp. 1016

(C.D.Cal.,1997); *Abbey v. Bill Ussery Motors, Inc.*, 74 F.Supp.2d 1217 (S.D.Fla.,1999); *Krippelz v. Ford Motor Co.,* 2004 WL 1576697, Markman 1576697 (N.D.Ill.,2004)

**II. Additional claim terms requiring construction.**

**The '322 Patent**

During reexamination of the '322 Patent Claims 1-21 were rejected as being unpatentable over the cited prior art.[1] In response Scarborough amended Claims 1, 2, 7, 8, 10, 11-17, 20-21, made arguments for allowance of the rejected claims, and requested reconsideration.[2] After the claim amendments were entered into the record and considered, the Patent Office subsequently issued an Ex Parte Reexamination Certificate for the '322 Patent.[3]

In light of the amendments made during reexamination, Defendant requests that the following claims terms from original claims 1-21 of '332 patent be construed: "weld"; "pad eye or any device to be tested"; "welding" and the following claim terms from amended claims 1-21 arising out the Reexamination Proceeding: "attachment weld"; "pad eye, lifting lug or other device joined by the attachment weld to another structure".

The claims of the original and the reexamined patents must be interpreted in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information. However, it is impermissible to import limitations from the written description into the claims as it is the *claims,* not the written description, which define the scope of the patent right.[4]

---

[1] Rec. Doc. 107-18.
[2] Rec. Doc. 107-22.
[3] Rec. Doc. 128-1.
[4] *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 49 U.S.P.Q.2d 1199 (C.A.Fed. (La.),1998)

Plaintiff argues that the disputed terms in the claims of the original and the reexamined patents should be interpreted as having substantially the same meaning and points to language in specification as evidenced of his intent all along that the scope of the claims in the '322 Patent be limited to an "attachment weld". As Plaintiff argued at hearing, "the weld that we're talking about testing has always been an attachment weld. It's always been inherent in the claim language from the very beginning. In fact, in the prosecution history of the very original patent, Mr. Scarborough described the attachment weld in the 447 Patent (sic) as being the focus of his invention. And I have a slide for that later. The same things are true of the 447 Patent."[5]

However, Plaintiff's statement of intent is not relevant to the issue of claim construction that must be made in view of Markman because, as has been noted, the claims are not limited by the written description contained in the specification.  Further, the facts belie Plaintiff's assertion that his original intent, as evidenced by the specification, was to limit the scope of the claims to "attachment weld" rather than any "weld" or "any device to be tested".

The specification usually contains an abstract, a description of the field of the invention, background on the invention, a summary of the invention, a detailed description of the invention, drawings, and lastly, the claims.[6] While the specification may indicate that certain embodiments are preferred, the mere repetition in the written description of a preferred aspect of a claimed invention does not limit the scope of an invention that is described in the claims in different and broader terms.[7]

The first sentence of the Abstract of the '322 Patent describes "*An apparatus and method for testing weld integrity is disclosed which is portable, self-contained, adaptable for field use in*

---

[5] Transcript of Proceedings of April 22, 2015, p. 20; Rec. Doc. 132.
[6] Takeda Pharmaceutical Co. Ltd. v. Mylan, Inc., 2012 WL 4832813 (S.D.N.Y. 2012); *35 U.S.C. §112*
[7] *Laitram*, *supra.*

*most locations, and can verify the integrity of attachment welds.*"[8] This first sentence of the Abstract merely states the general purpose of the apparatus as a weld testing device and then states a specific use of testing weld integrity. There is nothing in this statement that shows Plaintiff had a clear intent to test only attachment welds. The general purpose of the Plaintiff's invention is borne out by the concluding sentences of the Abstract which state "*As the fluid pressure increases the cylinder shafts extract or retract and exert a required load* **on the test piece**. *The* **test piece is then inspected for breakage or damage** *such as deformation or attachment weld cracking.*" Plaintiff makes a clear distinction between the "test piece" and its "attachment weld".

