# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

**RANDALL SCARBOROUGH**                    *CIVIL NO. 6:12-0396

**VERSUS**                                                     *MAGISTRATE JUDGE HILL

**INTEGRICERT, LLC.**                               *BY CONSENT OF THE PARTIES

<u>**REASONS FOR RULING**</u>

This patent case is before the Court on Cross-Motions for Partial Summary Judgment filed by the defendant, Integricert, LLC ("Integricert") and the plaintiff, Randall Scarborough ("Scarborough").[1]   The issue is whether Integricert is entitled to application of the doctrine of absolute intervening rights under 35 U.S.C. § 252 for all periods prior to the time that the patents in suit, the United States Patent Nos. 6,848,322 ("the 322 Patent") and 7,284,447 ("the 447 Patent"), were reexamined and Certificates of Reexamination were issued. [rec. docs. 122 and 123].

Scarborough accuses Integricert of infringing several claims of the 322 and 447 Patents. The Court conducted a hearing pursuant to *Markman v. Westview Instruments, Inc*., 517 U.S. 370, 390, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) ("the *Markman* hearing") on August 27, 2013.[2]   Before the claim terms could be construed, reexamination of five claims of the 447 Patent (Claims 1, 14, 15, 27 and 29) and all claims of the 322 Patent (Claims 1-21) was granted.  Accordingly, the action was stayed. [rec. doc. 103].  The stay was lifted on February

---

[1]The parties consented to the exercise of this Court's jurisdiction by the undersigned Magistrate Judge.

[2]The transcript of the *Markman* hearing has been filed in the record. [rec. doc. 82].

5, 2015 after the PTO issued Certificates of Reexamination.  [rec. doc. 109].  Upon

reexamination, all claims of the 322 Patent were determined to be patentable as amended; four

claims of the 447 Patent (Claims 1, 14, 15 and 27) were determined to be patentable as

amended and one claim (Claim  29) was canceled.

By its Motion, Integricert argues that the claims of each patent were substantively

changed from their original version thereby entitling Integricert to absolute intervening rights.

Integricert's argument focuses primarily on the insertion of the word "attachment" before the

term "weld" in Claim 1 of the 322 and 447 Patents and, secondarily, on the addition of the term

"lifting lug" after the term "pad eye", the substitution of "other device" for the term "any

device", and the addition of the language "joined [or joining] . . . to another structure" in

various other Claims.  Integricert argues that these amendments were substantive as they

narrowed the scope of the claims and that they were necessary to distinguish Scarborough's

inventions over prior art.

Scarborough argues that these amendments were non-substantive and were made solely

to clarify that the Claims in each Patent were, and had always been, limited to the non-

destructive testing of welds which attach lifting points referred to as pad eyes or lifting lugs to

other structures which are to be lifted.  Scarborough further argues that same basic amendments

were made throughout the Claims to consistently achieve this same clarification and make what

was inherent in the claims more definite.  Stated differently, Scarborough argues that the

amending terms and phrases were taken directly from the specifications or from elsewhere in

2

the claims and added and substituted to various claims to more clearly and consistently express what was already claimed in the original Patents.

For the following reasons, the Court finds that the scope of the Claims in the 322 and 447 Patents was not substantively changed through reexamination and that the amendments were merely clarifications of what had already been claimed by Scarborough in his original Patents.  Accordingly, the Motion for Partial Summary Judgment filed by Scarborough [rec. doc. 122] is **granted** and the Motion for Partial Summary Judgment filed by Integricert [rec. doc. 123] is **denied**.

## Background

Scarborough is the inventor and owner of both the 322 and 447 Patents, originally issued on February 1, 2005 and October 23, 2007, respectively, titled "Apparatus and Method for Testing Weld Integrity".

The 322 Patent contains twenty-one claims.  Claims 1, 13, 20, and 21 are independent claims; the remaining seventeen claims are dependent claims.  The 447 Patent as originally issued contained 31 claims and, after reexamination, contains 30 claims, Claim 29 having been canceled.  Claims 1, 14, 27 and 30 are independent claims; the remaining claims are dependent claims.[3]

The Court will not set forth the entire history of the reexamination of the patents in suit, and instead focuses solely on the pertinent portions of the reexamination process.

---

[3]Claim 29 was also an independent claim.

Reexamination of the 447 Patent proceeded before that of the 322 Patent.  On December 19, 2013, the Examiner issued a Non-Final Rejection of Claims  1, 14, 15, 27 and 29, finding that Bauer anticipated all elements recited in Claims 1, 14, 15 and 27, that Hogan anticipated Claims 1 and 27, that Simmons anticipated Claim 14 and that Richard anticipated Claim 27; the examiner also found that Bauer in view of Lemoine, Hogan and Weinhold rendered Claims 1, 14, 15 and 27 obvious.[4] [rec. doc. 122-8].

On February 19, 2014, Scarborough responded presenting arguments to the Examiner's Non-Final Rejection pointing out how the teachings of the references differed from the apparatus and method claimed by him, without submitting any proposed amendments to the claims. [rec. doc. 138-1]. In that submission, Scarborough repeatedly explained that unlike the referenced prior art, his invention (apparatus and method) non-destructively tests the strength and integrity of attachment welds, which attach pad eyes or lifting lugs to another base structure to be lifted.

