**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE/OPELOUSAS DIVISION**

| | |
|---|---|
| **RANDALL SCARBOROUGH** | * |
| | * **CIVIL ACTION NO.: 6:12-CV-00396** |
| **Plaintiff** | * |
| | * |
| **VERSUS** | * **JUDGE REBECCA F. DOHERTY** |
| | * |
| | * **MAGISTRATE JUDGE C. MICHAEL HILL** |
| **INTEGRICERT, LLC** | * |
| | * |
| **Defendant** | * |

**MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF**
**INFRINGEMENT OF U.S. PATENT NOS. 6,848,322 & 7,284,447**

NOW INTO COURT comes Defendant, IntegriCert, L.L.C. ("IntegriCert"), through undersigned counsel, and respectfully provides its memorandum in opposition to Plaintiff Randall Scarborough's ("Scarborough") motion for partial summary judgment of infringement of U.S. Patent Nos. 6,848,322 (the "´322 Patent") and 7,284,447 (the "´447 Patent")(collectively, "the '322 and '447 Patents" or "the patents in suit"). There is a clear dispute between the parties regarding the structure and function of IntegriCert's device.

Scarborough's analysis fails to address key differences between IntegriCert's device and the limitations imposed by the claims of the '322 and '447 Patents when read in view of their respective specifications. Accordingly, as a genuine issue of material fact exists regarding the applicability of key elements of the '322 and '447 Patents for a determination of infringement and as no reasonable jury, taking all of IntegriCert's evidence to be believed and all justifiable inferences drawn in IntegriCert's favor, could find that every limitation recited in the construed claims of the '322 and '447 Patents can be found in IntegriCert's device, Scarborough's motion for partial summary judgment should be denied.

### TABLE OF CONTENTS

I.     **BACKGROUND** ...............................................................................................1

II.    **LEGAL STANDARD FOR SUMMARY JUDGMENT OF PATENT INFRINGEMENT**.........................................................................................2

III.   **ARGUMENT**.................................................................................................3

    A. *Limitations of Claim 1 of the '322 Patent for "a framework", "a base", and "side pieces" and Significant Differences to IntegriCert's Device.* ...................3

          1. Claim 1 of the '322 Patent.............................................................5

          (a) Disputed Terms Not Construed ...............................................5

          2. Review of Independent Claim 1 in View of the Specification and Common Term Meanings......................................................6

          (a) Terms Requiring Construction.............................................8

          (1) "framework" ....................................................................8

          (2) "base" ...............................................................................9

          (3) side pieces .....................................................................10

    B. Response To Plaintiff's Arguments For Infringement of '322 Patent ......................12

    C. The Limitations in the Claims of the '447 Patent are Not Found in IntegriCert's Device ..........................................................................16

    D. Summary Judgement Is Improper As There Are Genuine Issues of Material Fact In Dispute .....................................................................23

IV.    **CONCLUSION** ..........................................................................................24

i

## TABLE OF AUTHORITIES

### Cases:

*Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) ..................................2, 24

*Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353 (Fed. Cir. 1998) ..................................................................3, 5, 23

*Bayer AG v. Elan Pharm. Research Corp.,* 212 F.3d 1241, 1247 (Fed. Cir. 2000) ........................................2

*Board of Regents of the University of Texas System v. BENO American Corp.,* 533 F.3d 1362, 1367 (Fed. Cir. 2008) ........................................................................................................................................2

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ........................................2

*Cephalon, Inc. v. Watson Pharmaceuticals, Inc.,* 707 F.3d 1330 (Fed. Cir. 2013) ........................................16, 23

*Cisco Sys., Inc. v. Telcordia Techs Inc.,* 590 F.Supp.2d 828, 830 (E.D. Tex.2008) ........................................3

*CytoLogix Corp. v. Ventana Med. Sys., Inc.,* 424 F.3d 1168, 1172 (Fed. Cir. 2005) ........................................3

*Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.,* 93 F.3d 1572, 1577 (Fed. Cir. 1996) ...................4, 12

*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Intern., Inc.,* 389 F.3d 1370, 1378 (Fed. Cir. 2004) ..........16, 23

*Hill-Rom Servs., Inc. v. Stryker Corp.,* 755 F.3d 1367, 1371 (Fed. Cir. 2014) ........................................4

*In re Sabatino,* 480 F.2d 911, 913, 178 USPQ 357, 358 (CCPA 1973) ........................................4, 12

*Jack Guttman, Inc. v. Kopykake Enterprises, Inc.,* 302 F.3d 1352, 1361 (Fed. Cir. 2002) ........................................3

*Johnson Worldwide Assocs., v. Zebco Corp.,* 175 F.3d 985, 989 (Fed. Cir. 1999) ........................................4

*O2 Mico Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.,* 521 F.3d 1351 (Fed.Cir.2008) ........................................3

*Markman v. Westview Instruments, Inc.,*  52 F.3d 967, 977 (Fed. Cir. 1995) aff'd, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996) ........................................4

*Mas-Hamilton Grp. V. LaGard, Inc.,* 156 F.3d 1206, 1211 (Fed. Cir. 1998) ........................................2

*Merck & Co. Inc. Teva Pharmaceuticals USA, Inc.,* 395 F.3rd 1364, 1372 (Fed. Cir. 2005) ........................................16, 21

*Minnesota Min. & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.,* 976 F.2d 1559, 1566 (Fed. Cir. 1992) ...........5

*North Am. Vaccine, Inc. v. American Cyanamid Co.,* 7 F.3d 1571, 1574, 28 USPQ2d 1333, 1335 (Fed. Cir. 1993) ....2, 23