The distinction between the "test piece" and its "attachment weld" is further emphasized in the original claims which, as the abstract, are also part of the specification and may satisfy the written description requirement. [9] For example, during the prosecution of the original application giving rise to the '322 Patent, original claim 21 of that application contained the following limitations:

> *increasing said force by increasing the pressure of the pressurized fluid in the cylinder;*
> *increasing the pressure until the calculated required pressure is reached; and*
> *inspecting the test piece and its attachment weld for any structural damage or deformation;*
> *whereby increasing said force by increasing the pressure of the pressurized fluid in the cylinder is non-destructive in nature.*

When original Claim 21 was rejected due to the cited prior art, Plaintiff amended Claim 21 to add a concluding limitation that read "*whereby increasing said force by increasing the*

---

[8] Rec. Doc. 107-3.
[9] *Crown Packaging Technology, Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 98 U.S.P.Q.2d 1244 (C.A. Fed (Ohio) 2011); *Application of Armbruster*, 512 F.2d 676 (1975)

4

*pressure of the pressurized fluid in the cylinder is non-destructive in nature*". The amendments to original Claim 21 did not change its reference to testing and inspecting both the "test piece" and "its attachment weld" and nowhere in the original prosecution did Plaintiff argue that Claim 21 was limited to testing and inspecting only the attachment weld.[10]

Similarly, original Claim 1 of the '322 Patent read as follows:

> 1. An apparatus for testing the weld strength and integrity of an attachment weld when desired comprising:
> a framework including a base, top, and side pieces;
> at least one fluid containing cylinder, mounted with the framework, for moving a piston therein inwardly and outwardly as fluid is moved out or in respectively; and
> an attachment structure for attaching to a pad eye or any device to be tested;
> whereby moving fluid into the cylinder causes the piston to move outwardly to tension the pad eye then thereby testing the integrity of the weld.

After original Claim 1 was rejected in view of the then cited prior art, Claim 1 was amended and issued as follows:

> 1. (Currently Amended) An apparatus for testing the weld strength and integrity of ~~an attachment~~ weld ~~when, desired~~ comprising:
> a framework including a base, top, and side pieces;
> at least one fluid containing cylinder, mounted with the framework, for moving a piston therein inwardly and outwardly as fluid is moved out or in respectively; and
> ~~an attachment~~ structure for <u>releaseably or permanently</u> attaching to a pad eye or any device to be tested;
> whereby moving fluid into the cylinder causes the piston to move outwardly to tension the pad eye <u>to</u> ~~then thereby~~ testing the integrity of the weld<u>ing in a non destructive manner</u>.

Note that Plaintiff amended the preamble of Claim 1 to remove the term "attachment" as

---

[10] File Wrapper of Original Application for '322 Patent, Exhibit A.

5

a modifier of "weld" and amended the body of the claim to change the term "weld" to "welding". Plaintiff never stated or argued that this version of Claim 1 or any of the other claims of the '322 Patent that issued were limited only to "attachment welds". The amendment to remove "attachment" from the preamble certainly indicates Plaintiff's intent to the contrary.

From these examples it can be seen that the scope of the claims of the '322 Patent that originally issued were not limited to "attachment welds" per se and it was not Plaintiff's intent to have them so limited.

**The '447 Patent**

Reexamination of Claims 1, 14, 15, 27, and 29 of the '447 Patent was requested and granted by the Patent Office. During that reexamination Claims 1, 14, 15, 27, and 29 were rejected as being unpatentable over the cited prior art.[11] In response Plaintiff cancelled Claim 29, and made arguments for allowance of Claims 1, 4, 15, and 27 without amendment. These arguments were rejected and Final Action was made. In that action the Examiner noted in part[12]:

> With respect to Patent Owner's argument that to Bauer relates to "valve stem" and not "pad eyes", the instant claims recite "*an attachment structure for attaching to a pad eyes or any device to be tested*" which do not require the attachment structure be attached only to the pad eyes but also to **"any device to be tested"**; therefore, Patent Owner's argument that Bauer's testing of the valve stem (i.e. device to be tested) is not analogous to pad eyes is irrelevant.

Plaintiff then amended Claims 1, 4, 15, and 27, made arguments for allowance of the rejected claims, and requested reconsideration.[13] After the claim amendments were entered into the

---

[11] Rec. Doc. 107-17.
[12] Rec. Doc. 155-3.
[13] Rec. Doc. 107-23.

record and considered and the Patent Office subsequently issued an Ex Parte Reexamination Certificate for the '447 Patent.[14]

In light of the amendments made during reexamination, Defendant requests that the following claims terms from original claims 1, 4, 15, and 27 of the '447 Patent be construed: "weld"; "pad eye or any device to be tested"; "test piece" and the following claim terms from amended claims 1, 4, 15, and 27 of the '447 Patent arising out the Reexamination Proceeding: "attachment weld"; "pad eye, lifting lug or other device joined by at least one attachment weld to another structure"; "test piece", and "joining the pad eye to another structure".