For example, Scarborough argued that "Bauer fails to disclose a device used to test a weld between a pad eye and another object in a non-destructive manner" or "a cylinder . . . that exerts a force . . . to a plane formed between a pad eye or other lifting lug being tested and a weld attaching said pad eye or lifting lug to a base" or a "method for testing weld strength and integrity of an attachment weld . . . comprising the steps of . . . providing a desired test piece wherein said test piece comprises a pad eye, lifting lug, or other device being tested. . . ."

---

[4]The Examiner also found that Bauer in view of Lemoine and Weinhold rendered Claim 29 obvious.  Thereafter, as previously noted, Scarborough cancelled that claim.

4

Instead, Scarborough argued that "Bauer . . . relates to and tests valve stems" and "fails to disclose any testing of a weld . . . ." [*Id.* at pg. 13].

Scarborough argued that Hogan likewise "fails to disclose a device used to test a weld that attaches a pad eye to an object" or "a cylinder . . . that exerts a force . . . to a plane formed between a pad eye or other lifting lug being tested and a weld attaching said pad eye or lifting lug to a base" or "a method for testing weld strength and integrity of an attachment weld" or "any form of a 'test piece' wherein that test piece comprises a 'pad eye, lifting lug, or other device being tested.'" Instead, Hogan tests "a weld connecting two adjacent lugs in an interior battery partition" for electrical conductivity not structural attachment.  [*Id.* at pg. 15].

With respect to Simmons, Scarborough argued that it "fails to disclose a device used to test a weld that attaches a pad eye to an object in a non-destructive manner" but rather tests two pieces of wire or cable welded together "end-to-end" "for electrical conductivity and continuity rather than as a structural element as claimed by [Scarborough]."  Moreover, Simmons fails to disclose "a cylinder . . . that exerts a force . . . to a plane formed between a pad eye or other lifting lug being tested and a weld attaching said pad eye or lifting lug to a base." [*Id.* at pg. 16-17].

Scarborough similarly argued that Richards "fails to disclose a device used to test, in a non-destructive manner, a weld that attaches a pad eye to an object" or "a cylinder . . .that exerts a force . . .to a plane formed between a pad eye or other lifting lug being tested and a weld attaching said pad eye or lifting lug to a base" or a "method for testing weld strength and integrity of an attachment weld . . . ."  Instead, Richards discloses a device for testing the

5

strength, cure, and structure of concrete by pulling a test member . . . partially buried in a concrete slab." [*Id.* at pg. 16-18].

Finally, with respect to obviousness, Scarborough repeated the above arguments adding arguments as to Lemoine, cited by the Examiner, as teaching a "bracket" and Weinhold, cited for teaching the use of a clamp. Lemoine "fails to teach a device used to non-destructively test a weld that attaches a pad eye to an object" but rather is intended to grip and remove stakes from the ground, which is by nature destructive, and "is not used or intended to test the strength of any object." [*Id.* at pg. 15]. Weinhold likewise "fails to teach a device used to non-destructively test a weld that attaches a pad eye to an object" but rather, "grips a rod-like specimen that presumably must be removed from a larger object of which it is a part . . . which by its very nature is destructive . . ." and does not test "a weld . . . attaching any portion of the test piece to any other object." [*Id.* at pg. 15]. Thus, neither overcomes Bauer's base deficiencies. [*Id.* at pg. 21-22].

The Examiner found Scarborough's arguments "not persuasive." [rec. doc. 123-8, pg. 56-62]. Accordingly, by Final Office Action dated June 3, 2014 the Examiner rejected Claims 1, 14, 15 and 27. [*Id*. at pg. 44-69].

In response to Scarborough's arguments, the Examiner stated that Bauer discloses an apparatus and method for testing the strength of "a device", a "valve stem" which is non-destructive on the device. More specifically, the Examiner stated that Scarborough's device does not require the attachment structure be attached only to pad eyes but also to "any device to be tested" and hence, could be attached to a valve stem. The Examiner further stated that

6

although the preamble of Scarborough's Claim 1 contains the word "weld", the term could not be read as a limitation based on Scarborough's argument that the term denoted a purpose, because preambular language stating a purpose or an intended use doesn't impose a structural limitation on the claimed apparatus. [*Id.* at pg. 57-58].

The examiner similarly stated that because Scarborough's device does not require the attachment structure be attached only to pad eyes, but also to "any device to be tested", it could be attached to a lug such as those disclosed in Hogan.  Considering one lug as part of the base, the examiner stated that the pulling force on the second lug tested the weld between the base (first lug) and the second lug.  The Examiner also stated that Scarborough's claims did not require that the lug and weld be used as an attachment point for rigging to hoist or transport heavy equipment as argued by Scarborough. [*Id.* at pg. 59-60].