*Opryland USA Inc. v. Great American Music Show, Inc.,* 970 F.2d 847, 850 (Fed. Cir. 1992) ........................................23

*Phillips v. AWH Corp.,* 415 F.3d 1303, 1315 (Fed. Cir. 2005) ........................................4, 16, 21

*SRAM Corp. v. AD-11 Engineering, Inc.,* 465 F.3d 1351 (Fed. Cir. 2006) ........................................16,21

*Tandon Corp. v. International Trade Comm'n,* 831 F.2d 1017, 1021, 4 USPQ2d 1283, 1286 (Fed. Cir. 1987) ...........5, 6

*Tessera, Inc. v. Int'l. Trade Comm'n,* 646 F.3d 1357, 1364 (Fed. Cir. 2011) ...............................................................2

# I. BACKGROUND

Plaintiff has two patents, the '322 and '447 Patents, both for an "Apparatus and Method for Testing Weld Integrity".  IntegriCert owns U.S. Patent No. 7,240,569 ("the '569 Patent") for a "load test apparatus for shipping containers".  The '322 Patent was cited as a reference to the Patent Examiner during prosecution of the '569 Patent.  The '322 Patent was allowed by the Patent Office even in view of the '322 Patent.  The Patent Examiner found that the '569 Patent had novelty and was not obvious despite the disclosures made in the '322 Patent. [Doc. 155-11 at 1].

On February 10, 2012, Scarborough filed a complaint for patent infringement [Doc. 1] accusing IntegriCert of infringing one or more of the claims of the '322 and '447 Patents and filed its first amended complaint [Doc. 17] on December 5, 2012.  The Patent Office granted reexamination of certain claims in the '322 and '447 patents which Claims 1-21 of the '322 patent and Claims 1, 14, 15, 27, and 29 of the '447 patent were initially found to be unpatentable and rejected.   [Docs. 107-18 & 107-17, respectively]. After amendment these claims were allowed [Doc. 123-6 at 3-8 & Doc. 123-8 at 3-11, respectively], and reexamination certificates issued, on December 24, 2014 for the '322 Patent [Doc. 122-16] and on January 13, 2015 [Doc. 122-18] for the '447 Patent.[1]   A subsequent Claim Construction Order issued on August 31 2015.  On October 13, 2015, Scarborough filed its Sealed Motion for Partial Summary Judgement of Infringement of U.S. Patent Nos. 6,848,322 & 7,284,447 with its accompanying memorandum in support [Doc. 155-1].

---

[1] Copies of the prosecution histories for the '322 and '447 Patents are attached as Exhibits A & B for the convenience of the Court.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT OF PATENT INFRINGEMENT

A party is entitled to entry of summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure: "If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000).

Summary judgment is improper "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, all of the nonmovant's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *See id.* at 255, 106 S.Ct. 2505.

Infringement analysis is a two-step process. *Tessera, Inc. v. Int'l. Trade Comm'n.*, 646 F.3d 1357, 1364 (Fed. Cir. 2011). First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process. *Board of Regents of the University of Texas System v. BENO America Corp.*, 533 F.3d 1362, 1367 (Fed. Cir. 2008) There is literal infringement **only** when the accused device contains **every** limitation in the asserted claims. *Mas–Hamilton Grp. v. LaGard, Inc.,* 156 F.3d 1206, 1211 (Fed. Cir. 1998).

Determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact. *See, e.g., North Am. Vaccine, Inc. v. American Cyanamid Co.,* 7 F.3d 1571, 1574, 28 USPQ2d 1333, 1335 (Fed.Cir.1993). Infringement is only properly decided by

summary judgment when no genuine issue of material fact exists, in particular, when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device. *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

In applying a claim construction ruling, the parties, themselves, are not permitted to take positions inconsistent with the constructions as it poses a risk of confusing a jury. *CytoLogix Corp. v. Ventana Med. Sys., Inc*., 424 F.3d 1168, 1172 (Fed. Cir. 2005).  Such limitation does not apply when arguing before the Court itself, who determines the construction of claims and has considerable latitude in determining when to resolve issues of claim construction. *Id.* The District Court itself is permitted to engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves. *Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002).

It must be also noted that a claim construction ruling is not set in stone. Claim construction orders are not final and may be altered prior to or during trial as it is foreseeable that claim construction may need to be edited or supplemented, even for seemingly simple terms. *Cisco Sys., Inc. v. Telcordia Techs., Inc.,* 590 F.Supp.2d 828, 830 (E.D.Tex.2008) (citing *O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.,* 521 F.3d 1351 (Fed.Cir.2008)).

## III. ARGUMENT

### A.  The Limitations in the Claims of the '322 Patent are Not Found in IntegriCert's Device

Scarborough asserts that at least Claims 1-4 and 7-12 of the '322 Patent are infringed by IntegriCert's load test apparatus for shipping containing which is shown and described in the '569 patent.  However, with respect to the '322 Patent, only claim 1 subject to this motion.

Claim 1, an independent claim, recites the elements "*a framework including a base, top,*

3

*and side pieces"* and, separately, "at least one fluid containing cylinder mounted with that framework." Claims 2-4 and 7-12 are dependent claim which by definition include all of the limitations of the independent claim from which they depend.  The accused IntegriCert device cannot infringe claim 1, or dependent claims 2-4 and 7-12, if it does not have each and every limitation of the asserted claim 1.

This Court has not construed the elements "framework", "base", "top", or "side pieces" nor has it construed the meaning of the terms "a framework <u>including</u> a base, top, and side pieces" or "cylinder mounted with the framework."  The Court must construe the meaning of these terms in their claimed context must be construed before infringement can be determined.