The prosecution history of the '447 Patent as originally issued further shows that the claims of the '447 Patent were not limited to attachment welds as Plaintiff now argues to the Court.[15] In response to rejection of original Claims 1, 31 and 32, the Plaintiff noted:[16]

> Applicant respectfully submits that as per amended Claims 1, 31, and 32, it is clear that the Applicant's device is for non-destructively testing the weld strength. Further, the Applicant's device is erected at the site of the test piece and does not require any substantial disassembly of the piece to be tested. Typically the test piece, which is to be tested by the Applicant's device, is a part of a carrying apparatus which is to be lifted to transport some material from one location to another (such as from the ground to an elevated position or from the ground to a ship or vice versa).

In further response, Plaintiff also noted "it is not the object of the Applicant's device to determine the fatigue strength of a connection but to determine if a rated load can still be sustained by the test piece". This intent is also borne out by the Abstract of the Specification of the '447 Patent which is the same as that noted above for the "332 Patent and which reads: "*As the fluid pressure increases the cylinder shafts extract or retract and exert a required load* **on**

---

[14] Rec. Doc. 128-2.
[15] This argument was made during reexamination but it did not persuade the Patent Examiner, see Rec. Docs. 115-5, 155-3.
[16] File Wrapper of Original Application for '447 Patent, Exhibit B.

***the test piece****. The **test piece is then inspected for breakage or damage** such as deformation or attachment weld cracking*."

It is also borne out by the text of Specification at Col. 1, lines 57-62 where statements are presented to distinguish the '447 Patent from the prior art:

> bonded materials. However, both of these inventions are based on pre-manufacture testing, do not consider cyclic loading over the useful life of the product, and cannot be adapted for portability. These testing tools also cannot be adapted to perform testing of finished products or to test the weld integrity before each use.

Further, the claims of the '447 Patent distinguish pad eye or lifting lug from another test piece and from an attachment weld. Claim 14 of the '447 Patent as originally issued read in part "providing a desired test piece wherein said test piece comprises a pad eye, lifting lug, or other device being tested" and "providing said mounted framework; and assembling the framework with the mounted cylinder fixedly attached on the mounted framework; whereby urging fluid into the cylinder causes the piston to move outwardly to tension the pad eye thus testing the integrity of the weld, and whereby the testing technician or *test operator can inspect the tested device and the weld for any structural damage or deformation.*" The term "comprising" is not limiting language, but rather indicates that pad eye, lifting lug, or other device to be tested are to be included in the scope of what is considered at test piece to be inspected for damage or deformation. As noted above, the Claims and the Abstract are considered part of the patent Specification. Nowhere in the original prosecution did Plaintiff argue or suggest that the claims were limited only to an attachment weld.

From the above it can be seen that "test piece" and "any device to be tested" as recited in the claims of the '447 Patent as originally issued are something other than and/or in addition to a "weld" or an "attachment weld". However, during the reexamination and in this Court Plaintiff

8

has asserted Claims of the '447 Patent all are intended to encompass only attachment welds and nothing else. That was the basis Plaintiff used to differentiate the '447 claims from the prior art cited in reexamination. Plaintiff attempted to make that clear by the amendments made in the re-examination and by his attempt to amend claims 2, 3, 6, 7, 8, 9, 10, 16-26, 28 which were disallowed because these claims were not yet challenged in a reexamination. [17]

## Conclusion

From the above it can be seen that the Court must construe the claims of the '332 Patent and the '447 Patent as they existed before reexamination and as they exist after reexamination. Court must examine the original file wrappers, the reexamination file wrappers, the arguments made by Plaintiff, and the Specification of each of the patents in suit which includes the Abstract, the written description, and the original claims. When doing so it will be seen that there is a substantive change in the scope of the claims before and after reexamination.

       ___/s/ William W. Stagg_____
William W. Stagg (#1613), T.A.
Ryan M. Goudelocke (#30525)
Jonathan R. Villien (#34136)
*Durio. McGoffin, Stagg & Ackermann*
220 Heymann Boulevard (70503)
Post Office Box 51308
Lafayette, LA 70505-1308
(337) 233-0300 (tel)
(337) 233-0694 (fax)
*Counsel for IntegriCert, L.L.C.*

## CERTIFICATE OF SERVICE

I certify that I have, this 4th day of May, 2015, provided all parties with a copy of the foregoing pleading by means of the Western District's CM/ECF electronic filing system.

_____/s/ William W. Stagg _____
William W. Stagg

---

[17] See Exhibit A, 7/8/2014 "Amendment to the Claims: Patentee's Response to Ex Parte Quayle Action 9/9/2014".