For similar reasons, the Examiner found that the cable or wire in Simmons could likewise be the attached structure and, considering one end of the cable or wire as part of the base, the pulling force on the other end of the cable or wire tested the weld between the base and the other end of the wire or cable. [*Id.* at 60].

With respect to Richards, the Examiner stated that the concrete slab from Richards could be considered a test piece for purposes of Claim 27 in which destructive testing is not necessary and that "[t]he upward force that is exerted by the piston or shaft in the cylinder is perpendicular to a plane formed between the concrete slab test piece and the base." [*Id.* at pg. 61].

With respect to obviousness, the Examiner stated that "[o]ne cannot show non-obviousness by attacking references individually where the rejection is based on a combination of reference[s]." [*Id*. at 61].

In further response, on August 1, 2014, Scarborough submitted proposed amendments to his claims and again traversed the Examiner's rejection, setting forth detailed remarks for allowance of his amended claims over the cited prior art and issuance of a reexamination certificate. [rec. doc. 123-8, pg. 1-43].

On September 5, 2014, the Examiner allowed the proposed amendments over the cited prior art, subject to an informality requiring correction to Claim 1 (the addition of "or other device" inserted after "said pad eye").   In so doing, the Examiner "agreed" with Scarborough's August 1, 2014 submission remarks.  Accordingly, pursuant to *Ex parte Quayle*, 25 U.S.P.Q. 74 (1935), prosecution on the merits was closed. [rec. doc. 122-12].

Following a telephonic interview wherein corrections to informalities in the amendment were discussed, on November 7, 2014, the Examiner  issued a Statement of Reasons for patentability of Claims 1, 14, 15 and 27, as well as a Notice of Intent to issue an Ex-Parte Reexamination Certificate.  [rec. doc. 122-15].  In his Reasons, the Examiner again "agreed" with Scarborough's August 1, 2014 submission remarks stating as follows:

> [n]one of the references of record teach or suggest an apparatus for non-destructive testing weld strength and integrity of at least one attachment weld including an attachment structure for attaching to a pad eye or other device joined by the at least one attachment weld to another structure as now amended in claim 1; or providing the attachment weld joining a pad eye, lifting lug, or other device to another structure as now amended in claim 14; or providing at least one test

piece comprising a pad eye and the attachment weld joining the pad eye to
another structure as now amended in claim 27.[5]

[*Id*. at pg. 6].

The Examiner further stated that "Bauer tests 'valve stems', which are different to pad
eyes, lifting lugs, or other device joined by the at least one attachment weld to another structure
. . .",  that "Hogan fails to teach or suggest a device used to test a weld that attaches a pad eye,
lifting lug, or other device to another structure. . .", that "Simmons does not teach or suggest a
method of testing an attachment weld that joins a pad eye, lifting lug, or other device to another
structure in a non-destructive manner", that "McEntire fails to teach or suggest a device used to
test a weld that attaches a pad eye, lifting lug, or other device to another structure", that
"Richards fails to describe a device used to test, in a non-destructive manner, a weld that
attaches a pad eye to an object", that "Lemoine fails to teach or suggest a device used to non-
destructively test a weld that attaches a pad eye to an object", and that "Weinhold fails to  fails
to teach or suggest a device used to non-destructively test a weld that attaches a pad eye to an
object." [*Id*. at pg. 5-7].  The dependent claim (Claim 15) was stated to be patentable for the
same reasons as the corresponding independent claim (Claim 14).[6] [*Id*. at pg. 8].

An Ex-Parte Reexamination Certificate was issued for the 447 Patent on January 13,
2015. [rec. doc. 106-2].

---

[5]These same reasons were previously cited by the Examiner in support of allowance of the
amendments.  *See* rec. doc. 122-12, pg. 5-6.

[6]These same reasons were previously cited by the Examiner in support of allowance of the
amendments.  *See* rec. doc. 122-12, pg. 6-7.

9

As previously noted, reexamination of the 322 Patent proceeded after that of the 447 Patent. The Examiner issued a Non-Final Rejection of Claims 1-21 on April 9, 2014, finding that Bauer anticipated all elements recited in Claims 1-4 and 7-20, that McEntire anticipated Claims 1, 3, 6 and 12, that Lemoine anticipated Claims 1, 3 and 12, that Simmons anticipated Claims 1, 12, 13 and 16 , that Bauer in view of Hogan rendered Claims 1-4 and 7-20 obvious, that Lemoine in view of Hogan rendered Claims 1, 3 and 12 obvious, that McEntire in view of Hogan rendered Claims 1, 3 and 6 obvious, and that Bauer or McEntire in view of Kriesten and Eksergian as evidenced by Gleeson rendered Claim 5 obvious. [rec. doc. 122-9, pgs.2-24].