Though claim terms not construed are entitled to the full scope of their ordinary meanings, *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014); *Johnson Worldwide Assocs., v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999), they do not stand alone. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005). Rather, they are part of "a fully integrated written instrument," consisting principally of a specification that concludes with the claims. *Id.* (quoting *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 977 (Fed. Cir. 1995) aff'd, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996)). For that reason, claims "must be read in view of the specification, of which they are a part." *Markman* at 979.

Claim limitations defining the subject matter of the invention are never disregarded.  *In re Sabatino,* 480 F.2d 911, 913, 178 USPQ 357, 358 (CCPA 1973). Courts must also give meaning to all of the words in a claim and are not free to read any limitations out of a claim. *Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.,* 93 F.3d 1572, 1577 (Fed.Cir.1996).

In defining the meaning of key terms in a claim, reference may be had to the specification, the prosecution history, prior art, and other claims (*Tandon Corp. v. International Trade Comm'n,* 831 F.2d 1017, 1021, 4 USPQ2d 1283, 1286 (Fed.Cir.1987)).  However, this is not to be confused with reading into a claim a limitation appearing in the specification but not in the claim. *Minnesota Min. & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1566 (Fed. Cir. 1992).

IntegriCert's asserts that at this time a **genuine dispute exists** over the meaning of the elements "framework", "base", "side pieces" and "a framework <u>including</u> a base, top, and side pieces" that precludes a summary judgement of infringement.  When these terms are properly construed, there will be issues of fact as to whether a reasonable jury could find that every limitation recited in the properly construed claim is found in the accused device. *Bai v. L & L Wings, Inc.*,

**1. Claim 1 of the '322 Patent.**

Claim 1 of the '322 Patent reads:

> **1**. An apparatus for testing the weld strength and integrity of an *attachment* weld, comprising:
> a framework including a base, top, and side pieces;                                                    25
> at least one fluid containing cylinder, mounted with the framework, for moving a piston therein inwardly and outwardly as fluid is moved out or in respectively; and
> structure for releaseably or permanently attaching to a pad eye, *lifting lug* or [any] *other* device [to be tested] *joined*   30
> *by the attachment weld to another structure;*
> whereby moving fluid into the cylinder causes the piston to move outwardly to tension the pad eye, *lifting lug or other device* to [testing] *test* the integrity of the [welding] *attachment weld* in a [non destructive] *non-destruc-*   35
> *tive* manner.

**(a) Disputed Terms Not Construed.**

The claim terms "framework", "base", "side pieces" and "framework including a base, top, and side pieces" and "mounted with the framework" at lines 25-26 of claim 1 are **not** in the

written description provided in the specification of the '322 patent. These terms appear only in the claims and they have not been construed.   Though these terms are generally entitled to their common meaning, if guidance is needed, reference may be had to the specification, the prosecution history, prior art, and other claims. *Tandon Corp. v. International Trade Comm'n, supra*.

The drawings and the description of the components and their relationship in the various embodiments of the invention referred to in the written description, and the common meaning of some of these terms, provides some context to aid in construing the claim terms not specifically used in the specification.

## 2. Review of Independent Claim 1 in View of the Specification and Common Term Meanings.

Figs. 3 and 3A show the second embodiment of the invention.



FIG. 3                    FIG. 3A

The '322 Patent, Col. 4, lines 49 – 67, when referring to the second embodiment 30 reads[2]:

Second Embodiment (FIG. 3 and FIG. 4)

50    FIG. 3 is an assembly drawing of an additional embodiment of the present apparatus. FIG. 4 shows the individual components of said additional embodiment 30 which is preferably comprised of the two cylinders 5, one being the right side cylinder and one being the left side cylinder, two
55  bridge plates 1, the support beam 47, and two footings 9 comprised of a right side footing and a left side footing.

It should be appreciated that the footings 9 and the attachment plates 17 are an illustrative method of attaching the apparatus to the pad eye 19 or lifting lug. Other ways of
60  attachment, which provide adequate support and connection can be employed without departing from the scope thereof. The test apparatus can be mounted to a base plate 37 in order to provide support for the test apparatus, it can be used without the base plate 37 and attached via clamps 38 or other
65  suitable method directly to the base support structure to which the pad eye 19, lifting lug, or other lifting connection is attached to.

The attachment of the cylinder 5 to the bridge plates 1 and footings 9 are described at Col. 5, lines 8-16.

preferably utilizing a pin connection. The cylinder shaft 13, of the right side cylinder 5 is fixedly attached by a pin 41 to the right end and in between the two bridge plates 1. The  10 cylinder shaft 13, of the left side cylinder 5, is fixedly attached by a pin 41 to the left end and in between the bridge plates 1. The bottom adaptor 15, of the right cylinder 5, is fixedly attached, by a pin 41 to the right side footing 9. The bottom adaptor 15, of the left cylinder 5, is fixedly attached,  15 by a pin 41 to the left side footing 9. It should be noted and

The relationship of base plate 37 and footings 9 is further described in the '322 Patent  Col. 6, lines 18-27.

---

[2] The is no drawing or description showing attachment of the footings 9 to the pad eye 19.  This appears to be an error.  Attaching  the footings 9 to the pad eye 19 would render the apparatus 30 in operable and useless.

respective hole centers on each channel wall face. The two footings **9** will preferably be attached by welding to the test
20 apparatus base plate **37** or attached by clamps to the pad eye base plate **21**. Preferably, the two footings **9** are substantially horizontally and symmetrically centered on each side of the pad eye **19**. This said placement, of the two footings **9**, is assured through the substantially symmetric connection of
25 the right and left cylinders **5** to the bridge plate **1**. This said positioning insures that the testing apparatus will provide an approximately equal upward force on the pad eye **19**.