On July 8, 2014, Scarborough responded to the Examiner's Non-Final Rejection submitting proposed amendments to his claims substantially similar to those made with respect to the 447 Patent. [rec. doc. 123-6, pg. 1-87].  Scarborough did not present the same arguments he presented to the Examiner's Non-Final Rejection as he had done with respect to the 447 Patent, presumably because the Examiner had already found those arguments "not persuasive" in his previously issued June 3, 2014 rejection of Claims 1, 14, 15 and 27 of the 447 Patent. [*See* rec. doc. 123-8, pg. 56-62].  Instead, Scarborough traversed the Examiner's rejection, setting forth detailed remarks for allowance and issuance of a reexamination certificate which are substantially identical to, and consistent with, those he submitted in his August 1, 2014 submission with respect to the 447 Patent.[7] [rec. doc. 123-6, pg. 1-87].

---

[7]Scarborough initially filed his response on July 7, 2014, but filed the above cited supplemental response on July 8, 2014 after being requested by the Examiner that same date, to change diacritical marks for deletions in the claim amendments from strike-throughs to open and closed single brackets. *See* rec. doc. 123-6, pgs. 88-194; rec. doc. 123-6, pg. 1.

As was the case with the 447 Patent, on September 5, 2014, the Examiner allowed the proposed amendments, subject to informalities requiring correction to Claims 7, 10, 11 and 12 (the deletion of "a" before "the" in Claims 7, 10 and 11 and "a" before "said" in Claim 12).   In so doing, the Examiner "agreed" with Scarborough's July 8, 2014 submission remarks. Accordingly, pursuant to *Ex parte Quayle*, 25 U.S.P.Q. 74 (1935), prosecution on the merits was closed. [rec. doc. 122-13].

Following a telephonic interview wherein corrections to informalities in the amendment were discussed, on November 7, 2014, the Examiner issued a Statement of Reasons for patentability of Claims 1-21, as well as a Notice of Intent to issue an Ex-Parte Reexamination Certificate.  [rec. doc. 123-7].  In his Reasons, the Examiner again "agreed" with Scarborough's July 8, 2014 submission remarks stating as follows:

> [n]one of the references of record teach or suggest an apparatus or method for testing weld strength and integrity of an attachment weld including structure for attaching to a pad eye, lifting lug, or other device joined by the attachment weld to another structure as now amended in claims 1, 13, 20, and 21.[8]

[*Id*. at pg. 5].

The Examiner further stated that "Bauer tests 'valve stems', which are different to pad eyes, lifting lug, or other device joined by the at least one attachment weld to another structure . . .",  that "Hogan fails to teach or suggest a device used to test a weld that attaches a pad eye, lifting lug, or other device to another structure . . .", that "Simmons does not teach or suggest a

---

[8]These same reasons were previously cited by the Examiner in support of allowance of the amendments.  *See* rec. doc. 122-13, pg. 5.

method of testing an attachment weld that joins a pad eye, lifting lug, or other device to another structure in a non-destructive manner", that "McEntire fails to teach or suggest a device used to test a weld that attaches a pad eye, lifting lug, or other device to another structure", that "Richards fails to describe a device used to test, in a non-destructive manner, a weld that attaches a pad eye to an object", that "Lemoine fails to teach or suggest a device used to non-destructively test a weld that attaches a pad eye to an object", and that "Weinhold fails to teach or suggest a device used to non-destructively test a weld that attaches a pad eye to an object." [*Id*. at pg. 5-6]. The dependent claims (Claims 2-12 and 14-19) were stated to be patentable for the same reasons as their corresponding independent claims (Claims 1, 13, 20 and 21).[9] [*Id*. at pg. 7].

An Ex-Parte Reexamination Certificate was issued for the 332 Patent on December 24, 2014. [rec. doc. 106-1].

### Law and Analysis

The doctrine of intervening rights first developed as courts recognized that permitting substantive changes to the scope of patent claims through post-issuance procedures left "the door . . . open for gross injustice" where a third party, having already begun to make, use, or sell a given article, finds its previously lawful activities rendered newly infringing under a modified patent. *Marine Polymer Technologies, Inc. v. HemCon, Inc.,* 672 F.3d 1350, 1361 (Fed. Cir. 2012) *citing Sontag Chain Stores Co. v. Nat'l Nut Co.*, 310 U.S. 281, 293–95, 60

---

[9]These same reasons were previously cited by the Examiner in support of allowance of the amendments. *See* rec. doc. 122-13, pg. 6-7.

S.Ct. 961, 84 L.Ed. 1204 (1940).  In such situations, the defendant "acquired at least a right to

continue to use the [articles] as if it held a license therefor under the reissued patent." *Id.*

*quoting Sontag Chain Stores*, 310 U.S. at  294–95.

With respect to reissued patents, the concept of intervening rights was codified by the

Patent Act of 1952, and is currently set forth in 35 U.S.C. § 252.   Section 252 provides for two

types of intervening rights: (1) intervening rights that abrogate liability for infringing claims

added to or modified from the original patent if the accused products were made or used before

the reissue, often referred to as absolute intervening rights; and (2) intervening rights that apply

as a matter of judicial discretion to mitigate liability for infringing such claims even as to

products made or used after the reissue if the accused infringer made substantial preparations

for the infringing activities prior to reissue, often referred to as equitable intervening rights.

*Marine Polymer Technologies*, 672 F.3d at 1361-1362.  Only the first category, absolute

intervening rights, is at issue in these cross-motions.