**(a) Terms Requiring Construction**

**(1) "framework"**

The term "framework" is not used in the written description of the '322 patent, it is used

only in the Claims.  The term "frame" is used sparingly and obliquely in the written description

and the description does not directly state what elements or combination of elements constitute

the "frame".  Though "framework" is not used in the specification, the recitation of the

components of apparatus 30 in the written description, '322 Patent, Col. 4, lines 49 – 67,  Col. 5,

lines 8-16, Col. 6, lines 18-27, show that the "framework"  has bridge plates 1, right side cylinder

5, left side cylinder 5, and  right side footing  9 and left side footing  9 joined or united with base

plate 37 or by clamps to padeye base plate 21 upon which padeye 19 is mounted.   These

components when  joined or united together as a "framework" correspond directly to the

elements described in claim 1 of the '322 patent.

These components joined together to create the "framework" also correspond to the

common meanings of the terms recited in Claim 1.  **Framework**: n. 1. The work of framing, or

the completed work. The frame or constructional part of anything; as, the framework of society.

**Frame**: n. 1. Anything composed of parts fitted and united together; a fabric; a structure; esp.,

the constructional system, whether of timber or metal, that gives to a building, vessel, etc., its

model and strength; the skeleton of a structure.  **Base Plate**: The foundation plate of heavy

8

machinery, as of the steam engine; the bed plate. See also: Base.  **Base:** n 1. <u>The bottom of anything, considered as its support, or that on which something rest for support</u>; the foundation; as, the base of a statue.  **Side:** n. 1. The margin, edge, verge, or border of a surface; especially (when the thing spoken of is somewhat oblong in shape), one of the longer edges as distinguished from the shorter edges, called ends; <u>a bounding line of a geometrical figure</u>; as, the side of a field, of a square or triangle, of a river, of a road, etc. 3. any outer portion of a thing considered apart from, yet in relation to, the rest; as, the upper side of a sphere; also, <u>any part or position viewed as opposite to or contrasted with another; as, this or that side</u>.  **Include:** v. t. 1. To confine within; to hold; **to contain**; to shut up; to inclose; as, the shell of a nut includes the kernel; a pearl is included in a shell. 2. <u>To comprehend or comprise</u>, as a genus the species, **the whole a part**, an argument or reason the inference; <u>to contain; to embrace</u>; as, this volume of Shakespeare includes his sonnets; he was included in the invitation to the family; to and including page twenty-five.

    **(2) "base"**

    The term "base" is never used alone in the written description of the '322 Patent and is used only in the context of "base plate 37" provided to interconnect cylinders 5 for support of the test apparatus. ('322 Patent, Col. 4, lines 62-67; Fig. 3  & 4).  The base plate 37 or the alternative clamps that joins and unites cylinders 5 together are essential to the function of the Scarborough invention as described.  The specification does not contemplate the left and right side cylinders 5 left unattached by the base plate 37 during use.  As the ' 322 patent recites:

> "The test apparatus *can be mounted to a base plate 37* in order *to provide support for the test apparatus*, or it can be used without the base plate **37** and attached via clamps **38** or other suitable method *directly to the base support structure to which the pad eye 19,* lifting lug, or other lifting connection *is attached* to." Col. 4, lines 62-67.

"*The two footings 9 will preferably be attached by welding to the test apparatus base plate 37 or attached by clamps to the pad eye base plate 21. Preferably, the two footings 9 are substantially horizontally and symmetrically centered on each side of the pad eye 19.* This said placement, of the two footings 9, is assured through the substantially symmetric connection of the right and left cylinders 5 to the bridge plate 1. *This said positioning insures that the testing apparatus will provide an approximately equal upward force on the pad eye 19. Col. 6, lines 22-27.*

### (3) side pieces

The term "side pieces" are not found in the written description, only in the Claims. Claim 1 recites "a framework including a base, top, and side pieces…" and a separate limiting element "at least one fluid containing cylinder, mounted with the framework…".  As noted above in the description of the apparatus 30, the only elements described as being on a "side" or at a "side" are the right side and left side cylinders 5.  The base, top, and side cylinders are united together in a "framework" that gives the structure recited in claim 1 its model and strength.  The function of the base plate 37 (base) and the attached footings 9 as described in the specification is to *provide support for the test apparatus* assuring the substantially symmetric connection of the right and left cylinders 5 to the bridge plate 1 (top). The only logical conclusion is that the "side pieces" in the claims require them to be united with the other frame elements that provide the support structure for the claimed apparatus.

The common meaning of "piece" is a part or element of something else.  The term "piece" is defined as:

"**Piece:** n. 1. A fragment or part of anything separated from the whole, in any manner, as by cutting, splitting, breaking, or tearing; <u>a part; a portion</u>; as, a piece of sugar; to break in

10

piece.[3] **Piece:** 1. a part of a whole: as a: FRAGMENT <*pieces* of broken glass> b: any of the individual members comprising a unit often used in combination <a five-*piece*.[4]"

In the context of the specification the only pieces of a "framework" in apparatus 30, at the sides is the left and right side cylinders,  the "side pieces" incorporate the cylinders 5.

(4) cylinder mounted with the framework

The word "mounted" is defined as:

2. a. **Mounted:** Placed on a suitable support, or fixed in a setting; as, a mounted gun; a mounted map; mounted gem.[5]

With is defined as:

**4. a. With:** used as a function word to <u>indicate combination</u>, accompaniment, presence, or addition <heat milk *with* honey> <went there *with* her> <his money, *with* his wife's, comes to a million> **b**<u>: inclusive of</u> <costs $5 *with* the tax>[6]

**7. With:** To denote having as a possession or an appendage; as, the firmament with its stars; a bride with a large fortune.[7]

The word "with" and "mounted" as in "cylinder, mounted with the framework…" in the context of claim 1, when given common meaning indicates combination or inclusion on the cylinder as part of the united components of the framework.