Although intervening rights originated as an affirmative defense against patents

modified through reissue procedures, the doctrine has since been extended to the context of

patent reexamination pursuant to 35 U.S.C. § 307(b).  *Id*. at 1362.  Thus, ex parte

reexaminations wherein claims are amended can give rise to intervening rights.  *Id*.  The burden

of proof of entitlement to intervening rights rests on the party raising the defense.  *Intest Corp.*

*v. Reid-Ashman Mfg., Inc*., 66 F.Supp.2d 576, 582 (D. Del. 1999).

A patentee of a reexamined patent is entitled to infringement damages for the period

between the date of issuance of the original claims and the date of issuance of the reexamined

claims if the original and reexamined claims are "identical." *Laitram Corp., v. NEC Corp*., 163 F.3d 1342, 1346 (Fed. Cir. 1998) *citing* 35 U.S.C. §§ 252, 307(b) (1994) and *Tennant Co. v. Hako Minuteman, Inc*., 878 F.2d 1413, 1417, 11 USPQ2d 1303, 1306 (Fed. Cir. 1989). In such cases, the reexamined patent constitutes a continuation of the original patent and is deemed to have effect from the date of the original patent.  *Kaufman Company, Inc. v. Lantech, Inc*., 807 F.2d 970, 976 (Fed. Cir. 1986).

Reexamined claims are "identical" to their original counterparts if they are "without substantive change."  *Laitram*, 163 F.3d 1346 *citing Seattle Box Co. v. Industrial Crating & Packing*, 731 F.2d 818, 827–28, 221 USPQ 568, 575 (Fed. Cir.1984).  Therefore, stated differently, intervening rights do not accrue where the accused product or activity infringes a claim that existed in the original patent and remains "without substantive change" after reissue. *Marine Polymer Technologies*, 672 F.3d at 1361 *citing Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 827–28 (Fed. Cir. 1984).  On the other hand, "if substantive changes have been made to the original claims, the patentee is entitled to infringement damages only for the period following the issuance of the reexamination certificate."  *Laitram*, 163 F.3d 1346 *citing Bloom Eng'g Co. v. North Am. Mfg. Co.*, 129 F.3d 1247, 1249–50, 44 USPQ2d 1859, 1861 (Fed. Cir. 1997).  This is so because the original patent is considered as having been surrendered and extinguished.  *Kaufman*, 807 F.2d at 976.

 "[T]he interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law, exclusively for the court." *Laitram,* 163 F.3d at 1347 *citing Markman v. Westview Instruments, Inc*., 52 F.3d 967, 970–71, 34 USPQ2d

1321, 1322 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577,

38 USPQ2d 1461 (1996) and *Cybor v. FAS Tech., Inc*. 138 F.3d 1448, 1451, 46 USPQ2d 1169,

1171 (Fed. Cir. 1998).

There is no absolute rule for determining whether an amended claim is legally identical

to an original claim.  *Bloom Engineering Co., Inc. v. North American Mfg. Co., Inc*., 129 F.3d

1247, 1250 (Fed. Cir. 1997).  In determining whether substantive changes have been made, the

court "must discern whether the scope of the [original and amended] claims are identical, not

merely whether different words are used." *Laitram,* 163 F.3d at 1346 *citing Slimfold Mfg. Co.*

*v. Kinkead Indus*., 810 F.2d 1113, 1115, 1 USPQ2d 1563, 1565 (Fed. Cir. 1987).  "[T]he scope

of the claims must be the same after reissue . . . ." *Bloom Engineering Co., Inc. v. North*

*American Mfg. Co., Inc*., 129 F.3d 1247, 1250 (Fed. Cir. 1997).  Therefore, "[a]n amendment

that clarifies the text of the claim or makes it more definite without affecting its scope is

generally viewed as identical."  *Bloom Engineering*, 129 F.3d at 1250 *citing Kaufman Co. v.*

*Lantech, Inc*., 807 F.2d 970, 977, 1 USPQ2d 1202, 1207–08 (Fed. Cir. 1986) and *Tennant Co.*

*v. Hako Minuteman, Inc*., 878 F.2d 1413, 1417, 11 USPQ2d 1303, 1306–07 (Fed. Cir. 1989);

*Predicate Logic, Inc. v. Dist. Software, Inc*., 544 F.3d 1298, 1305 (Fed. Cir. 2008).  Thus,

"[a]mendments to a reexamined claim which clarify, restate, specify or make more definite that

which was present, implied, or inherent in the counterpart original claim or the specification are

not substantive changes, and therefore, claims amended in this manner are legally identical."

*Intest Corp.,* 66 F.Supp.2d at 583 *citing  Kaufman*, 807 F.2d at 976 and *Tennant Co.*, 878 F.2d

at 1417.

"Claims are not interpreted in a vacuum, but are part of and are read in light of the specification." *Tennant Co.*, 878 F.2d at 1417 *citing Slimfold Mfg. v. Kinkead Indus*., 810 F.2d 1113, 1116, 1 USPQ2d 1563, 1565–66 (Fed. Cir. 1987). Thus, "[t]o determine whether a claim change is substantive it is necessary to analyze the claims of the original and the reexamined patents in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information." *Laitram Corp. v. NEC Corp.,* 952 F.2d 1357, 1362-1363 (Fed. Cir. 1991) (*Laitram I*).