If the "framework including base, top, and side pieces" of claim 1 was not intended to be inclusive of "at least one fluid containing cylinder cylinders mounted with the framework",  the disputed claim terms could simply have been written as "a framework; at least one fluid containing cylinder attached to said framework" or "a framework; at least one fluid containing

---

[3] All preceding definitions from Online Dictionary, http://www.webster-dictionary.org, (This was the reference used by the Court in its Markman ruling.)

[4] Merriam-Webster's 11th Collegiate Dictionary © 2008

[5] http://www.webster-dictionary.org/

[6] Merriam-Webster's 11th Collegiate Dictionary © 2008

[7] http://www.webster-dictionary.org/

cylinder attached to the framework, the cylinder having a base." This is not how claim 1 reads and not how it was intended to be read.  The framework as claimed incorporates the base, top, and cylinder side pieces as a unit.  If not, there would be no reason to recite the elements in the claim statement reciting "a framework including a base, top, and side pieces."  Courts must give meaning to all of the words in a claim and are not free to read any limitations out of a claim. Claim limitations defining the subject matter of the invention must never be disregarded.  *In re Sabatino,* supra. *Ethicon Endo–Surgery, Inc. ,* supra.

The following chart presents a proposed construction of disputed terms in Claim 1 of the '322 patent requiring construction:

### PROPOSED CONSTRUCTION OF DISPUTED TERMS IN CLAIM 1 OF '322 PATENT NOT YET CONSTRUED

| TERMS NOT CONSTRUED | PROPOSED CONSTRUCTION |
|---|---|
| framework | A structure of parts fitted and united together |
| including | comprising |
| A base | A bottom support of the frame |
| side pieces | Part on the outer edges of the frame |
| a framework including a base, top, and side pieces | a structure comprising a bottom, top, and edge parts united together |
| cylinder, mounted with the framework | Cylinder united with the other framework components creating the framework |

## B. Response To Plaintiff's Arguments For Infringement of '322 Patent

Scarborough asserts that various individual elements of the device shown and described in IntegriCert's '569 Patent correspond to the framework base recited in claim 1 of the '322

Patent and in doing so conclude there is infringement of Claims 1-4 and 7-12. Doc. 155-1 at 12;

see also Doc. 155-1 at 14 (Scarborough's color coordinated version of Fig. 1 of the '569 Patent).

In doing so Scarborough ignores both express claim limitations and the inherent limitations of

the claim terms provided by common meanings and in the specification.

**Fig. 1 of the '569 Patent**, Exhibit C



**Fig. 1 of the '569 Patent**, Exhibit C

| '322 Patent, Claim 1 | IntegriCert's Load Test Apparatus |
|---|---|
| 1. An apparatus for testing the weld strength and integrity of an attachment weld, comprising: | A load test apparatus (100) that applies the test load to the container to simulate the loading conditions applied to the container when it is lifted or suspended.<br>'569 Patent, Col. 1, lines 23-26 |
| a framework including a base, top, and side | Apparatus (100) has two cylinder |

| pieces; and | assemblies (120) each with a cylinder (250) with its own base plate (285) and a top beam assembly (110).<br><br>**There is no "base" uniting the cylinder assemblies (120) and the top assembly into a framework.** |
|---|---|
| at least one fluid containing cylinder, mounted with the framework, for moving a piston therein inwardly and outwardly as fluid is moved out or in respectively; | Apparatus (100) has two cylinder assemblies (120) each with a cylinder (250) for moving a piston inward and outwardly.<br><br>**The cylinder piston independently support the beam assembly and not united with each other by a common base.  They are not "mounted" with a framework with a base, top, and sides.** |
| structure for releaseably or permanently attaching to a pad eye, lifting lug or other device joined by the attachment weld to another structure; | Apparatus (100) has two Pivotal Plate Assemblies 210 with Cable Assembly 130 for attachment to the pad eyes of a container to test them simultaneously. |
| whereby moving fluid into the cylinder causes the piston to move outwardly to tension the pad eye, lifting lug or other device to test the integrity of the attachment weld in a non destructive manner. | The container and its components including pad eyes are tested to verify a specified container load capacity. |

Claim 1 of the '322 Patent recites a framework and the framework is integral to the function of inventions it describes.  As has be previously noted, the "test apparatus *can be mounted to a base plate 37* in order *to provide support for the test apparatus or*  it can be used without the base plate 37 if it is "attached via clamps 38 or other suitable method *directly to the base support structure to which the pad eye 19*.  '322 Patent, Col. 4, lines 62-67.  "*The two footings 9 will preferably be attached by welding to the test  apparatus base plate 37 or attached by clamps to the pad eye base plate 21. Preferably, the two footings 9 are substantially horizontally and symmetrically centered on each side of the pad eye 19*. This said placement, of the two footings 9, is assured through the substantially symmetric connection of the right and left

cylinders 5 to the bridge plate. "   From this description it can be seen that the term "a framework including a base, top, and side pieces" intends that these elements are united and tied together to form the claimed framework.  This required connection of united elements is seen in Figs. 3 and 3A of the '322 Patent.