Stated differently, "[d]etermination of whether a claim change during reexamination is substantive requires analysis of the scope of the original and reexamined claims in light of the specification, with attention to the references that occasioned the reexamination, as well as the prosecution history and any other relevant information." *Bloom Engineering*, 129 F.3d at 1250.

Accordingly, the Federal Circuit has made clear that a claim amendment made during reexamination following a prior art rejection is not *per se* a substantive change. *Laitram,* 163 F.3d at 1347 *citing Laitram I.* To the contrary, "whether amendments made to overcome rejections based on prior art are substantive depends on the nature and scope of the amendments, with due consideration to the facts in any given case that justice will be done" [*Bloom Engineering*, 129 F.3d at 1250 (internal quotations and citations omitted)] and "without reliance on the motives or the correctness of the motives of either the patent examiner or the applicant." *Slimfold Mfg*, 810 F.2d at 1116.

With these principles in mind, the Court addresses the central question presented: whether the amendments made during the reexamination proceeding substantively changed the

scope of the claims such that the claims of the 322 and 447 Patents are not legally identical to those in the original Patents. For the following reasons, the Court agrees with Scarborough that the amendments made during reexamination were not substantive and, accordingly, are legally identical.

Examination of the original claims in both Patents, in light of the entire specification and prosecution history, leads to the conclusion that the originally claimed apparatus and method was for testing weld strength and integrity of attachment welds of pad eyes and other lifting lugs to a structure to be lifted in a non-destructive manner.  Thus, the insertion of the term "attachment" and the addition and substitution and other language cited by Integricert during reexamination merely clarified and made more definite that which was already claimed in the original Patents and, as such, merely confirmed, without narrowing, the existing claim scope.

**Insertion of "attachment"**

While the term "attachment" did not appear before the term "weld" in the preamble to Claim 1 of either the 322 or 447 Patents, the term "attachment weld", in all but one of the other independent claims (Claim 30 of the 447 Patent) of each Patent (Claims 13, 20 and 21 of the 322 Patent and 14 and 27 of the 447 Patent) do contain the term "attachment weld", clearly specifying that the patented method is for the testing of attachment welds.  Reading the claims in comparison to other claims, as well as common sense, therefore requires that the weld referenced in Claim 1 of each Patent regarding the patented apparatus likewise refer to the weld attaching a pad eye or lifting lug to another structure to be lifted.  If this were not the case, the

claimed apparatus would not correspond to the claimed method.  Indeed, it appears that the word "attachment" was merely inadvertently deleted in the original amendment process as Claim 1 of the 322 Patent refers to "an [sic] weld" as opposed to "a weld".[10]

Further, Claims 1 in both Patents refer to "weld"in their preambles.  While the term "attachment" is absent, that term was implicit in the Claims and "necessary to give life, meaning, and vitality to the claim[s]."  *See Pitney Bowes, Inc., v. Hewlett-Packard, Co.*, 182 F.3d 1298, 1305-1306 (Fed. Cir. 1999).  In order for "tension[ing of] the pad eye" to result in "testing the integrity of the welding" as recited in Claim 1 of the 322 Patent and "tension[ing] on the pad eye" to "thereby test[] the integrity of the weld" as recited in Claim 1 of the 447 Patent, the weld tested must be an attachment weld, that is, the weld attaching the pad eye to another structure.  Simply stated, the "whereby . . . testing . . . the welding" and "whereby . . .testing. . . the weld" language at the end of the Claims 1, respectively, can only be properly understood in the context of the preamble statement as an attachment weld.

Additionally, the terms "attachment weld" or "weld attaching said pad eye or lifting lug" or "weld attaching said pad eye" appears in numerous other dependent claims in each Patent.

---

[10]During original prosecution of the 322 Patent, Claim 1 contained the word "attachment" before the term "weld". [rec. doc. 135-1, pg. 56].  However, after the Examiner rejected the Claim, and others, as anticipated by Gram, Claim 1 was amended and the word "attachment" deleted. [*Id.* at 32 and 18]. Scarborough explained that Claim 1 was amended "to reflect, as per the specification, that the testing to be performed by the invention in question is nondestructive and that the testing on the test piece is done substantially external to the testing apparatus."  The Gram, on the other hand, utilizes testing techniques "that are destructive in nature" and requires the piece to be tested be removed and  placed into the testing apparatus, whereas Scarborough's invention "does not require the removal of a representative piece of the test subject from the body of the test subject. . . ."  [*Id.* at 25].  The deletion of the word "attachment" appears to the Court to have had no bearing on Scarborough's reasoning for distinguishing the Gram Patent – the non-destructive nature of the testing and the lack of need to remove the pad eye from the body of the test piece thereby damaging or destroying the piece. The deletion therefore appears to the Court to have been unnecessary, and as such, inadvertent.