In comparing the limitations of claim 1 to the accused IntegriCert device, the IntegriCert device does not have a "framework including a base, top, and side pieces" as recited.  The word "frame" or "framework" is not used or even mentioned in the description of the IntegriCert device in the '569 Patent.   Rather, the IntegriCert device is an assembly of individual sub-assemblies.  They do not create a framework as recited in the claims because they are not tied or united by a base.  In use, the base plates 285 of the individual cylinders 250 of the cylinder assemblies 120 of the IntegriCert device simply rest on the floor of the container 160 and provide general support to allow cylinder assembly 120 to stand when placed in basket 160.  There is no base linking the side cylinder components as was described in the '322 Patent and recited in the claims.

Scarborough asserts that the pivotal plate 410 of pivotal plate assembly 210 is the side piece element recited in Claim 1 as part of the claimed framework.  (Doc. 155-1 at 12)This argument stumbles from the outset since it is clear for Scarborough's color coded Fig. 1 in its memorandum [Doc. 155-1 at 14] that the pivotal plate 410 of pivotal plate assembly 210, does not interconnect or in any other way couple to the base plate 285 of cylinders 250 to provide part of a framework.

Claim language governs claim meaning.  Courts are not allowed to rewrite claims and must construe the language of the claim at issue based on the words used.  The construction that gives meaning to all of the claim terms is preferred to one that does not do so.  *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005 (en banc); *Merck & Co, Inc. v. Teva Pharmaceuticals USA, Inc.,* 395 F. 3rd 1364, 1372 (Fed. Cir. 2005); *SRAM Corp. v. AD-II Engineering, Inc.*, 465 F.3d 1351 (Fed. Cir. 2006).

Therefore, in view of the evidence as presented above, IntegriCert's device does not utilize a "framework including a base, top, and side pieces" or "a cylinder, mounted with the framework" as recited in claims 1-21 of the '322 Patent. Without each and every element being present in an accused device there is no literal infringement as a matter of law.  Consequently, Claims 1-4 and 7-12 as asserted by Scarborough are not infringed.  Certainly, there is a material issue of fact as to whether they are infringed. *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Intern., Inc.,* 389 F3d 1370, 1378 (Fed. Cir. 2004; *Cephalon, Inc. v. Watson Pharmaceuticals, Inc.,* 707 F.3d 1330, (Fed Cir. 2013).

**C.  The Limitations in the Claims of the '447 Patent are Not Found in IntegriCert's Device**

Scarborough asserts that at least Claims 1, 6-12, 14, 15, 18-23, and 26-31 of the of the '447 Patent are infringed by IntegriCert's load test apparatus for shipping containing which is

shown and described in the '569 patent. However, of those claims, only claim 14 of the '447 patent is subject to this motion.

## 1. Review of Independent Claim 1 in View of the Specification and Common Term Meanings.

Claim 14, after reexamination reads:

**14**. A method for testing weld strength and integrity of an attachment weld [when desired], comprising the steps of:
providing [a desired test piece wherein said test piece comprises] *the attachment weld joining* a pad eye, lifting lug, or other device [being tested] *to another structure*;
providing a framework including at least two pieces;
providing at least one fluid cylinder, having a first end and a second end, mounted with the framework *to produce a mounted cylinder within a mounted framework*, for moving a piston therein inwardly and outwardly as fluid is moved out or in respectively;

providing a first and second attachment apparatus, wherein a pressurized fluid can enter in or exhaust from said *at least one fluid* cylinder;
providing an attachment structure for attaching to said [test piece] *pad eye, lifting lug or other device joined to said another structure by the attachment weld*; *and*
[providing said framework; and]
assembling the framework with the mounted cylinder fixedly attached on the mounted framework;
[whereby] urging fluid into the cylinder [causes] *to cause* the piston to move outwardly to tension the pad eye, *lifting lug or other device joined to said another structure,* thus testing the integrity of the *attachment* weld, and
whereby [the] *a* testing technician or test operator can inspect the [tested device and the weld] *attachment weld* for any structural damage or deformation.

Claim 14 of Scarborough's '447 Patent recites as limitations "*providing a framework including at least two pieces*"; "*providing at least one fluid cylinder, having a first end and a second end, mounted with the framework to produce a mounted cylinder within a mounted framework, for moving a piston therein inwardly and outwardly*" least of at least wherein the framework is assembled "*with the mounted cylinder <u>fixedly</u> attached on the mounted framework*"; and "*assembling the mounted cylinder with the mounted cylinder fixedly attached on the mounted framework*."

It is difficult to tell what invention embodiment of the '447 patent corresponds to this claim 14.  It cannot be the single cylinder embodiments shown in Figs. 1, 1A, 8,  8a, 9, 9a because as noted in the  '447 patent, at Col. 10, lines 36-45, "In use, the single cylinder version

of the present device produces an upward force on the pad eye or lifting lug when the cylinder

shaft 13 retracts."

Consequently, it appears the embodiment that corresponds to the claimed structure is that

of Fig. 10 which is described at Col. 6, lines 36-46.



**FIG. 10**

FIG. **10** illustrates an alternate embodiment of the invention, a dual load tester **107**. Dual load tester **107** permits the simultaneous load testing of two connecting members, such as pad eyes **19** or lifting lugs. Referring to FIG. **10**, dual load tester **107** includes opposing arms **108**. The first ends **92** of arms **108** are connected by pins **39** to pad eyes **19**. The second ends of arms **108** are pivotally connected by pin **39**. Brackets **90** are preferably releasably attached to the insides of arms **108** and are adjustable along the lengths or arms **108**. A hydraulic cylinder **5** having a retractable and cylinder shaft **13** is mounted between brackets **90**. The hydraulic fluid is supplied to cylinder **5** through hoses **67** attached to cylinder fittings **7** and **7a**. A hydraulic pump, flow control manifold, and directional valve (not here illustrated) may be used to increase the hydraulic pressure on, and to move a piston in, cylinder **94** so as to urge arms **108** apart.