[*See* Claims 7, 10, 12 of the 322 Patent; Claims 6 and 26 of the 447 Patent].  Indeed, Claim 12

expressly describes the apparatus as "exert[ing] a force . . . to a plane formed between a pad

eye or other lifting lug being tested and a weld attaching said pad eye or lifting lug . . .

subjecting said attachment weld to a tension load."  Claim 26 of the 447 Patent similarly

describes the method as "exert[ing] a force . . . to a plane formed between a pad eye or other

lifting lug being tested and a weld attaching said pad eye or lifting lug . . . and [thereafter]

inspecting the test piece and its attachment weld for any structural damage or deformation."

The Court's conclusion is further supported by examination of the entire specifications

for both the 322 and 447 Patents which clearly describe an apparatus and method for testing

attachment welds between pad eyes, lifting lugs and other lifting devices to structures to be

lifted.[11]

The first sentence of the Abstract recites that the invention is "[a]n apparatus and

method for testing weld integrity . . . [which] can verify the integrity of attachment welds",

after which the attachment weld is inspected for cracking.

Moreover, the Area of Technology of the 322 Patent and corresponding Field of the

Invention of the 447 Patent clearly and expressly disclose that the "apparatus relates, generally,

to non-destructive testing of weld integrity and strength in the attachment weld of pad eyes and

other lifting lugs."  [rec. doc. 122-17 at 1:5-8; rec. doc. 122-19 at 1:11-15].

---

[11]The 447 Patent was a continuation-in-part of the 322 Patent.  Accordingly, the specification for the 447 Patent was "borrowed" from the 322 Patent and, unless specifically noted, contains the same language.

The Background of the Invention and corresponding Description of the Related Art likewise explains that the invention tests the welds attaching pad eyes and other lifting lugs to some other base structure.  This section expressly explains that "[p]ad eyes and lifting lugs are primarily used as an attachment point for any rigging employed to hoist, transport, or secure heavy equipment" and that "[t]hese pad eyes are typically welded either to the equipment or to some device on which the equipment is transported on", but that "[t]he strength of these welds cannot be easily tested . . . the only indication of weakness [being] discovered upon complete failure of the attachment weld." [*Id.* at 21-28; *Id*. at 1:29-36].  However, "there is no prior art for the method or apparatus for testing pad eye welds." [*Id.* at 1:30-31; *Id*. at 1:38-39].  To the contrary, under the existing art, "the weld integrity of pad eyes or other lifting lug welds" were "tested by x-rays or liquid penetrant."  [*Id.* at 1:11-12; *Id*. at 1:19-20].

Therefore, Scarborough explains that it is desirable "to have a testing apparatus which is portable and can quickly and accurately check the integrity of a pad eye and its attachment weld before each field use", and that "in order to test the pad eye welds at almost any location", the apparatus should be portable, self-contained, easily transportable, and environmentally safe . . ." [*Id.* at 1:54-59; *Id*. at 1:62 - 2:1].

Even the Descriptions of the invention recite embodiments to achieve the intended function, that is, "to exert a tensioning force on the pad eye or lifting lug attachment weld." [*Id.* at 6:28-35; *Id*. at 8:18-20].  Moreover, the Descriptions explain modifications of the structural members of the apparatus which could made "to provide the substantially same function and

substantially same result in testing the pad eye or other lifting lug attachment welds." [*Id.* at 9:16-22; *Id*. at 11:5-11.

The prosecution history of the 447 Patent and statements made by Scarborough therein prior to amendment during reexamination reveal that the scope of the invention was always directed at attachment welds between pad eyes, lifting lugs and other lifting devices to a structure to be lifted.  In his initial 2006 prosecution of the 447 Patent Scarborough explained to the Examiner that unlike the Hodo device, his "device is used to determine the integrity of the attachment weld to determine if some apparatus, to which the test piece is attached, can be safely lifted while carrying some pre-determined load." [rec. doc. 135-2, pg. 78]. This statement is particularly persuasive given that it was not made during litigation or patent defense, but rather, was made some nine years prior thereto.

Moreover, as is set forth more fully above, in his initial submission in the 447 Patent reexamination, Scarborough repeatedly and consistently described his invention as an apparatus and method which non-destructively tests the strength and integrity of attachment welds, which attach pad eyes or lifting lugs to another base structure to be lifted. [*See* rec. doc. 138-1].

Finally, as noted by Scarborough, even Integricert has acknowledged the Court's conclusion prior to reexamination arguing in its responsive claim construction brief that "[t]he phrase [attachment weld] appears to uniformly refer (in both the '322 and '447 patents) to that weld attaching a pad eye, lifting lug or 'any other device to be tested' to its substrate . . . ." [rec. doc. 66, at pg. 28].

**Addition of "lifting lug", Substitution of "other device" and Addition of "joined [or joining] . . . to another structure"**

Similarly, the addition of the term "lifting lug", substitution of "other device" and addition of "joined [or joining] . . . to another structure" made no substantive change in the scope of the Patents.  Integricert argues that the object of the testing was changed by the addition and substitution of these terms.  In light of the above analysis, that argument is not persuasive.