FIG. **10** illustrates how dual load tester **107** is used to simultaneously load test two pad eyes **19**, the lifting lug, or other lifting connection it is attached to. First ends **92** of arms **109** are attached to the pad eyes **19**, the lifting lug, or other lifting connection it is attached to. Hydraulic pressure in cylinder **5** is then increased to extend its shaft, thus urging arms **108** apart and applying tension force to the pad eyes **19**, the lifting lug, or other lifting connection it is attached to. A pressure gauge on the flow control manifold (not here shown) is used to monitor the hydraulic pressure as it is increased. The force applied to pad eyes **19**, the lifting lug, or other lifting connection it is attached to by arms **108** is readily calculated by the use of pressure gauge **73**.

### (a) Terms Requiring Construction

### (1) "framework including at least two pieces"

Contrary to the '322 patent, the '447 patent does provided some description about what is

intended as a "framework".  This appears at Col. 7, lines 15 - 25:

18

limited to, cables or tension wires. It should also be appreciated that one skilled in the art would recognize that cables or tension wires could be utilized in attaching pistons to a variety of frameworks including, but not limited to, support columns, bridge plates, cross bars, mounted framework, arms, brackets, or footing. It should also be appreciated that one skilled in the art would recognize that cables or tension wires could be utilized in attaching the test piece to a variety of frameworks or bridges including, but not limited to, support columns, bridge plates, cross bars, mounted framework, arms, brackets, or footing.

The term "pieces" is described only in the claims.

In the context of claim '447 with its limitations "*providing at least one fluid cylinder, having a first end and a second end, mounted with the framework to produce a mounted cylinder within a mounted framework, for moving a piston therein inwardly and outwardly*" and "*with the mounted cylinder* _fixedly_ *attached on the mounted framework*", the '447 written general description of framework, and using the common meaning of the term pieces as previously discussed, it appears that a "framework including at least two pieces" would be a structure having at least two parts within which a cylinder  may be mounted."

(**2**) *mounted with the framework to produce a mounted cylinder within a mounted framework.*

As noted above "mounted" is defined as placed on a suitable support, or fixed in a setting; as, a mounted gun; a mounted map; mounted gem.[8] "With" is defined as combination or inclusion.

**Within:** Prep. 1. In the inner or interior part of; inside of; not without; as, within doors.[9]

With this background, the term "*mounted with the framework to produce a mounted cylinder within a mounted framework*" when used in context of the cylinder means mounting the cylinder on the inner part of  the framework.

---

[8] http://www.webster-dictionary.org/
[9] http://www.webster-dictionary.org/

**(3) *"with the mounted cylinder <u>fixedly</u> attached on the mounted framework"***

"Fixedly" referred to throughout the specification of the '447 patent in a similar context, such as, "fixedly attached" "by a pin 39." in the specification, Col. 4, line 7-8; Col. 5, line 37-38 as examples.

Fixedly and Fixed are defined as:

**Fixedly:** adv. 1.  In a fixed, stable, or constant manner.

**Fixed**: a. 1. Securely placed or fastened, settled, established, firm, immovable.[10]

This definition is consist with the usage employed in the '447 patent.

| TERMS NOT CONSTRUED | PROPOSED CONSTRUCTION |
|---|---|
| Framework with at least two pieces | a structure  having at least two parts within which a cylinder  may be mounted |
| mounted   with   the   framework   to produce a mounted cylinder within a mounted framework. | Fixed in a stable, or constant manner |
| with the mounted cylinder fixedly attached on the mounted framework | |

| Claim 14, '447 Patent | IntegriCert's  Load Test Apparatus |
|---|---|
| **14.** A method for testing weld strength and integrity of an attachment weld, comprising the steps of: | A load test apparatus (100) that applies the test load to the container to simulate the loading conditions applied to the container when it is lifted or suspended.<br>'569 Patent, Col. 1, lines 23-26 |

---

[10] http://www.webster-dictionary.org/

| | |
|---|---|
| providing *the attachment weld joining* a pad eye, lifting lug, or other device *to another structure;* | |
| providing a framework including at least two pieces; | **Apparatus (100) has two cylinder assemblies (120) each with a cylinder (250) with its own base plate (285) and a top beam assembly (110).** |
| providing at least one fluid cylinder, having a first end and a second end, mounted with the framework *to produce a mounted cylinder within a mounted framework,* for moving a piston therein inwardly and outwardly as fluid is moved out or in respectively; | **Apparatus (100) has two cylinder assemblies (120) each with a cylinder (250) with its own base plate (285) and a top beam assembly (110).**<br><br>**Each cylinder 250 is positioned below the top beam assembly.  There is no framework where a cylinder 250 is mounted within. The beam assemblies are positioned upon the cylinders.** |
| providing a first and second attachment apparatus, wherein a pressurized fluid can enter in or exhaust from said *at least one fluid* cylinder; | |
| providing an attachment structure for attaching to said *pad eye, lifting lug or other device joined to said another structure by the attachment weld; and* | |
| assembling the framework with the mounted cylinder fixedly attached on the mounted framework; | **The beam assemblies are not fixedly attached on the mounted framework.  There is no framework as recited. The beam assemblies just are positioned upon the cylinders.** |
| urging fluid into the cylinder *to cause* the piston to move outwardly to tension the pad eye, *lifting lug or other device joined to said another structure,* thus testing the integrity of the *attachment* weld, and | |
| whereby *a* testing technician or test operator can inspect the *attachment weld* any structural damage or deformation. | |

21

Claim language governs claim meaning.  Courts are not allowed to rewrite claims and must construe the language of the claim at issue based on the words used.  The construction that gives meaning to all of the claim terms is preferred to one that does not do so.  *Phillips*, 415 F.3d 1303 (Fed. Cir. 2005); *Merck* at 1372 (Fed. Cir. 2005); *SRAM Corp.*, 465 F.3d 1351 (Fed. Cir. 2006).