As set forth above, the attachment weld at which the original claims were directed was, and has always been, the object of the testing.  That object, the attachment weld, necessarily requires the conclusion that the tested object include not only a weld, but also a pad eye, lifting lug or other lifting device attached by the weld to some substrate or base structure to be lifted.  If this were not the case, the claimed apparatus and methods could not verify the integrity of attachment welds – simply stated, the claimed inventions would not work.

The term "lifting lug" and "other device" has always been present in both the independent and dependent claims of both Patents, and are used consistently to describe the contemplated types of lifting structures which are joined by the attachment weld to some other base structure to be lifted.[12]  Indeed, prior to reexamination, the parties agreed during claim

---

[12]*See* 322 Patent Claim 7 (reciting piston cylinder movement as being perpendicular to a plane formed between "a pad eye or other lifting lug . . . and a weld attaching said pad eye or lifting lug to a base"), Claim 8 (describing the second end of the cylinder shaft as attached to "said pad eye or other device"), Claim 10 (describing the cylinder shaft during extension as exerting a force to "a plane formed between a pad eye or other lifting lug . . . and a weld attaching said pad eye or lifting lug."), Claim 11 (same language describing the cylinder shaft during refraction), Claim 12 (describing the cylinder as exerting a force to a plane "between a pad eye or other lifting lug . . . and a weld attaching said pad eye or other lifting lug . . . creating a force away from said pad eye or other device . . . subjecting said

22

construction that a "pad eye" is merely a subset of "lifting lug". [*See* rec. doc. 82, pg. 38 and 41]. The addition of these terms therefore merely makes explicit what was necessarily implicit in the original claims.

As was the case with the term "attachment weld" the terms "lifting lug" and "other device" appear to have been added to Claims 1, respectively, to make the claimed apparatus be consistent with the claimed methods. [*compare* Claim 1 with Claims 13 and 20 of the 322 Patent; Claim 1 with Claims 14 and 28 of the 447 Patent].

Moreover, the addition of these terms is consistent with the citations from the Specifications quoted above wherein the claimed inventions and methods repeatedly refer to the "testing of weld integrity and strength in the attachment weld of pad eyes and other lifting lugs" and "weld integrity of pad eye or other lifting lug welds". [rec. doc. 122-17 at 1:5-8, 11-12; rec. doc. 122-19 at 1:11-15, 19-20].

Furthermore, the addition of these terms is consistent with the broad construction Scarborough attributes to the "pad eye", labeled 19 in his Figures, as "pad eye 19 or lifting lug" and "pad eye 19, lifting lug, or other lifting connection". [*Id*. at 2:59 and 66, *Id*. at 3:13 and 20-21]. Indeed, the added phrase "pad eye, lifting lug, or other device" was taken verbatim

---

attachment weld to a tension load"), Claim 13 (describing the "test piece" of the claimed method as comprising "a pad eye, lifting lug or other device"), Claim 20 (describing the "test piece" of the claimed method  as comprising "a pad eye, lifting lug or other device"); 447 Patent Claim 14 (describing the "test piece" of the claimed method as comprising "a pad eye, lifting lug or other device"), Claim 26 (describing retraction of the cylinder shaft as exerting a force "to a plane formed between a pad eye or other lifting lug . . . and a weld attaching said pad eye or lifting lug to a base"), Claim 28 (describing the "test piece" of the claimed method as comprising a "pad eye, lifting lug or other device").

23

from the patent descriptions which explain the operating apparatus as being connected to a "pad eye, lifting lug, or other device . . . "  [*Id*. at 7:48-50; *Id*. at 9:36-37].

Thus, the Court concludes that addition of these terms merely clarified and made more definite which had already been claimed in each Patent, to make the claims more consistent with each other and with the specification.  The changes did not alter the scope of the claims and, as such, were clearly not substantive.

Likewise, and for substantially the same reasons and in light of the above analysis, the addition of "joined [or joining] . . . to another structure" merely restated the obvious, that a pad eye, lifting lug or other lifting device must be joined to something in order to test the attachment weld.  Stated differently, in order for tensioning of a pad eye, lifting lug or other lifting connection to result in the testing of the strength and integrity of the welding, the tested weld must be one attaching the pad eye, lifting lug or other lifting connection to another structure.  Indeed, the specifications for both the 322 and 447 Patents cited above describe exactly that, the testing of pad eyes, lifting lugs and other lifting connections as they are welded to another structure to be lifted.  Thus, this language did not add any new limitation not previously set forth in the original Claims.  The change was not substantive.

## Conclusion

For the foregoing reasons, the Court finds that the scope of the Claims in the 322 and 447 Patents was not substantively changed through reexamination and that the amendments were merely clarifications of what had already been claimed by Scarborough in his original

Patents.  Accordingly, the Motion for Partial Summary Judgment filed by Scarborough [rec. doc. 122] is **granted** and the Motion for Partial Summary Judgment filed by Integricert [rec. doc. 123] is **denied**.

Signed this 12th day of August, 2015, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

25