Claim 14 Scarborough's claim language directs that the cylinder must be "fixedly attached" to the framework of the apparatus, thus any apparatus which does not fixedly attach its cylinder to its framework will not infringe that element.  The beam 200 of the IntegriCert device as recited in the '569 patent is not "fixedly attached" as recited in Claim 14. This is seen when referring to the '569 patent at Col. 4, line 19 and Fig. 6:

FIG. **6** shows a partial section view through the Beam **200**, Beam Housing **420** and the Piston Rod **260** of the Load Test Apparatus Assembly **100**. Beam **200** fits within the Beam Housing Opening **490** of the Beam Housing **420** such that each Pivotal Plate Assembly **210** fits slidably onto Beam **200**. A compression Load Cell **450**, shown in cross-section, is sandwiched between the top surface **280** of the Piston Rod **260** and the bottom surface **575** of Bottom Plate **570**. Piston Rod **260** fits slidably within Load Cell Housing **440**.



FIG. 6

22

Fixedly attached requires the attachment to be fixed in a stable, or constant manner.  A slidably positioned beam is not stable and is not intended to be.  If the beam assembly was attached to the device was stable, there would be no movement to allow the load cell 450 to function.

Further, with regard to the limitation, "providing at least one fluid cylinder, having a first end and a second end, mounted with the framework *to produce a mounted cylinder within a mounted framework,* for moving a piston therein inwardly and outwardly as fluid is moved out or in respectively", as can be seen from Figs. 1 and Fig. 6of the '569 patent, illustrated above, the beam assembly 110 slides on beam housing 420 and the piston rod 260 slidably fits on the associated load housing.  The base of the cylinder 250 simply sits on the floor of the container 160 and is not attached.  There is no framework where the cylinder 250 may be mounted within.

As IntegriCert's cylinder 120 is not "fixedly" attached or "mounted within a mounted framework" as described in Claim 14 of the '447 Patent, each and every element is not present in IntegriCert's device and there can be no finding of literal infringement as a matter of law. *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Intern., Inc.,* 389 F3d 1370, 1378 (Fed. Cir. 2004; *Cephalon, Inc. v. Watson Pharmaceuticals, Inc.,* 707 F.3d 1330, (Fed Cir. 2013).

**D.  Summary Judgement Is Improper As There Are Genuine Issues of Material Fact In Dispute**

Determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact can only be properly decided on summary judgment when no genuine issue of material fact exists and, in particular, when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device. *See,*

*e.g., North Am. Vaccine, Inc. v. American Cyanamid Co.,* 7 F.3d 1571, 1574, 28 USPQ2d 1333, 1335 (Fed.Cir.1993); *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

There is clearly a genuine dispute regarding the structure and use of IntegriCert's device. A genuine dispute as to the structure and function of the accused device and method can only be shown to exist if there is sufficient evidence "such that a reasonable fact finder could decide the question in favor of the non-moving party." *Transocean*, 400 F.Supp.2d at 1001 (citing *Opryland USA Inc. v. Great American Music Show, Inc.*, 970 F.2d 847, 850 (Fed. Cir. 1992)). IntegriCert has provided considerable evidence showing the many differences between the structure and function of IntegriCert's and the asserted claims of the '322 and '447 Patents.

When ruling on this motion for summary judgment, all of IntegriCert's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *See Anderson* at 255, 106 S.Ct. 2505. Summary judgment is improper in this case as a reasonable jury, when faced with the overwhelming discrepancies between the structural elements and functions of Scarborough's '322 and '447 Patent claims and IntegriCert's device, cannot conclude that IntegriCert has infringed Claim 1 of the '322 Patent or Claim 14 of the '447 Patent. *Id.* at 248.

## IV. CONCLUSION

IntegriCert has shown that there is a clear dispute between the parties regarding the structure and function of IntegriCert's device. The evidence relied upon by IntegriCert is taken directly from Scarborough's own patents, memorandum, and exhibits. Even Scarborough's own comparison of Claim 1 of the '322 Patent and Claim 14 of the '447 Patent fall short when viewing the structure and operation of IntegriCert's alleged infringing device with the structure and use claimed by Scarborough's '322 and '447 Patents.

Scarborough has failed to establish that there is not a genuine issue of material fact. In

taking all of IntegriCert's evidence as believed and all justifiable inferences being drawn in its favor, a reasonable jury cannot find that every limitation recited in Claim 1 of the '322 Patent and Claim 14 of the '447 Patent could be found in IntegriCert's device. Scarborough's instant motion is improper and should be denied.

Respectfully submitted,


_/s/ William W. Stagg_____
William W. Stagg, T.A. (#1613)
Ryan M. Goudelocke  (#30525)
Chase A. Manuel (#34223)
*Durio, McGoffin, Stagg & Ackermann*
220 Heymann Boulevard
Lafayette, Louisiana  70503
Telephone:  (337) 233-0300
Facsimile:  (337) 233-0694
*Counsel for IntegriCert, LLC*

## **CERTIFICATE OF SERVICE**


I certify that I have, this 20th day of November, 2015, provided all parties with a copy of the foregoing pleading by means of the Western District's CM/ECF electronic filing system.


__/s/ **William W. Stagg/**_____
William W. Stagg (#1613)