<u>Patentee's Remarks in Response to Examiner's Rejection of the Claims</u>

Examiner has relied upon the following references as the bases of rejection in the present Office Action:

1.  U.S. Patent No. 5,548,997 to Bauer ("Bauer")
2.  U.S. Patent No. 3,738,163 to McEntire ("McEntire")
3.  U.S. Patent No. 5,587,537 to Simmons ("Simmons")
4.  U.S. Patent No. 6,095,498 to Lemoine ("Lemoine")
5.  U.S. Patent No. 4,584,881 to Hogan ("Hogan")
6.  U.S. Patent No. 3,595,072 to Richards ("Richards")
7.  U.S. Patent No. 3,690,160 to Kriesten ("Kriesten")
8.  U.S. Patent No. 2,763,149 to Long ("Long")
9.  U.S. Patent No. 3,203,231 to Klatchko ("Klatchko")
10. U.S. Patent No. 3,377,847 to Aske ("Aske")
11. U.S. Patent No. 5,361,639 to Thorsen ("Thorsen")
12. U.S. Patent No. 4,606,225 to Thomason ("Thomason")
13. U.S. Patent No. 6,167,764 to Calhoun ("Calhoun")
14. U.S. Patent No. 4,475,404 to Rutledge ("Rutledge")
15. U.S. Patent No. 2,431,295 to Eksergian ("Eksergian")
16. U.S. Patent No. 4,353,190 to Gleeson ("Gleeson")
17. U.S. Patent No. 5,948,994 to Jen ("Jen")
18. U.S. Patent No. 5,437,191 to Dripke ("Dripke")
19. U.S. Patent No. 4,478,086 to Gram ("Gram")
20. U.S. Patent No. 3,994,158 to Weinhold ("Weinhold")
21. U.S. Patent No. 2,884,986 to Heldenbrand ("Heldenbrand")
22. U.S. Patent No. 1,851,345 to Brown ("Brown")

Patentee now responds to each rejection in turn.  Below, Patentee respectfully traverses each rejection and shows that the application should move to allowance and issuance of the reexamination certificate.

**Bauer Pre-AIA 35 U.S.C. § 102(b) re: Claims 1-4 and 7-20**

Examiner cites Bauer as anticipating claims 1-4 and 7-20 of the '322 Patent, as describing each and every element of the same.  Patentee respectfully traverses these rejections.

Establishing anticipation under 35 U.S.C. § 102(b) requires that a single prior art reference contain an enabling description of every element recited in the claim "in as complete detail as is contained in the claim." *Scripps Clinic & Research Found. v. Genentech Inc.*, 927 F.2d 1565 (Fed Cir. 1991); *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1236 (Fed. Cir 1989); *See also* MPEP § 2131. That is, "[t]here must be no difference between the claimed invention and the reference disclosure." *Id.* Further, "anticipation requires that ... the prior art reference must be enabling, thus placing the alleged disclosed matter in the possession of the public." *Akzo N.V. v U.S. Int'l Trade Comm'n*, 808 F.2d 1471 (Fed. Cir. 1986) (citing *In re Brown*, 329 F.2d 1006, 1011 (C.C.P.A. 1964)).

Patentee submits that Bauer describes an apparatus used to hydraulically apply an axial force on a valve stem. Rather than testing the integrity or weld strength of the valve stem, Bauer's apparatus "simulates the loading condition of a motor operated valve." Bauer, Abstract, lines 1-2. The loading is monitored "to ensure that the valve is capable of operating, such as to open or close, in the event of an unusual condition." *Id.* at lines 8-11. Phrased differently, Bauer hydraulically loads the valve stem and determines if the motor can turn the valve stem. Thus, Bauer fails to describe a device used to test a weld between a pad eye and another object in a non-destructive manner.

Bauer, instead, relates to testing the ability of a motor to turn a valve stem under a fluid load. Bauer also fails to describe any reference to an "attachment weld," much less "testing the integrity of the attachment weld." The term "attachment weld" has an antecedent basis in the preamble of each of Patentee's independent claims, making the preamble's purpose language applicable to this consideration of claim scope. *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989); *Bell Commc'ns Research v. Vitalink Commc'ns Corp.* 55 F.3d 615, 621 (Fed. Cir. 1995) ("preamble is a limitation because body of claim referred back to preamble"); *see also Pitney Bowes, Inc. v. Hewlett Packard Co.*, 182 F.3d 1298, 1302 (Fed. Cir. 1999); *see also* MPEP § 2111.01. For at least the above-described reasons, Bauer cannot anticipate claim 1 as each and every element is not described, much less with the required enablement.

With respect to claim 1, Bauer fails to describe at least the following elements:

a) "an apparatus for testing the weld strength and integrity of an attachment weld;"

b) an "attachment weld;"

d) "structure for releaseably or permanently attaching to a pad eye, lifting lug or other device joined by the attachment weld to another structure;"

d) "moving [the] piston therein inwardly and outwardly as fluid is moved out or in respectively;" and,

e) "moving fluid into the cylinder causes the piston to move outwardly to tension the pad eye, lifting lug or other device to test the integrity of the attachment weld".

Below, Patentee discusses some of the missing elements in claim 1.

| Claim 1 Elements | Does Bauer Describe Element? |
|---|---|
| 1. An apparatus for testing the weld strength and integrity of an attachment weld, comprising: | No – the Requester admitted in its Request that Bauer describes, "a device for applying a known desired axial load by means of an [*sic*] hydraulic cylinder for testing a valve stem" – not the invention at issue. Moreover, Bauer fails to show "an apparatus for testing weld strength and integrity of an attachment weld." Bauer does not disclose an "attachment weld" or any weld. In fact, the word "weld" is not found in Bauer. |
| at least one fluid containing cylinder, mounted with the framework, for moving a piston therein inwardly and outwardly as fluid is moved out or in respectively; and | No – Bauer would not function if a piston were pressed against Bauer's valve stem 20 because valve stem 20 would not be able to move due to the friction between the piston and the valve stem. |
| structure for releaseably or permanently attaching to a pad eye, lifting lug or other device joined by the attachment weld to another structure; | No – Bauer describes a rotating valve stem 20. Thus, Bauer's valve stem 20 is not "attached." In fact, if valve stem 20 were "attached," it could not rotate and Bauer's device would be inoperative. Further, Bauer does not disclose a "pad eye or |

|  | other device joined by the attachment weld to another structure." As such, Bauer does not describe this element and actually teaches away from attaching a test article. |
| whereby moving fluid into the cylinder causes the piston to move outwardly to tension the pad eye, lifting lug or other device to test the integrity of the attachment weld in a non-destructive manner. | No – Bauer fails to describe a "cylinder which causes a piston to move" to "test the integrity of the attachment weld in a non destructive manner." As discussed above, Bauer fails to disclose a weld of any type. |

Claim 2 is not anticipated by Bauer

Claim 2 depends from claim 1, and Bauer does not describe all elements of claim 1, as shown. Accordingly, Bauer does not anticipate claim 2 as a matter of law. *In re Fine*, 837 F.2d 1071, 1076 (Fed. Cir. 1988) (if independent claim is allowable, then so are the dependent claims).

With respect to claim 2, Bauer fails to describe at least the following elements:   1) "tensioning the pad eye"; and/or 2) test the integrity of the attachment weld."

| Claim 2 Element | Does Bauer Describe Element? |
| --- | --- |
| 2. The apparatus in claim 1, whereby moving fluid into the cylinder causes the piston to move inwardly to tension the pad eye, lifting lug or other device thereby testing the integrity of the attachment weld. | No – Bauer describes a fluid, not a piston, directly loading a valve stem 20. Bauer does not mention a "weld" or "testing the integrity of the weld." Bauer states, "at numerous points in a nuclear power plant, the flow of fluid is controlled by large gate valves. When a considerable pressure difference exists on opposite sides of the gate, frictional forces become large and a large force must be exerted by the valve stem to move the gate." |

|  | Bauer, col. 1, lines 16-20. As such, rather than disclosing a piston tensioning a pad eye to test the integrity of the weld, Bauer describes none of these claim limitations. |
|--|--|

For the same reasons as discussed with respect to the rejection of claim 1, Bauer relates to "valve stems" and not "pad eyes."  Bauer fails to describe all elements of claims 1 and 2, and, therefore, does not anticipate claim 2.


### Claim 3 is not anticipated by Bauer

Claim 3 depends from claim 1, and Bauer does not describe all elements of claim 1 as shown.  Accordingly, Bauer does not anticipate claim 3 as a matter of law.  *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).  Below, Patentee discusses another missing element in claim 3.

| Claim 3 Elements | Does Bauer Describe Element? |
|--|--|
| 3. The apparatus of claim 1, further including: | No - Bauer does not describe all elements of claim 1. |
| a bridge plate or cross bar, having a left and right end, fixedly attached, on said left and right ends and near the center, to and supported by said beam or the cylinder. | No –Bauer does not describe that load beams 30 and 32 as bridge plates or cross bars, nor does it describe such beams as "supported near the center." In fact, as argued in the Office Action with respect to claim 1, valve stem 20 is held by load beams 30 and 32. |

For the same reasons as discussed with respect to the rejection of claim 1, Bauer relates to "valve stems" and not "pad eyes" and also lacks a bridge plate supported "near the center." Bauer fails to describe all elements of claims 1 and 3. Therefore, Bauer cannot anticipate claim 3.

<u>Claim 4 is not anticipated by Bauer</u>

As discussed above, claim 4 depends from claims 1 and 3, and Bauer does not describe all elements of claim 1 or 3 as just shown.  Accordingly, Bauer does not anticipate claim 4 as a matter of law.  *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

With respect to claim 4, Bauer fails to describe at least the following element: "wherein said bridge plate can be comprised of two substantially identical plates wherein said cylinder shaft or support beams are fixedly attached and sandwiched between said bridge plates." Assuming, for the sake of argument, that split loading beams 30 and 32 are the same as a bridge plate or cross beam, which they are not, split loading beams 30 and 32 are not "fixedly attached and sandwiched between," support rods 46 and 48. In fact, as seen in Bauer at Figure 2, below, beams 30 and 32 cannot directly contact support rods 46 and 48.



FIG. 2

FIGURE 2 of Bauer

| Claim 4 | Does Bauer Describe Element? |
|---|---|
| The bridge plate or cross bar of claim 3, wherein said bridge plate can be comprised of two substantially identical plates | No – split loading beams 30 and 32 are not "fixedly attached and sandwiched between," support rods 46 and 48. In fact, as seen in Bauer at |

14

| | |
|---|---|
| wherein said cylinder shaft or support beams are fixedly attached and sandwiched between said bridge plates. | Figure 2, above, beams 30 and 32 cannot directly contact support rods 46 and 48. |

For the same reasons as discussed with respect to the rejection of claims 1 and 3, Bauer relates to "valve stems" and not "pad eyes" or attachment welds. Thus, Bauer fails to describe all elements of claims 1, 3 and 4. Therefore, Bauer cannot anticipate claim 4.

### Claim 7 is not anticipated by Bauer

Claim 7 depends from claim 1, and Bauer does not describe all elements of claim 1 as shown. Accordingly, Bauer does not anticipate claim 7 as a matter of law. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

With respect to claim 7, Bauer fails to describe at least the following elements: 1) a pad eye, lifting lug or a weld attaching the pad eye or lifting lug to another structure; 2) a shaft, having a first end and a second end, the first end fixedly attached to said internal piston and said second end is fixedly attached to said bridge plate or cross bar; 3) wherein said first pressurized fluid attachment means is disposed axially between said cylinder first end and said piston; and, 4) wherein said second pressurized fluid attachment means is disposed axially between said cylinder second end and said piston. Below, Patentee provides further discussion about how Bauer fails to describe these claim 7 elements.

| Claim 7 | Does Bauer Describe Element? |
|---|---|
| 7. The apparatus of claim 1, wherein the cylinder further comprises: | No - Bauer does not describe all elements of claim 1. |
| a substantially cylindrical piston carried in said cylinder for movement therein along an axis, of said cylinder, being substantially perpendicular to a plane formed between said pad eye, lifting lug | No – Bauer does not describe a "pad eye" or a "lifting lug" or a "weld" attaching the pad eye or lifting lug to another structure. In fact, Bauer fails to mention a weld or testing of a weld. If Bauer's valve stem 20 were welded to another structure, |

| | |
|---|---|
| or other device and the attachment weld attaching said pad eye, lifting lug or other device to said another structure; | Bauer would be inoperative. |
| a shaft, having a first end and a second end, the first end fixedly attached to said internal piston and said second end is fixedly attached to said bridge plate or cross bar; and | The Office Action, which adopted the Requestor's proposed anticipation rejection from pages 87-88 of Requester's Reexam Request, states, "Bauer '997 describes cylinder 53 fixedly attached to the crossbar 30, 32." (*See* Figs. 1, 3, and 4; col. 3, line 50-col. 4, line 15; Fig. 9, col. 4, lines 50-54)." *Id.* at p. 88. In fact, no such reference number appears in these figures, or anywhere in Bauer. Thus, the Office has failed to demonstrate that this element is found in Bauer. |
| wherein said first pressurized fluid attachment means is disposed axially between said cylinder first end and said piston; | No – As shown in Figures 9 and 10, Bauer does not describe "the first pressurized fluid attachment means is disposed axially between said cylinder first end and said piston." |
| wherein said second pressurized fluid attachment means is disposed axially between said cylinder second end and said piston; and | No – The Office points to Bauer's Figures 9 and 10, and cited text in the specification discussing the same, but these figures and text do not describe "said second pressurized fluid attachment means is disposed axially between said cylinder second end and said piston." |

### Claim 8 is not anticipated by Bauer

Claim 8 depends from claim 7, which in turn depends from claim 1. Bauer does not describe all elements of claim 1 or claim 7. Accordingly, Bauer does not anticipate claim 8 as a matter of law. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

With respect to claim 8, Bauer fails to describe at least the following element: 1) Bauer fails to describe a "pad eye, lifting lug or other device" that is "fixedly attached to said pad eye, lifting lug or other device.

| Claim 8 | Does Bauer Describe Element? |
|---|---|
| 8. The apparatus of claim 7, wherein said cylinder comprises: | No - Bauer does not describe all elements of claim 7. |
| said second end of said shaft is fixedly attached to said pad eye, lifting lug or other device. | No – Bauer fails to describe a "pad eye, lifting lug or other device" that is "fixedly attached to said pad eye or other device to be tested. According to the Office Action, "Bauer '997 describes cylinder 204 attached to valve stem 211 to be tested. (*See* Fig. 10; col. 5, lines 50-67)." In fact, Bauer's Figure 10 shows that cylinder 204 is "mounted on an adjustable support 213 which is in turn mounted on top of a valve motor operator (not shown)." As such, Bauer's cylinder is not "fixedly attached to the said pad eye or other device to be tested." As discussed above, if Bauer's shaft were fixedly attached to valve stem 211, valve stem 211 could not turn and the device would be inoperative. |

## Claim 9 is not anticipated by Bauer

Claim 9 depends from claim 1, and Bauer does not describe all elements of claim 1 as shown. Accordingly, Bauer does not anticipate claim 9 as a matter of law. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

With respect to claim 9, Bauer fails to describe at least the following element: 1) an "internal piston."

| Claim 9 | Does Bauer Describe Element? |
|---|---|
| 9. The apparatus in claim 1, further including: | No - Bauer does not describe all elements of claim 1. |
| a control means for allowing pressurized fluid to be alternatively supplied to and exhausted from said cylinder in a manner that the internal piston will move in an axial direction away from away said first end of said cylinder, toward the second end of said cylinder, when the pressurized fluid enters through said first pressurized fluid attachment means, and that the said internal piston will move in an axial direction away from said second end of said cylinder toward the first end of said cylinder, when the pressurized fluid enters through said second pressurized fluid attachment means. | No –Bauer does not describe or show a piston or the movement of a piston as required by this claim element. *See* Bauer, (Figs. 9 and 10; col. 4, lines 46-65; col. 5, lines 50-67).   Thus, Bauer fails to anticipate claim 9. |

With respect to claim 9, Bauer is again deficient because, for one, Bauer fails to describe "movement of a piston." For these reasons, and those stated with respect to claim 1, Bauer does not anticipate claim 9, as each and every element is not described by Bauer.

<u>Claim 10 is not anticipated by Bauer</u>

Claim 10 depends from claims 1 and 9, and Bauer does not describe all elements of claim 1 or 9, as shown.  Accordingly, Bauer does not anticipate claim 10 as a matter of law. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

With respect to claim 10, Bauer fails to describe at least the following elements: 1) an "internal piston;" 2) "a pad eye or other lifting lug;" and 3) "a weld."

18

| Claim 10 | Does Bauer Describe Element? |
|---|---|
| 10. The apparatus in claim 9, wherein: | No - Bauer does not describe all elements of claim 9. |
| the cylinder shaft will extend when said internal piston moves in an axial direction away from said first end of said cylinder toward the second end of said cylinder, causing said mounted cylinder to exert a force substantially perpendicular to a plane formed between the pad eye, lifting lug or other device and the attachment weld attaching said pad eye, lifting lug or other device to said another structure. | No – The sections cited in Bauer, (Fig. 2; col. 2, lines 50-67), do not describe or show a piston or the movement of a piston. In addition, and as discussed above, Bauer does not describe a lifting lug or an attachment weld attaching a pad eye or lifting lug to another structure. Thus, Bauer fails to anticipate claim 10. |

With respect to claim 10, Bauer is again deficient because, for example, Bauer fails to describe "movement of a piston," as well as a pad eye or a lifting lug attached by a weld. In fact, the cited portions of Bauer do not even mention the words "pad eye," "lifting lug," or "weld." For these reasons, and those stated with respect to claims 1 and 9, Bauer does not anticipate claim 10, as each and every element is not described by Bauer.

### Claim 11 is not anticipated by Bauer

Claim 11 depends from claims 1 and 9, and Bauer does not describe all elements of claim 1 or 9 as shown. Accordingly, Bauer does not anticipate claim 11 as a matter of law. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

With respect to claim 11, Bauer fails to describe at least the following elements: 1) an "internal piston;" 2) "a pad eye, lifting lug or other device;" and, 3) "a weld."

19

| Claim 11 | Does Bauer Describe Element? |
|---|---|
| 11. The apparatus in claim 9, wherein: | No - Bauer does not describe all elements of claims 1 or 9. |
| the cylinder shaft will retract when said internal piston moves in an axial direction away from said second end of said cylinder toward said first end of said cylinder, causing said mounted cylinder to exert a force substantially perpendicular to a plane formed between said pad eye, lifting lug or other device and the attachment weld attaching said pad eye, lifting lug or other device to said another structure. | No – In the sections cited of Bauer, (Fig. 2; col. 2, lines 50-67; Fig. 9; col. 4, lines 46-54), Bauer does not describe or show a piston or the movement of a piston. In addition, and as discussed above, Bauer does not describe a pad eye or a lifting lug or a weld attaching a pad eye or lifting lug. Bauer also does not describe "a plane formed between the pad eye or lifting lug and the attachment weld." As discussed above, Bauer has no disclosure concerning "welds" of any type. Thus, Bauer fails to anticipate claim 11. |

With respect to claim 11, Bauer is again deficient because, for example, Bauer fails to describe "movement of a piston," a pad eye, a lifting lug or other device attached by a weld. In fact, the cited portions of Bauer do not even mention the words "pad eye," "lifting lug," or "weld." For these reasons, and those stated with respect to claims 1 and 9, Bauer does not anticipate claim 11, as each and every element is not described by Bauer.

Claim 12 is not anticipated by Bauer

Claim 12 depends from claim 1, and Bauer does not describe all elements of claim 1 as shown. Accordingly, Bauer does not anticipate claim 12 as a matter of law. *In re Fine, supra* (if independent claim is allowable, then so are the 837 dependent claims).

With respect to claim 12, Bauer fails to describe at least the following elements: 1) "a pad eye, lifting lug or other device;" 2) "a tension load;" and, 3) "a weld."

| Claim 12 | Does Bauer Describe Element? |
|---|---|
| 12. The apparatus in claim 1, | No - Bauer does not describe all elements of claims 1. |
| wherein said mounted cylinder will exert a force substantially perpendicular to a plane formed between the pad eye, lifting lug or other device and said attachment weld attaching said pad eye, lifting lug or other device creating a substantially perpendicular force away from said pad eye, lifting lug or other device subjecting said attachment weld to a tension load. | No – As discussed above, Bauer does not describe a pad eye, a lifting lug or a weld. Thus, Bauer fails to anticipate claim 12. In addition, Bauer describes applying a "compressive load" (*See* Col. 2, lines 59-61) to valve stem 20, not a "tension load." Claim 12 requires "a tension load," '322 patent, col. 10, line 67. |

With respect to claim 12, Bauer is again deficient as Bauer fails to describe "a pad eye, a lifting lug or a weld." Bauer also fails to describe "a tension load." For these reasons, and those stated with respect to claim 1, Bauer does not anticipate claim 12, as each and every element is not described by Bauer.

### Claim 13 is not anticipated by Bauer

With respect to claim 13, Bauer fails to describe at least the following elements: 1) "a method for testing weld strength and integrity of an attachment weld when desired comprising the steps of:"; 2) "identifying a desired weld joining a pad eye, lifting lug or other device to another structure;" 3) "providing an attachment structure for attaching externally to said pad eye, lifting lug or other device joined to the other structure by the attachment weld to be tested;" 4) "urging fluid into the cylinder causes the piston to tension the pad eye, lifting lug or other device joined to another structure thus testing the integrity of the attachment weld"; and 5) "whereby the testing technician or test operator can inspect the tested attachment weld and the pad eye, lifting lug or other device joined to another structure for any structural damage or deformation."

21

For the same reasons as discussed with respect to the rejection of claim 1, Bauer relates to "valve stems" and not "pad eyes" or "lifting lugs." Bauer fails to describe "caus[ing] the piston to tension the pad eye." Bauer fails to describe any reference to a "weld," much less "testing the integrity of the weld," or "inspect[ing] the tested attachment weld for any structural damage or deformation." Bauer cannot anticipate claim 13, as each and every element is not described by Bauer.

Below, Patentee discusses some of the missing elements in claim 13.

| Claim 13 Elements | Does Bauer Describe Element? |
|---|---|
| 13. A method for testing weld strength and integrity of an attachment weld when desired comprising the steps of: | No –Requester admitted in the Request that Bauer describes, "a device for applying a known desired axial load by means of an hydraulic cylinder for testing a valve stem" – not the invention at issue. Moreover, Bauer fails to describe "an apparatus for testing weld strength and integrity of a weld." |
| providing at least one fluid cylinder, having a first end and a second end, mounted with the framework, for moving a piston therein inwardly and outwardly as fluid is moved out or in respectively; | No – Contrary to the Office's position, "actuator 52" is not "a fluid containing cylinder ... for moving a piston." Replacement Reexam Request, page 135, paragraph 110, adopted by Office Action at page 7. In fact, Bauer would not function if a piston were pressed against valve stem 20 because valve stem 20 would not be able to move due to the friction between the piston and the valve stem. |
| providing an attachment structure for attaching externally to said pad eye, lifting lug or other device joined to said another structure by the attachment weld to be tested; and | No – Bauer describes that the valve stem 20 rotates. Thus, Bauer's valve stem 20 is not "attached." In fact, if valve stem 20 were "attached," it could not rotate and Bauer's device would be inoperative. As such, Bauer does not describe this element and actually teaches away from "attaching" valve stem 20 to "another |

| | |
|---|---|
| | structure." Further, Bauer does not teach testing a weld that is "joined to another structure." |
| assembling the framework with the mounted cylinder fixedly attached at the first end of said cylinder externally to said pad eye, lifting lug or other device joined to said another structure; | No – Bauer describes that the valve stem 20 rotates; it is therefore not "attached." In fact, if valve stem 20 were "attached," it could not rotate and Bauer's device would be inoperative. As such, Bauer does not describe this element and actually teaches away from attaching another structure. Nor does Bauer disclose a pad eye, lifting lug o other device joined to another structure. |
| urging fluid into the cylinder to cause the piston to move outwardly to tension the pad eye, lifting lug or other device joined to said another structure thus testing the integrity of the attachment weld, | No – Bauer does not describe "testing the integrity of the weld" or a "pad eye." In addition, Bauer only discusses "compressing" a valve stem 20. *See* Bauer, col. 2, lines 59-61, ("… to apply a compressive load in an upward direction to the valve stem.") |
| whereby a testing technician or test operator can inspect the tested attachment weld and the pad eye, lifting lug or other device joined to another structure for any structural damage or deformation. | No – As discussed above, Bauer does not describe testing weld strength or weld integrity. |

With respect to claim 13, Bauer fails to describe at least the following elements:  1) "a method for testing weld strength and integrity of an attachment weld when desired comprising the steps of:"; 2) "identifying a desired weld joining a pad eye, lifting lug or other device to another structure; 3) "providing an attachment structure for attaching externally to said pad eye, lifting lug or other device joined to the another structure by the attachment weld to be tested;" 4) "urging fluid into the cylinder to cause the piston to tension the pad eye, lifting lug or other device joined to said another structure thus testing the integrity of the attachment weld"; and 5) "whereby a testing technician or test operator can inspect the tested attachment weld and the pad

23

eye lifting lug or other device joined to said another structure for any structural damage or deformation."

Rather than testing the integrity or weld strength of the valve stem, Bauer's apparatus "simulates the loading condition of a motor operated valve." The loading is monitored to ensure that the valve is capable of operating, such as to open or close, in the event of an unusual condition." Phrased differently, Bauer hydraulically loads the valve stem and determines if the motor can turn the valve stem. Thus, Bauer fails to describe a device used to test a weld between a pad eye and another object in a non-destructive manner.

Bauer, instead, relates to testing the ability of a motor to turn a valve stem under a fluid load. Bauer also fails to describe any reference to a "weld," much less "testing the integrity of the weld." The term "weld" has an antecedent basis in the preamble, so the preamble's purpose language is applicable to this consideration. *Corning Glass Works, supra*. For the reasons described above, Bauer does not anticipate claim 13 as each and every element is not described, much less with the required enablement.

### Claim 14 is not anticipated by Bauer

Claim 14 depends from claim 13. The Office has failed to show that Bauer describes all elements of claim 13. Accordingly, Bauer does not anticipate claim 14 as a matter of law. *In re Fine, supra* (if independent claim is allowable, then so are the dependent claims).

With respect to claim 14, Bauer fails to describe at least the following elements: 1) "tensioning the pad eye, lifting lug or other device" and 2) testing the integrity of the weld."

| Claim 14 Element | Does Bauer Describe Element? |
|---|---|
| 14. The method as in claim 13, whereby urging fluid into the cylinder causes the piston to move inwardly to tension the pad eye, lifting lug or other device thus testing the integrity of the weld. | No – Bauer describes a fluid, not a piston, directly loading a valve stem 20. Bauer does not mention a "weld" or "testing the integrity of the weld." Bauer describes, "at numerous points in a nuclear power plant, the flow of |

|  | fluid is controlled by large gate valves. When a considerable pressure difference exists on opposite sides of the gate, frictional forces become large and a large force must be exerted by the valve stem to move the gate." Bauer, Col. 1, lines 16-20. As such, Bauer fails to disclose a piston tensioning a pad eye to test the integrity of a weld. |
| --- | --- |

For the same reasons as discussed with respect to the rejection of claim 13, Bauer relates to "valve stems" and not "pad eyes." Bauer fails to describe all elements of claims 13 and 14. Therefore, Bauer does not anticipate claim 14.

<u>Bauer does not anticipate claim 15</u>

With respect to claims 13 and 14, Bauer fails to describe at least the following elements: 1) "a method for testing weld strength and integrity of an attachment weld"; 2) "identifying a desired weld joining a pad eye, lifting lug or other device to another structure; 3) "providing an attachment structure for attaching externally to said pad eye, lifting lug or other device joined to the other structure by the attachment weld to be tested;" 4) "urging fluid into the cylinder to cause the piston to tension the pad eye, lifting lug or other device joined to another structure thus testing the integrity of the attachment weld"; and 5) "whereby the testing technician or test operator can inspect the tested attachment weld and the pad eye, lifting lug or other device joined to another structure for any structural damage or deformation."

Rather than testing the integrity or weld strength of the valve stem, Bauer's apparatus "simulates the loading condition of a motor operated valve." The loading is monitored to ensure that the valve is capable of operating, such as to open or close, in the event of an unusual condition." Phrased differently, Bauer hydraulically loads the valve stem and determines if the motor can turn the valve stem. Thus, Bauer fails to describe a device used to test a weld between a pad eye and another object in a non-destructive manner.

Bauer, instead, relates to testing the ability of a motor to turn a valve stem under a fluid load.  Bauer also fails to describe any reference to a "weld," much less "testing the integrity of the weld." The term "weld" has an antecedent basis in the preamble, so the preamble's purpose language is applicable to this consideration. For the reasons described above, Bauer does not anticipate claim 15, as each and every element is not described therein, much less with the required enablement.

Bauer does not anticipate claim 16

Claim 16 depends from independent claim 13, which Bauer fails to anticipate. Accordingly, Bauer does not anticipate claim 16 as a matter of law. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

Nonetheless, Patentee further submits that with respect to claims 13 and 16, Bauer fails to describe at least the following elements: 1) "a method for testing weld strength and integrity of an attachment weld"; 2) "identifying a desired weld joining a pad eye, lifting lug or other device to another structure; 3) "providing an attachment structure for attaching externally to said pad eye, lifting lug or other device joined to the other structure by the attachment weld to be tested;" 4) "urging fluid into the cylinder to cause the piston to tension the pad eye, lifting lug or other device joined to another structure thus testing the integrity of the attachment weld"; 5) "whereby the testing technician or test operator can inspect the tested attachment weld and the pad eye lifting lug or other device joined to another structure for any structural damage or deformation;" 6) determining a required test load based on the weight to be supported, by the weld, pad eye, lifting lug or other device joined to another structure by the attachment weld to be tested; 7) determining an effective area of the cylinder piston; and 8) dividing the test load  by the effective area of the cylinder piston.

Rather than testing integrity or weld strength, Bauer's apparatus "simulates the loading condition of a motor operated valve." Bauer, Abstract, lines 1-2.  The loading is monitored "to ensure that the valve is capable of operating, such as to open or close, in the event of an unusual condition." *Id*. at lines 8-11. Phrased differently, Bauer hydraulically loads the valve stem and determines if the motor can turn the valve stem while it is subjected to the load. Thus, Bauer fails

to describe a device used to test a weld between a pad eye or lifting lug and another object in a non-destructive manner. Bauer also fails to describe any reference to a "weld," much less "testing the integrity of the weld." The term "weld" has an antecedent basis in the preamble, so the preamble's purpose language is applicable to this consideration. For the reasons described above, Bauer cannot anticipate claims 13 or 16, as each and every element is not described therein, much less with the required enablement.

In addition, the Requester asserts at paragraph 127, pages 158-159 that Bauer describes "determining a required test load based on the weight to be supported, by the test piece (Bauer, col. 7, lines 24-25); determining an effective area of the cylinder piston;" and (Bauer, col. 3, lines 59-63) and dividing said test load by the effective area of the cylinder piston." In fact, Bauer only describes "loading the valve stem" and "varying the force as said valve stem moves in accordance with a predetermined loading profile." Nothing in Bauer describes the elements of claim 16. Therefore, Bauer does not anticipate claim 16.

<u>Bauer does not anticipate claim 17</u>

Claim 17 depends from independent claim 13. Accordingly, Bauer does not anticipate claim 14 as a matter of law. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

Nonetheless, Patentee further submits that with respect to 13 and 17, Bauer fails to describe at least the following elements: 1) "a method for testing weld strength and integrity of an attachment weld"; 2) "identifying a desired weld joining a pad eye, lifting lug or other device to another structure; 3) "providing an attachment structure for attaching externally to said pad eye, lifting lug or other device joined to the other structure by the attachment weld to be tested;" 4) "urging fluid into the cylinder causes the piston to tension the pad eye, lifting lug or other device joined to another structure thus testing the integrity of the attachment weld;" 5) "whereby the testing technician or test operator can inspect the tested attachment weld and the pad eye lifting lug or other device joined to another structure for any structural damage or deformation;" 6) urging pressurized fluid is accomplished by a pumping device; and 7) said urging of said pressurized fluid causes the cylinder piston to move in an axial direction away from said first end

27

of said cylinder toward said second end of said cylinder, thereby causing a cylinder shaft to extract or cause the cylinder piston to move in an axial direction away from said second end of said cylinder toward said first end of said cylinder thereby causing the cylinder shaft to retract.

Rather than testing integrity or weld strength, Bauer's apparatus "simulates the loading condition of a motor operated valve." The loading is monitored to ensure that the valve is capable of operating, such as to open or close, in the event of an unusual condition." Phrased differently, Bauer hydraulically loads the valve stem and determines if the motor can turn the valve stem. Thus, Bauer fails to describe a device used to test a weld between a pad eye and another object in a non-destructive manner. Bauer also fails to describe any reference to a "weld," much less "testing the integrity of the weld." The term "weld" has an antecedent basis in the preamble, so the preamble's purpose language is applicable to this consideration. For the reasons described above, Bauer cannot anticipate claims 13 or 17 as each and every element is not described, much less with the required enablement.

In addition, the Requester, at paragraph 133, pages 165-166 of the Replacement Request for Reexamination, asserts that Bauer describes "urging pressurized fluid is accomplished by a pumping device; and (Bauer, Fig. 9; col. 4, lines 5-55; Fig. 10, col. 5, lines 23-27); said urging of said pressurized fluid causes the cylinder piston to move in an axial direction away from said first end of said cylinder toward said second end of said cylinder, thereby causing the cylinder shaft to extract or causes the cylinder piston to move in an axial direction away from said second end of said cylinder toward said first end of said cylinder thereby causing the cylinder to retract." Bauer, Fig. 2; col. 3, lines 50-67; col. 5, lines 27-30. In fact, nothing in Bauer describes movement of a piston. Indeed, the term "piston" is not found in the cited sections of Bauer; it is only referenced at col. 3, lines 50-67 of Bauer, as "not visible in Fig. 2."

Nothing in Bauer describes an operator using Bauer's valve stem tester to test a weld as is required by claim 17. Bauer therefore does not anticipate claim 17.

28

Bauer does not anticipate claims 18 or 19

Claims 18 and 19 depend from independent claim 13 and dependent claim 17. As shown above, Bauer does not anticipate claim 13 or 17. Accordingly, Bauer does not anticipate claims 18 or 19 as a matter of law. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

Nonetheless, Patentee further submits that with respect to claims 13 and 17, Bauer fails to describe at least the following elements: 1) "a method for testing weld strength and integrity of an attachment weld"; 2) "identifying a desired weld joining a pad eye, lifting lug or another device to another structure; 3) "providing an attachment structure for attaching externally to said pad eye, lifting lug or other device joined to said another structure by the attachment weld to be tested;" 4) "urging fluid into the cylinder to cause the piston to tension the pad eye, lifting lug or other device joined to said another structure thus testing the integrity of the attachment weld"; 5) "whereby the testing technician or test operator can inspect the tested attachment weld and the pad eye, lifting lug or other device joined to another structure for any structural damage or deformation;" 6) urging pressurized fluid is accomplished by a pumping device; 7) said urging of said pressurized fluid causes the cylinder piston to move in an axial direction away from said first end of said cylinder toward said second end of said cylinder, thereby causing a cylinder shaft to extract or cause the cylinder piston to move in an axial direction away from said second end of said cylinder toward said first end of said cylinder thereby causing the cylinder shaft to retract; 8) said cylinder piston moves in an axial direction away from said first end of said cylinder toward said second end of said cylinder when said pressurized fluid enters said cylinder through said first attachment means and the piston moves in an axial direction away from said second end of said cylinder toward said first end of said cylinder, when said pressurized fluid enters said cylinder through said second attachment means; and 9) the entry, through said first attachment means or said second attachment means, of said pressurized fluid into said cylinder is controlled by a flow control manifold and a directional valve.

Rather than testing integrity or weld strength, Bauer's apparatus "simulates the loading condition of a motor operated valve." The loading is monitored to ensure that the valve is capable of operating, such as to open or close, in the event of an unusual condition." Phrased differently, Bauer hydraulically loads the valve stem and determines if the motor can turn the

29

valve stem. Thus, Bauer fails to describe a device used to test a weld between a pad eye and another object in a non-destructive manner.

Bauer also fails to describe any reference to a "weld," much less "testing the integrity of the weld." The term "weld" has an antecedent basis in the preamble, so the preamble's purpose language is applicable to this consideration. For the reasons described above, Bauer cannot anticipate claims 13 or 17, as each and every element is not described, much less with the required enablement. With respect to claim 18, Bauer never uses the terms "flow control manifold" or "directional valve." As this disclosure is absent from Bauer, it cannot anticipate claim 18.

In addition, in reference to claim 19, the Requester asserts, at paragraph 142, pages 175-176 of the Replacement Reexamination Request, that Bauer describes "the fluid pressure, in said cylinder, is determined at the control manifold and monitored by a pressure gauge; (Bauer, Fig. 2, col. 3, lines 60-63, Figs. 9 and 10, col. 4, lines 46-65, col. 5, line 50-67)." In fact, nothing in Bauer describes a pressure gauge or a control manifold. The pressure gauge 52 is proximate an unnamed element 54. Unnamed element 54 is not a control manifold. Phrased differently, Bauer does not describe that the fluid pressure in the cylinder is "determined at the control manifold and monitored by a pressure gauge." As such, nothing in Bauer describes using Bauer's valve stem tester to test a weld as is required by claim 19. Therefore, Bauer cannot anticipate claim 19.

### Claim 20 is not anticipated by Bauer

With respect to claim 20, Bauer fails to describe at least the following elements 1) "a method for testing weld strength and integrity of an attachment weld when desired with a single cylinder apparatus"; 2) "identifying a desired test piece wherein said test piece comprises the attachment weld joining a pad eye, lifting lug, or other device to another structure; 3) "providing an attachment structure for attaching external to said test piece;" 4) retracting the cylinder shaft thereby exerting a force substantially perpendicular to a plane formed between the attachment weld, and the pad eye, lifting lug, or other device joined to another structure by the attachment weld; and 4) "inspecting the test piece and its attachment weld for any structural damage or deformation."

For the same reasons as discussed with respect to the rejection of claims 1 and 13, Bauer relates to "valve stems" and not "pad eyes" or "lifting lugs." Bauer fails to describe "retracting a cylinder to exert a force substantially perpendicular to a plane formed between the attachment weld, and the pad eye, lifting lug, or other device joined to another structure by the attachment weld." Bauer fails to describe or even have any reference to a "weld," much less "testing the integrity of the weld," or "inspect[ing] the tested device and the weld for any structural damage or deformation." Bauer cannot anticipate claim 20, as each and every element is not described by Bauer.

Below, Patentee highlights elements that Bauer fails to describe.

| Claim 20 Elements | Does Bauer Describe Element? |
|---|---|
| 20. A method for testing weld strength and integrity of an attachment weld when desired with a single cylinder apparatus comprising the steps of: | No – At the cited sections, Bauer describes measurement of an exerted hydraulic force to load a valve stem. Not only does Bauer never even mention a "weld," but the cited description not describe testing weld strength and integrity of an attachment weld when desired with a single cylinder apparatus. |
| identifying a desired test piece wherein said test piece comprises the attachment weld joining a pad eye, lifting lug, or other device to another structure; | No – Bauer does not describe a "pad eye" or a "lifting lug" or a "weld" attaching the pad eye or lifting lug to another structure. In fact, if Bauer's valve stem 20 were welded into position, Bauer would be inoperative. |
| providing at least one fluid cylinder mounted with the framework, for moving a piston therein inwardly and outwardly as fluid is moved out or in respectively; | No – the Office Action alleges that "actuator 52" is "a fluid containing cylinder." In fact, Bauer would not function if a piston were pressed against valve stem 20 because valve stem 20 would not be able to move due to the friction between the piston and the valve stem. |
| providing an attachment structure for attaching external to said test piece; and | No – Bauer describes that valve stem 20 rotates. Thus, Bauer's valve stem 20 is not "attached." In fact, if valve stem 20 were "attached," it could not rotate |

| | and Bauer's device would be inoperative. As such, Bauer teaches away from attaching a test article. |
|---|---|
| assembling the framework with the mounted cylinder fixedly attached at the first end of said cylinder external to said test piece; | No – Bauer describes that valve stem 20 rotates. Thus, Bauer's valve stem 20 is not "attached." In fact, if valve stem 20 were "attached," it could not rotate and Bauer's device would be inoperative. As such, Bauer teaches away from attaching a test article. |
| retracting the cylinder shaft thereby exerting a force substantially perpendicular to a plane formed between the attachment weld, and the pad eye, lifting lug or other device joined to said another structure by the attachment weld; | No – Bauer does not describe a "pad eye" or a "lifting lug" or a "weld" attaching the pad eye or lifting lug to another structure. In fact, if Bauer's valve stem 20 were welded into position, Bauer would be inoperative. |
| inspecting the test piece for any structural damage or deformation; | No – Bauer does not describe testing of an "attachment weld." If Bauer's valve stem 20 were welded, Bauer would be unable to open or close and would be inoperative. Thus, Bauer teaches away from the use of "attachment welds." |

With respect to claim 20, Bauer fails to describe at least the following elements 1) "a method for testing weld strength and integrity of an attachment weld when desired with a single cylinder apparatus"; 2) "identifying a desired test piece wherein said test piece comprises the attachment weld joining a pad eye, lifting lug, or other device to another structure; 3) "providing an attachment structure for attaching external to said test piece;" 4) retracting the cylinder shaft thereby exerting a force substantially perpendicular to a plane formed between the attachment weld, and the pad eye, lifting lug, or other device joined to another structure by the attachment weld; and 4) "inspecting the test piece and its attachment weld for any structural damage or deformation."

Rather than testing the integrity or weld strength of the valve stem, Bauer's apparatus "simulates the loading condition of a motor operated valve." Bauer, Abstract, lines 1-2. The loading is monitored "to ensure that the valve is capable of operating, such as to open or close, in the event of an unusual condition." Bauer, Abstract, lines 8-11. Bauer hydraulically loads the valve stem and determines if the motor can turn the valve stem. Thus, Bauer fails to describe a device used to test a weld between a pad eye and another object in a non-destructive manner. Bauer also fails to describe any reference to a "weld," much less "testing the integrity of the weld." The term "weld" has an antecedent basis in the preamble, so the preamble's purpose language is applicable to this consideration. For the reasons described above, Bauer cannot anticipate claim 20, as each and every element is not described, much less with the required enablement.

**McEntire Pre-AIA 35 U.S.C. § 102(b) re: Claims 1, 3, 6 and 12**

Examiner cites McEntire as anticipating claims 1, 3, 6 and 12 of the '322 Patent, as describing each and every element of the same. Patentee respectfully traverses these rejections.

Patentee submits that McEntire describes "a device for testing anchors (dead men) embedded in the earth so that a force can be applied to the anchor at a known and desired angle, the device employing an inclined support surface which carries a piston and cylinder means. The piston and support means can be moved and stopped at a plurality of points along the length of the support surface." *See* Abstract of McEntire. In other words, McEntire describes pulling an anchor out of concrete after implanting the anchor before the concrete is cured.

McEntire fails to describe any reference to a "weld," much less "testing the integrity of the weld." The term "weld" has an antecedent basis in the preamble, so the preamble's purpose language is applicable to this consideration. *See Corning Glass Works, supra.* For the reasons described above, McEntire cannot anticipate claim 1 as each and every element is not described, much less with the required enablement.

33

<u>Claim 1 is not anticipated by McEntire</u>

With respect to claim 1, McEntire fails to describe at least the following elements:

a) "an apparatus for testing the weld strength and integrity of an attachment weld;"

b) a "weld;"

c) "moving [the] piston therein inwardly and outwardly as fluid is moved out or in respectively;" and,

d) moving fluid into the cylinder causes the piston to move outwardly to tension the pad eye to test the integrity of the weld.

Below, Patentee further addresses McEntire's failed descriptions.

| Claim 1 Elements | Does McEntire Describe Element? |
|---|---|
| 1. An apparatus for testing the weld strength and integrity of an attachment weld, comprising: | No – McEntire discloses an apparatus for testing a concrete anchor. Nothing in McEntire discloses testing weld strength or the integrity of a weld, as required by claim 1 of the '322 patent. |
| a framework including a base, top, and side pieces; | No –For McEntire's Anchor Tester to test a concrete anchor that is "embedded into the earth," cylinder 15 is pressured to set claws 4 and 5 "into the earth up to the support surfaces of feet 2 and 3. McEntire, col. 3, lines 52-55. McEntire's Anchor Tester is embedded into the ground before the user attempts to test anchor 6 by pulling on it. Thus, McEntire fails to disclose a "top," piece because cylinder 15 is above the "cross member 10," which Requester alleges is the "top" of McEntire's "framework." See page 5 of Requester's Replacement Attachment to Form PTO/SB/57 (Form PTO-1465) Request for *Ex Parte* |

34

| | Reexamination. |
|---|---|
| at least one fluid containing cylinder, mounted with the framework, for moving a piston therein inwardly and outwardly as fluid is moved out or in respectively; and | No – McEntire describes a compressor 17 with a single conduit 16 to actuate piston and cylinder means 14 and 15. Compressor 17 pulls piston 14 to pull test anchor 6 upwardly. *See* McEntire, col. 3, lines 18-25 ("Thus, in operation, after the device is connected to anchor 6 as shown in FIGS. 1 and 2 and piston means 14 is actuated by way of compressor means 17, piston 14 will move outwardly of cylinder means 15 and away from anchor 6 and support means 8 and 9. Since piston 14 is in contact with nut means 18, it will force connecting means 13 in the same direction thereby applying a force to anchor 6 at an angle.") Thus, McEntire's cylinder does not move piston 14 "inwardly and outwardly," only "outwardly." |
| structure for releasably or permanently attaching to a pad eye, lifting lug or other device joined by the attachment weld to another structure; | No – McEntire fails to describe a pad eye, or other device joined by an attachment weld to another structure. |
| whereby moving fluid into the cylinder causes the piston to move outwardly to tension the pad eye, lifting lug or other device to test the integrity of the attachment weld in a non-destructive manner. | No – McEntire does not describe "testing the integrity of the welding in a non-destructive manner." In fact, McEntire does not describe weld testing in any manner. |

<u>Claim 3 is not anticipated by McEntire</u>

Claim 3 depends from claim 1, and McEntire does not describe all elements of claim 1 as shown.  Accordingly, McEntire does not anticipate claim 3 as a matter of law.  *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

Additionally and alternatively, McEntire fails to describe elements of claim 3 as shown below.

| Claim 3 Elements | Does McEntire Describe Element? |
|---|---|
| 3. The apparatus of claim 1, further including: | No - McEntire does not describe all elements of claim 1. |
| a support beam having a top and bottom end; | No – The Office Action recites McEntire's legs 7 and 7' as "support beams having a top and bottom end." *See* paragraph 28 on page 43-44 of the Request. Accepting this claim construction for the purpose of argument only, the Office Action continues, "McEntire '163 [has] a bridge plate or |
| and a bridge plate or cross bar, having a left and right end, fixedly attached, on said left and right ends and near the center, to and supported by said beam or the cylinder. | cross bar (member 10) fixedly attached on its right and left ends and at its center by the frame legs 3 or at cylinder 15." *Id.*   In fact, as best seen in Figure 2 of McEntire, legs 7 are rotatably (not fixedly) attached to only the left end of member 10. In other words, member 10 is not fixedly attached to and not supported at both its left and right ends. In addition, member 10 is not supported by compressor means 17 because, as seen in Figure 1, compressor 17 does not carry any load because it is separate from member 10. |

36

For the same reasons as discussed with respect to the rejection of claim 1, McEntire relates to a device for testing anchors and fails to describe all elements of claims 1 and 3. Therefore, McEntire cannot anticipate claim 3.

Claim 6 is not anticipated by McEntire

Claim 6 recites: "[t]he apparatus in claim 3, wherein said bridge plate or cross bar can be angled."  As discussed immediately above, McEntire does not anticipate claims 1 or 3, and, therefore, cannot anticipate claim 6. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

Claim 12 is not anticipated by McEntire

Claim 12 recites, "[t]he apparatus in claim 1, wherein said mounted cylinder will exert a force substantially perpendicular to a plane formed between the pad eye or other lifting lug and said attachment weld attaching said pad eye or lifting lug creating a substantially perpendicular force away from said pad eye or other device subjecting said attachment weld to a tension load." As discussed above, McEntire does not anticipate claim 12 because it does not anticipate claim 1, and, therefore, cannot anticipate dependent claim 12. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims). In addition, because McEntire lacks a pad eye, lifting lug or other device and an attachment weld, it does not describe:  1) a mounted cylinder exerting a force substantially perpendicular to a plane formed between a pad eye, lifting lug or other device; 2) a weld; and 3) a force subjecting said attachment weld to a perpendicular load. McEntire therefore cannot anticipate claim 12.

**Lemoine Pre-AIA 35 U.S.C. § 102(b) re: Claims 1, 3 and 12**

Examiner cites Lemoine as anticipating claims 1, 3 and 12 of the '322 Patent, as describing each and every element of the same.  Patentee respectfully traverses these rejections.

Patentee submits that Lemoine discloses, "a device and method for pulling elongated objects such as, *e.g.*, stakes, pins, spikes, etc., from another object." Lemoine, col 1, lines 4-6.

Lemoine fails to describe any reference to a "weld," much less "testing the integrity of the weld." The term "weld" has an antecedent basis in the preamble, so the preamble's purpose language is applicable to this consideration. *Corning Glass Works, supra.* For the reasons described above, Lemoine cannot anticipate claim 1, as each and every element is not described, much less with the required enablement.

Further with respect to claim 1, Lemoine fails to describe at least the following elements:

a) "an apparatus for testing the weld strength and integrity of an attachment weld;"

b) a "weld;"

c) "moving [the] piston therein inwardly and outwardly as fluid is moved out or in respectively;" and,

d) moving fluid into the cylinder causes the piston to move outwardly to tension the pad eye to test the integrity of the attachment weld in a non destructive manner.

Example missing elements are discussed below.

| Claim 1 Elements | Does Lemoine Describe Element? |
|---|---|
| 1. An apparatus for testing the weld strength and integrity of an attachment weld, comprising: | No – Lemoine does not describe "testing" of any type. In particular, it does not describe testing weld strength or the integrity of a weld. |
| a framework including a base, top, and side pieces; | No - It is noted that the Office Action asserts that Lemoine's jacks 30 and 32 are "side pieces." *See* Request, pages 6-7. In claim 3, the Office Action asserts that the same jacks 30 and 32 are also "support beams." A single component cannot anticipate two separate elements of the '322 patent. |
| structure for releaseably or permanently attaching to a pad eye, lifting lug or other | No – As discussed above, Lemoine does not describe testing. Lemoine also does not describe |

38

| device joined by the attachment weld to another structure; | attaching to a "pad eye or other device joined by an attachment weld to another structure." |
|---|---|
| whereby moving fluid into the cylinder causes the piston to move outwardly to tension the pad eye, lifting lug or other device to test the integrity of the attachment weld in a non-destructive manner. | No – Lemoine does not describe "testing the integrity of the attachment weld in a non-destructive manner" or testing a pad eye, lifting lug or other device. In fact, Lemoine does not describe a weld attaching a pad eye, lifting lug or any other device to another structure. |

### Claim 3 is not anticipated by Lemoine

Claim 3 depends from claim 1, and because Lemoine does not describe all elements of claim 1 as shown, Lemoine does not anticipate claim 3 as a matter of law. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

Example missing elements are discussed below.

| Claim 3 Elements | Does Lemoine Describe Element? |
|---|---|
| 3. The apparatus of claim 1, further including: | No - Lemoine does not describe all elements of claim 1. |
| a bridge plate or cross bar, having a left and right end, fixedly attached, on said left and right ends and near the center, to and supported by said beam or the cylinder. | No – the Office Action asserts that jacks 30 and 32 of Lemoine are a "bridge plate or cross bar having a left and right end." In fact, as seen in Fig. 1, jacks 30 and 32 extend vertically upward and do not have "left" and "right" ends |

Thus, Lemoine relates to a device and method for pulling elongated objects from another object and makes no mention of testing or weld testing. Accordingly, Lemoine fails to describe all elements of claims 1 and 3. Therefore, Lemoine cannot anticipate claim 3.

Claim 12 is not anticipated by Lemoine

Claim 12 recites, "[t]he apparatus in claim 1, wherein said mounted cylinder will exert a force substantially perpendicular to a plane formed between the pad eye, lifting lug or other device and said attachment weld attaching said pad eye, lifting lug or other device creating a substantially perpendicular force away from said pad eye, lifting lug or other device subjecting said attachment weld to a tension load." Lemoine does not anticipate claim 12 because it does not anticipate claim 1, and, therefore, cannot anticipate dependent claim 12. In re Fine, *supra* (if independent claim is allowable, then so are the dependent claims). In addition, Lemoine lacks a pad eye, lifting lug, or other device or an attachment weld and does not disclose testing the strength or integrity of the elongated object being pulled. Further, it does not describe 1) a mounted cylinder; 2) the mounted cylinder exerting a force substantially perpendicular to a plane formed between the pad eye, lifting lug or other device and the attachment weld 3) an attachment weld; 4) a force subjecting said attachment weld to a perpendicular load and 5) testing the pad eye, lifting lug or other device, or the strength or integrity of the weld.  Based on the foregoing, Lemoine does not anticipate claim 12.

**Simmons Pre-AIA 35 U.S.C. § 102(b) re: Claims 1, 12, 13 and 16**

Examiner cites Simmons as anticipating claims 1, 12, 13 and 16 of the '322 Patent, as describing each and every element of the same.  Patentee respectfully traverses these rejections.

Patentee submits that Simmons describes a device used to hold two parts of an elongate object, *e.g.*, a strand or cable, together during electric upset welding or "butt welding," then subsequently pulls on the object to apply tension to the weld after it has cooled. Clamps grip each end of the elongate object portions, while cylinders are used to push the portions together, and then the cylinders apply a pulling force after the weld has cooled.

Simmons relates to a device similar to that described in Weinhold, which is included as part of the pending  rejections under Pre-AIA 35 U.S.C. § 103(a), and Gram U.S. Patent 4,478,086, which is cited but not relied upon as a basis for the pending rejections. Specifically,

these patents are devices that grip an elongate test specimen, secured at both ends, and then apply a pulling or axial force along the test specimen.

Simmons fails to describe a device used to non-destructively test a weld that attaches a pad eye to another object. Simmons describes two pieces of cable or wire strand welded together, but this end-to-end welding is done for electrical conductivity and continuity rather than as a structural element as claimed by the Patentee. The Simmons weld is not a structural attachment to which force is applied during normal use of the strand or cable. The cables or strands, for which Simmons is designed, are raw materials for subsequent jacketing and winding, prior to use as conductive wire. Unlike the device described by Patentee, Simmons only tests a portion of an object prior to assembly thereof, and Simmons is incapable of testing an assembled object in a non-destructive manner.

Simmons further fails to describe a piston or shaft in a cylinder that moves, and/or a cylinder that exerts a force, along an axis substantially perpendicular to a plane formed between a pad eye, lifting lug or other device and a weld attaching said pad eye, lifting lug or other device to another structure. The force is instead applied as an axial force parallel to the wires, while the upset weld lacks a significant horizontal dimension.

With respect to claim 1, Simmons fails to describe at least the following elements: "a method for testing weld strength and integrity of an attachment weld." Simmons' "butt weld" or upset weld is completely unlike the "attachment weld" of claim 1 of the '322 Patent; Simmons' weld is described and claimed as being an "end-to-end weld," such as joining two ends of a "conductor in an electrical cable." Simmons, 1:7-10; *see also* Simmons 1:40-47; 1:64-66.

Simmons fails to disclose a test piece comprising "a pad eye" or "lifting lug" or that a "pad eye" is tensioned in order to test the integrity of an attachment weld. Again, Simmons is specifically directed to testing an upset or "butt" weld between two elongate strands or cables and is completely inapposite with claim 1 of the '322 Patent, which is directed to a "pad eye" and an "attachment weld" for the "pad eye".

With respect to claim 1, Simmons fails to disclose at least the following elements:

a)      "an apparatus for testing the weld strength and integrity an attachment weld;"

b)      "a framework including a base, top and side pieces;"

c)      "at least one fluid containing cylinder, mounted with the framework, for moving a piston therein inwardly and outwardly as fluid is moved out or in respectively; and"

d)      "structure for releaseably or permanently attaching to a pad eye, lifting lug or other device joined by the attachment weld to another structure;" and

e)      "whereby urging fluid into the cylinder causes the piston to move outwardly to tension the pad eye thus test the integrity of the attachment weld."

Each of the example missing elements is further discussed below.

| Claim 1 Elements | Does Simmons Describe Element? |
|---|---|
| 1. An apparatus for testing the weld strength and integrity of an attachment weld, comprising: | No – Simmons discloses a weld tester to determine electrical conductivity and continuity rather than as a structural element attachment weld. |
| a framework including a base, top, and side pieces; | No – the Office Action, at page 10, adopting paragraph 4 of the Replacement Request for Reexamination, asserts that Simmons discloses "a frame with a base, top and sides for mounted cylinders (*See* Fig. 1; col. 3, lines 3-27)." In fact, Simmons only describes "clamps 16A and 16B clamp strands 10A and 10B respectively to maintain them pressed against one another within bushing 12." Thus, Simmons fails to describe a frame work that includes a "top." As such, this element is not described by Simmons. |
| at least one fluid containing cylinder, mounted with the framework, for moving a piston therein inwardly and outwardly as fluid is moved out or in respectively; and | No – Simmons does not describe "at least one fluid containing cylinder." Simmons does disclose cylinders 16A and 16B but does not disclose that the cylinders are "fluid containing." As such, Simmons fails to describe a "fluid containing cylinder, for moving a piston therein inwardly and outwardly as |

| | fluid is moving out or in respectively." |
|---|---|
| structure for releaseably or permanently attaching to a pad eye, lifting lug or other device joined by the attachment weld to another structure; | No – Simmons describes a weld tester to determine electrical conductivity and continuity rather than as a structural element. Further, Simmons does not disclose a "pad eye, lifting lug or other device joined by an attachment weld to another structure." |
| whereby moving fluid into the cylinder causes the piston to move outwardly to tension the pad eye, lifting lug or other device to test the integrity of the attachment weld in a non destructive manner. | No – Simmons describes a weld tester to determine electrical conductivity and continuity rather than as a structural element. Simmons does not disclose tensioning a pad eye, lifting lug or other device to test the integrity of an attachment weld. Further, the manner of testing described by Simmons is not non-destructive, as the test piece must be removed from its completed device before testing. |

### Claim 12 is not anticipated by Simmons

Simmons does not anticipate claim 12 because it does not anticipate claim 1, and, therefore, cannot anticipate dependent claim 12. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims). Simmons lacks a pad eye, lifting lug or other device attached to another device by an attachment weld. Simmons also does not disclose exerting a force substantially perpendicular object disclosed in Simmons. Thus, Simmons fails to show: 1) a mounted cylinder; the mounted cylinder exerting a force substantially perpendicular to a plane formed between a pad eye, lifting lug or other device and said attachment weld; 3) an attachment weld; 4) a force subjecting said attachment weld to a perpendicular load and 5) testing the pad eye, lifting lug, or the strength or integrity of the attachment weld. Based on the foregoing, Simmons does not anticipate claim 12.

Claim 13 is not anticipated by Simmons

With respect to claim 13, Simmons fails to describe at least the following elements: 1) "a method for testing weld strength and integrity of an attachment weld"; 2) "identifying a desired test weld joining a pad eye, lifting lug, or other device to another structure"; 3) "providing a framework including a base, top and side pieces;" 4) "providing at least one fluid cylinder, having a first end and a second end, mounted with the framework, for moving a piston therein inwardly and outwardly as fluid is moved out or in respectively"; 5) providing a first and second attachment means, wherein a pressurized fluid can enter in or exhaust from said cylinder; 6) providing an attachment structure for attaching externally to said pad eye, lifting lug or other device joined to the other structure by the attachment weld to be tested; 7) assembling the framework with the mounted cylinder fixedly attached at the first end of the cylinder externally to said pad eye, lifting lug or other device joined to another structure; 8) "urging fluid into the cylinder to cause the piston to tension the pad eye, lifting lug or other device joined to another structure thus testing the integrity of the attachment weld;" and 9) whereby the testing technician or test operator can inspect the tested attachment weld and the pad eye, lifting lug or other device joined to another structure for any structural damage or deformation.

For the same reasons as discussed with respect to the rejection of claim 1, Simmons fails to describe a pad eye, lifting lug or an attachment weld.

Example missing elements are further discussed below.

| Claim 13 Elements | Does Simmons Describe Element? |
|---|---|
| 13. A method for testing weld strength and integrity of an attachment weld when desired comprising the steps of: | No – Simmons describes a weld tester to determine electrical conductivity and continuity rather than as a structural element. |
| providing a framework including a base, top, and side pieces; | No – the Office Action, at paragraph 111, pages 138-140, of Requester's Replacement Request for Reexamination asserts that Simmons describes " a frame with a base, top and sides for mounted cylinders (*See* Fig. 1; col. 3, lines 3-27)." In fact, Simmons only describes "clamps 16A and 16B, |

44

| | |
|---|---|
| | clamp strands 10A and 10B respectively to maintain them pressed against one another within bushing 12." Thus, Simmons fails to describe a framework that includes a "top." As such, this element is not disclosed by Simmons. |
| providing at least one fluid cylinder, having a first end and a second end, mounted with the framework, for moving a piston therein inwardly and outwardly as fluid is moved out or in respectively; | No – Simmons does not describe "at least one fluid containing cylinder." Simmons does disclose cylinders 16A and 16B, but does not disclose that the cylinders are "fluid containing." As such, Simmons fails to describe a "fluid containing cylinder, for moving a piston therein inwardly and outwardly as fluid is moving out or in respectively." In addition, Simmons fails to disclose "inward" movement by the cylinder. Simmons' cylinders disclose outward, but not inward, movement. |
| providing a first and second attachment means, wherein a pressurized fluid can enter in or exhaust from said cylinder; | No – the Office Action failed to identify structure in the Simmons patent that meets the limitations of this element. As such, the Office Action fails to make out a *prima face* case of anticipation for this element. Simmons does not describe the use of fluid or attachment of pressurized fluid to a cylinder. The Office Action identifies "hydraulic cylinders 18A and 18B which provide for force in two directions." However, this does not disclose "first and second attachment means, wherein a pressurized fluid can enter in or exhaust from said cylinder." Thus, Simmons fails to disclose this claim element. |
| providing an attachment structure for attaching externally to said pad eye, lifting lug or other device joined to said another structure by the attachment weld | No – Simmons does not disclose a "pad eye, lifting lug or other device joined to another structure" or any attachment thereto. |

45

| | |
|---|---|
| to be tested; and | |
| assembling the framework with the mounted cylinder fixedly attached at the first end of said cylinder externally to said pad eye, lifting lug or other device joined to said another structure; | No – the Office Action at paragraph 111, pages 138-140, of Requester's Replacement Request for Reexamination asserts that Simmons describes "assembly of the frame and mounted cylinders 18A, 18B to move pistons inwardly and outwardly (X-Y direction) to tension test a cable butt weld non-destructively. (*See* Fig. 1; col. 3, lines 3-27)" meets the limitations of this claim element. In fact, cylinders 18A, 18B are "fixedly attached at the first end of the cylinder" and not to "a pad eye, lifting lug or other device joined to another structure." Instead, as seen in Fig. 1 of Simmons, the cable 10A, 10B is held co-linearly along the entire length of cylinders 18A and 18B, respectively, not at a "first end." As such, Simmons does not describe this element. |
| urging fluid into the cylinder to cause the piston to move outwardly to tension the pad eye, lifting lug or other device joined to said another structure thus testing the integrity of the attachment weld, | No – Simmons does not describe moving fluid into the cylinder to move a piston to tension a pad eye, lifting lug or other device joined to another structure. Simmons only describes a cable, not a pad eye. Thus, Simmons fails to describe this element. |
| whereby a testing technician or test operator can inspect the tested attachment weld and the pad eye, lifting lug or other device joined to another structure for any structural damage or deformation. | No – Simmons does not disclose physical inspection of "the tested attachment weld, pad eye, lifting lug or other device joined to another structure for any structural damage or deformation. Rather, Simmons discloses using a computer to create a graph and evaluate a failure zone.  *See* Simmons, col. 3, lines 21-23. |

46

<u>Claim 16 is not anticipated by Simmons</u>

The Office Action rejected claim 16 as "anticipated by Simmons." *See* page 11 of April 9, 2014, Office Action, adopting paragraph 128, at pages 160-161 of Requester's Replacement Reexamination Request.   The Office Action asserts that claim 16 is anticipated because "Simmons '537 discloses "calculation of the required test load based on the weight to be supported, by the test piece, determining an effective area of the cylinder piston; and dividing the test load by the effective area of the cylinder piston." *Id.* at page 160, paragraph 128. In fact, Simmons discloses that a "predetermined tension is applied to the weld." *See* Simmons, col. 1, lines 52-54. As discussed above, Simmons discloses applying the same load to each "strand 10A/10B." *Id.* The load is not calculated based on the weight to be supported. Thus, Simmons fails to disclose the elements of claim 16 and does not anticipate it.

In addition, claim 16 depends from claim 13, and Simmons does not describe all elements of claim 13 as shown above.  Accordingly, Simmons does not anticipate claim 16 as a matter of law. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

## Claim Rejections – 35 USC § 103(a)

### Bauer in view of Hogan Pre-AIA 35 U.S.C. § 103(a) re: Claims 1-4 and 7-20

Examiner has rejected claims 1-4 and 7-20 as being rendered obvious by Bauer in view of Hogan. Patentee respectfully traverses this rejection.

To support an obviousness rejection, M.P.E.P. § 2143.03 requires that "all words of a claim to be considered" and M.P.E.P. § 2141.02 requires consideration of the "[claimed] invention and prior art as a whole." Further, the Patent Trial and Appeal Board confirms that a proper, post-*KSR* obviousness determination still requires Examiners to make a "searching comparison of the claimed invention – including all its limitations – with the teaching of the prior art." *See In re Wada and Murphy*, Appeal 2008-3733, (citing *In re Ochia,* 71 F.3d 1565, 1572 (Fed. Cir. 1995) and *CFMT v. Yieldup Intern. Corp.*, 349 F.3d 1333, 1342 (Fed. Cir. 2003)).  Further still, the prior art "must also enable one of skill in the art to make and use the claimed invention." *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1374

(Fed. Cir. 2001) (quoting *In re Donohue,* 766 F.2d 531, 533 (Fed. Cir. 1985) (enabling disclosure required)).   In sum, it remains well-settled law that an obviousness rejection requires at least an enabling teaching or suggestion of all claim elements and limitations.

Patentee submits that Hogan discloses a device to test a weld connecting two adjacent lugs in an interior battery partition. The lugs of Hogan are spaced apart on vertical surfaces. A first portion of the device engages the top surface of one of the lugs holding it down, while a second portion of the device is clamped onto the second lug. An upward predetermined force exerted against the second lug, while the first lug is held down to prevent movement, is intended by Hogan to shear the weld if it is of poor strength, or fail to move the second lug if the weld is strong. Hogan teaches applying a predetermined force, not adjusting the force depending on the weld to be tested.

Hogan fails to disclose a device used to test a weld that attaches a pad eye, lifting lug or other device to another structure. While Hogan's two lugs of the battery partition are welded together, this is done for electrical conductivity. The weld is not a structural attachment to which force is applied during normal use of the battery.

Hogan fails to disclose any form of a "test piece" wherein that test piece comprises a "pad eye, lifting lug, or other device being tested." The "lug" as disclosed in Hogan is not a "lifting lug," but one for connecting a crimp or wire to a battery's positive and negative adapters. The lug disclosed and claimed in the '322 Patent is "primarily used as an attachment point for any rigging employed to hoist, transport, or secure heavy equipment." The '322 Patent at 1:29-31. Hogan's "weld" is completely unlike the "attachment weld" of claim 1 of the '322 Patent; Hogan's weld is disclosed and claimed as "electrically connect[ing] two spaced lugs" and is not a structural point of attachment for lifting the device welded to a pad eye or lifting lug as in Patentee's case. *See* Hogan at 2:40-47.

Hogan additionally fails to disclose a piston or shaft in a cylinder that moves and/or a cylinder that exerts a force, along an axis substantially perpendicular to a plane formed between a pad eye or other lifting lug being tested and a weld attaching said pad eye or lifting lug to a base. The device of Hogan instead holds a first lug in place while pulling upward on a second lug, applying a shearing force in a direction parallel to the weld between the two lugs.

With respect to claim 1, Hogan fails to disclose at least the following elements: 1) "a method for testing weld strength and integrity of an attachment weld"; 2) "providing a desired test piece wherein said test piece comprises a pad eye, lifting lug, or other device being tested"; and 3) "whereby urging fluid into the cylinder causes the piston to move outwardly to tension the pad eye thus testing the integrity of the weld".

As discussed above in response to the Examiner's anticipation rejection of the '322 patent's claim 1, Patentee submitted that Bauer discloses an apparatus used to hydraulically apply an axial force on a valve stem. Rather than testing the integrity or weld strength of the valve stem, Bauer's apparatus "simulates the loading condition of a motor operated valve." The loading is monitored to ensure that the valve is capable of operating, such as to open or close, in the event of an unusual condition." Phrased differently, Bauer hydraulically loads the valve stem and determines if the motor can turn the valve stem. Thus, Bauer fails to disclose a device used to test a weld, much less a weld between a pad eye and another structure in a non-destructive manner.  The term "weld" has an antecedent basis in the preamble, so the preamble's purpose language is applicable to this consideration. *Corning Glass Works, supra.*

With respect to claim 1, Bauer fails to disclose at least the following elements:

a) "an apparatus for testing the weld strength and integrity of an attachment weld;"

b) a "weld;"

c) "at least one fluid containing cylinder,"

d) "a piston;"

e) "structure for releaseably or permanently attaching to a pad eye, lifting lug or other device joined by the attachment weld to another structure;"

f) "whereby moving [the] piston therein inwardly and outwardly as fluid is moved out or in respectively;" and,

g) whereby moving fluid into the cylinder causes the piston to move outwardly to tension the pad eye to test the integrity of the attachment weld.

Hogan fails to disclose at least the following elements of claim 1 of the '322 patent:

a)   an apparatus for testing the weld strength and integrity of an attachment weld;

b)   structure for releasably or permanently attaching to a pad eye or other device joined by an attachment weld to another structure; and

c)   whereby moving the fluid into the cylinder causes the piston to move outwardly to tension the pad eye to test the integrity of the attachment weld in a non destructive manner.

Below, Patentee further discusses the reasons why Bauer and Hogan fail to render obvious Patentee's claim 1.

| Claim 1 Elements | Do Bauer and Hogan Teach or Suggest Element? |
|---|---|
| 1. An apparatus for testing the weld strength and integrity of an attachment weld, comprising: | No – Requester admitted in its Request that Bauer teaches, "a device for applying a known desired axial load by means of a hydraulic cylinder for testing a valve stem." Hogan fails to disclose an apparatus for testing weld strength and integrity of an attachment weld.  Thus, the Office Action has failed to show "an apparatus for testing weld strength and integrity of an attachment well." |
| at least one fluid containing cylinder, mounted with the framework, for moving a piston therein inwardly and outwardly as fluid is moved out or in respectively; and | No – the Office Action alleges that Bauer's "actuator 52" is "a fluid containing cylinder." In fact, Bauer would not function if a piston were pressed against valve stem 20 because valve stem 20 would not be able to move due to the friction between the piston and the valve stem. Substituting the piston of Hogan would not solve this problem and would make Bauer inoperative, as discussed above. As such, the combination of Bauer and Hogan does not teach or suggest this |

| | claim element. |
| --- | --- |
| structure for releaseably or permanently attaching to a pad eye, lifting lug or other device joined by the attachment weld to another structure; | No – Bauer teaches that valve stem 20 rotates. Thus, Bauer's valve stem 20 is not "attached." In fact, if valve stem 20 were "attached," it could not rotate and Bauer's device would be inoperative. As such, Bauer teaches away from attaching a test article. Similarly, using Hogan's clamp members 83 and 85 would not allow Bauer's stem valve 20 to rotate and Hogan's clamps 83 and 85 would render Bauer inoperative. |
| whereby moving fluid into the cylinder causes the piston to move outwardly to tension the pad eye, lifting lug or other device to test the integrity of the attachment weld in a non destructive manner. | No – Bauer fails to teach a "cylinder which causes a piston to move" to "test the integrity of the welding in a non destructive manner." In addition, neither Bauer, nor Hogan discloses "tensioning a pad eye," much less teach or suggest with the required enablement. |

<u>Claim 2 is not obvious in view of Bauer and light of Hogan</u>

As discussed above, claim 2 depends from claim 1, and the Office Action has failed to show that a combination of Bauer and Hogan teaches or discloses all elements of claim 1. Accordingly, claim 2 is not obvious as a matter of law. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

Further with respect to claim 2, Bauer and Hogan fail to teach or suggest at least the following elements: 1) "tensioning the pad eye, lifting lug or other device" and 2) "testing the integrity of the attachment weld."

| Claim 2 Element | Do Bauer and Hogan Teach or Suggest Element? |
| --- | --- |
| 2. The apparatus in claim 1, whereby moving fluid into the cylinder causes the piston to | No – Bauer discloses a fluid, not a piston, directly loading a valve stem 20. Bauer does not |

| | |
|---|---|
| move inwardly to tension the pad eye, lifting lug or other device thereby testing the integrity of the attachment weld. | even mention a "weld" or "testing the integrity of the weld." Bauer teaches, "at numerous points in a nuclear power plant, the flow of fluid is controlled by large gate valves. When a considerable pressure difference exists on opposite sides of the gate, frictional forces become large and a large force must be exerted by the valve stem to move the gate." Bauer, Col. 1, lines 16-20. As such, rather than teaching or suggesting a piston tensioning a pad eye to test the integrity of the weld, Bauer discloses none of these things. Similarly, Hogan's clamps 83 and 85 do not grasp a pad eye. As such, neither Hogan nor Bauer disclose "moving fluid into the cylinder" to "cause the piston to move inwardly to tension the pad eye then thereby testing the integrity of the weld." |

For the same reasons as discussed with respect to the rejection of claim 1, Bauer relates to "valve stems" and not "pad eyes." Similarly, Hogan relates to battery lugs, not "pad eyes." As such, the combination of Bauer and Hogan fail to teach or suggest all elements of claims 1 and 2. Therefore, Bauer and Hogan do not render claim 2 obvious.


Claim 3 is not obvious in view of Bauer and Hogan

Claim 3 depends from claim 1, and the Office Action has failed to show that Bauer and Hogan teach or suggest all elements of claim 1. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

| Claim 3 Elements | Do Bauer and Hogan Teach or Suggest Element? |
|---|---|
| 3. The apparatus of claim 1, further including: | No – Bauer and Hogan do not disclose, teach or suggest all elements of claim 1. |
| a support beam having a top and bottom end, and | No - A combination of Bauer and Hogan would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating, and, thereby render Bauer inoperative. |
| a bridge plate or cross bar, having a left and right end, fixedly attached, on said left and right ends and near the center, to and supported by said beam or the cylinder. | No – First, Bauer's "load beams 30 and 32" are not "bridge plates or cross bars." Second, Bauer does not disclose, teach or suggest that load beams 30 and 32 are "supported near the center." In fact, as argued by Requester with respect to claim 1, Bauer's valve stem 20 is held by load beams 30 and 32. |

For the same reasons as discussed with respect to the rejection of claim 1, Bauer relates to "valve stems" and not "pad eyes" and also lacks a bridge plate supported "near the center." Bauer and Hogan fail to teach or suggest all elements of claims 1 and 3. Further, a combination of Bauer and Hogan would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating. Therefore, claim 3 is not obvious over Bauer in view of Hogan.

Claim 4 is not obvious over Bauer in view Hogan

Claim 4 depends from claims 1 and 3, and the Office Action has failed to show that Bauer in view of Hogan teaches or suggests all elements of claims 1 and 3. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

With respect to claim 4, Bauer fails to disclose at least the following element: said cylinder shaft support beams are fixedly attached and sandwiched between said bridge plates.

Assuming for the sake of argument that split loading beams 30 and 32 are the same as a "bridge plate or cross beam," which they are not, split loading beams 30 and 32 are not "fixedly attached and sandwiched between," support rods 46 and 48. In fact, as seen in Bauer at Figure 2, below, beams 30 and 32 don't even directly contact support rods 46 and 48.



FIG. 2

In addition, as discussed above, a combination of Bauer and Hogan would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating, thereby rendering Bauer inoperative.

| Claim 4 | Do Bauer and Hogan Teach or Suggest Element? |
|---|---|
| The bridge plate or cross bar of claim 3, wherein said bridge plate can be comprised of two substantially identical plates wherein said cylinder shaft or support beams are fixedly attached and sandwiched between said bridge plates. | No – split loading beams 30 and 32 are not "fixedly attached and sandwiched between," support rods 46 and 48. In fact, as seen in Bauer at Figure 2, above, beams 30 and 32 don't even directly contact support rods 46 and 48. Further, a combination of Bauer and Hogan would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating, and, thereby, render Bauer inoperative. |

54

Claim 7 is not obvious over Bauer in view of Hogan

Claim 7 depends from claim 1, and the Office Action has failed to show that Bauer and Hogan teaches or suggests all elements of claim 1. As such, Bauer and Hogan does not renders claim 7 obvious. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

With respect to claim 7, Bauer fails to disclose at least the following elements: 1) a pad eye, lifting lug or an attachment weld attaching the pad eye or lifting lug to another structure; 2) a shaft, having a first end and a second end, the first end fixedly attached to said internal piston and said second end is fixedly attached to said bridge plate or cross bar; 3) wherein said first pressurized fluid attachment means is disposed axially between said cylinder first end and said piston; and, 4) wherein said second pressurized fluid attachment means is disposed axially between said cylinder second end and said piston.

Below, Patentee further discusses missing elements that prevent a holding of obviousness based on Bauer in view of Hogan.

| Claim 7 | Do Bauer and Hogan Teach or Suggest Element? |
|---|---|
| 7. The apparatus of claim 1, wherein the cylinder further comprises: | No – Bauer and Hogan do not disclose, teach or suggest all elements of claim 1. |
| a substantially cylindrical piston carried in said cylinder for movement therein along an axis, of said cylinder, being substantially perpendicular to a plane formed between said pad eye, lifting lug or other device and the attachment weld attaching said pad eye or lifting lug or other device to said another structure; | No – Bauer and Hogan do not disclose, teach or suggest a "pad eye, lifting lug or other device" attached to another structure by an "attachment weld." In fact, Bauer fails to mention a weld or testing of a weld. If Bauer's valve stem 20 were welded in to position, Bauer would be inoperative. Further, a combination of Bauer and Hogan would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating, and, thereby, render Bauer inoperative. |

| | |
|---|---|
| a shaft, having a first end and a second end, the first end fixedly attached to said internal piston and said second end is fixedly attached to said bridge plate or cross bar; and | The Office Action recites, "Bauer '997 discloses cylinder 53 fixedly attached to the crossbar 30, 32. (*See* Figs. 1, 3, and 4; col. 3, line 50-col. 4, line 15). In fact, no such reference number appears in these figures, or anywhere in Bauer. Thus, the Office Action has failed to demonstrate that this element is found in Bauer. Further, a combination of Bauer and Hogan would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating, thereby rendering Bauer inoperative. |
| first and second fluid pressurization means; | No – Hogan discloses only one cylinder, not two. Hogan does not disclose or suggest any additional pressurization means. |
| wherein said first pressurized fluid attachment means is disposed axially between said cylinder first end and said piston; | No – Figures 9 and 10 of Bauer do not disclose "the first pressurized fluid attachment means is disposed axially between said cylinder first end and said piston." The Office Action has not alleged that Hogan discloses this element. As such, the failures of Bauer are not remedied by Hogan, and this element is, therefore, neither taught nor suggested. |
| wherein said second pressurized fluid attachment means is disposed axially between said cylinder second end and said piston; and | No – Figures 9 and 10 of Bauer do not disclose "said first pressurized fluid attachment means is disposed axially between said cylinder first end and said piston." The Office Action has not alleged that Hogan discloses this element. As such, the failures of Bauer are not remedied by Hogan, and this element is, therefore, neither taught nor suggested. |

56

| wherein pressurized fluid enters said cylinder through said first attachment means or second attachment means. | No – Hogan discloses only one cylinder, not two. |
|---|---|

### Claim 8 is not obvious over Bauer in view of Hogan

Claim 8 depends from claim 7, which in turn depends from claim 1. The Office Action has failed to show that Bauer and Hogan teach or disclose all elements of claim 1 or claim 8. As such, Bauer in view of Hogan does not render claim 8 obvious. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

Further with respect to claim 8, Bauer and Hogan fail to disclose, much less teach or suggest, at least the following element: a "pad eye, lifting lug or other device" that is "fixedly attached to said pad eye, lifting lug or other device."

| Claim 8 | Do Bauer and Hogan Teach or Suggest Element? |
|---|---|
| 8. The apparatus of claim 7, wherein said cylinder comprises: | No - Bauer and Hogan do not disclose, teach or suggest all elements of claim 7. |
| said second end of said shaft is fixedly attached to said pad eye, lifting lug, or other device. | No – Bauer fails to disclose, teach or suggest a "pad eye or other device" that is "fixedly attached to said pad eye or other device to be tested. According to Requester, "Bauer '997 teaches cylinder 204 attached to valve stem 211 to be tested. (*See* Fig. 10; col. 5, lines 50-67)." In fact, Bauer's Figure 10 shows that cylinder 204 is "mounted on an adjustable support 213 which is in turn mounted on top of a valve motor operator (not shown)." As such, Bauer's cylinder is not "fixedly attached to the said pad eye, lifting lug or other device." As discussed above, if Bauer's shaft were fixedly attached to valve stem 211, valve stem 211 could not turn and |

| | Bauer would be inoperative. Further, a combination of Bauer and Hogan would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating, and, thereby, render Bauer inoperative. |
|---|---|

Claim 9 is not obvious over Bauer in view of Hogan

Claim 9 depends from claim 1.  The Office Action has failed to show that Bauer and Hogan teach or suggests all elements of claim 1.  As such, Bauer and Hogan does not render claim 9 obvious.  *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

Further with respect to claim 9, Bauer fails to disclose, much less teach or suggest, at least the following element:  an "internal piston."

| Claim 9 | Do Bauer and Hogan Teach or Suggest Element? |
|---|---|
| 9. The apparatus in claim 1, further including: | No - Bauer and Hogan do not disclose, teach or suggest all elements of claim 1. |
| a control means for allowing pressurized fluid to be alternatively supplied to and exhausted from said cylinder in a manner that the internal piston will move in an axial direction away from away said first end of said cylinder, toward the second end of said cylinder, when the pressurized fluid enters through said first pressurized fluid attachment means, and that the said internal piston will move in an axial direction away from said second end of said cylinder toward the first end of said cylinder, when the | No –In the sections cited in the Office Action, (Figs. 9 and 10; col. 4, lines 46-65; col. 5, lines 50-67), Bauer does not disclose or show a piston or the movement of a piston. Thus, Bauer fails to disclose this element of claim 9. According to Requester, Hogan discloses, "control to provide fluid to the cylinder 95 (*See* col. 3, lines 52-54). Accepting this as true only for the purposes of argument, it does not remedy Bauer's failure to teach or suggest a "piston." Thus, the combination of Bauer and Hogan does not render claim 9 obvious. Further, a combination of Bauer |

| pressurized fluid enters through said second pressurized fluid attachment means. | and Hogan would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating, and, thereby, render Bauer inoperative. |
|---|---|

With respect to claim 9, Bauer is again deficient as Bauer fails to disclose "movement of a piston." In fact, the cited portions of Bauer make no mention of the word "piston." For these reasons, and/or those stated with respect to claim 1, claim 9 is not rendered obvious by Bauer in view of Hogan.

## Claim 10 is not obvious over Bauer in view of Hogan

Claim 10 depends from claims 1 and 9. The Office Action has failed to show that Bauer and Hogan teach or suggest all elements of claim 1 and/or claim 9. As such, Bauer and Hogan do not render obvious claim 10. *In re Fine, supra* (if independent claim is allowable, then so are the dependent claims).

With respect to claim 10, Bauer and Hogan fail to disclose, much less enable, teach or suggest, at least the following elements: 1) an "internal piston;" 2) "a pad eye, lifting lug or other device;" and 3) "a weld."

| Claim 10 | Do Bauer and Hogan Teach or Suggest Element? |
|---|---|
| 10. The apparatus in claim 9, wherein: | No - Bauer and Hogan do not disclose, teach or suggest all elements of claim 9. |
| the cylinder shaft will extend when said internal piston moves in an axial direction away from said first end of said cylinder toward the second end of said cylinder, causing said mounted cylinder to exert a | No –In the sections citing Bauer, (Fig. 2; col. 2, lines 50-67), Bauer does not disclose or show a piston or the movement of a piston. In addition, and as discussed above, Bauer does not disclose, teach or suggest a pad eye, a lifting lug or other |

| | |
|---|---|
| force substantially perpendicular to a plane formed between the pad eye, lifting lug or other device and the attachment weld attaching said pad eye or lifting lug or other device to said another structure. | device attached to another structure by a weld. According to the Office Action, at page 13, Hogan discloses a "welded lug." Accepting this only for the sake of argument, the Office Action does not allege, in its argument concerning claim 10, that Hogan discloses a piston. As such, the Office action has failed to make a *prima facie* obviousness rejection. Further, a combination of Bauer and Hogan would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating, and, thereby, render Bauer inoperative. |

With respect to claim 10, Bauer is again deficient as Bauer fails to teach or suggest "movement of a piston," a pad eye or a lifting lug or a weld. In fact, at the cited portions of Bauer, there is no mention of the word "piston, pad eye, lifting lug or weld." For these reasons, and those stated with respect to claims 1 and 9, Bauer and Hogan do not render claim 10 obvious.

Claim 11 is not obvious over Bauer in view of Hogan

Claim 11 depends from claims 1 and 9. The Office Action has failed to show that Bauer and Hogan teach or disclose all elements of claim 1 and/or claim 9. As such, Bauer and Hogan do not render obvious claim 11. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

Further with respect to claim 11, Bauer fails to disclose, much less teach or suggest, at least the following elements: 1) an "internal piston;" 2) "a pad eye or other lifting lug being tested;" and 3) "a weld."

| Claim 11 | Do Bauer and Hogan Teach or Suggest Element? |
|---|---|
| 11. The apparatus in claim 9, wherein: | No – Bauer and Hogan do not disclose, teach or suggest all elements of claims 1 or 9. |
| the cylinder shaft will retract when said internal piston moves in an axial direction away from said second end of said cylinder toward said first end of said cylinder, causing said mounted cylinder to exert a force substantially perpendicular to a plane formed between said pad eye, lifting lug or other device and the attachment weld attaching said pad eye, lifting lug or other device to said another structure. | No –In the sections cited by Bauer, (Fig. 10; col. 5, lines 50-67), Bauer does not disclose or show a piston or the movement of a piston. In addition, and as discussed above, Bauer and Hogan do not disclose, teach or suggest a pad eye, a lifting lug or other device attached to another structure by a weld. According to the Requester, Hogan "discloses moving fluid into the cylinder 95 to cause the piston to move inwardly (retract) to tension lug 23 (*See* Fig. 1 and 2; col. 4, lines 42-55)." Accepting this for the sake of argument only, Hogan does not disclose, teach or suggest applying a force "substantially perpendicular to a plane formed between said pad eye, other lifting lug and the attachment weld attaching said pad eye or lifting lug to another structure." Moreover, Hogan's disclosure that "clamping jaws 83 and 85 are tightly clamped to lug 23" teaches away from Patentee's claim. *Id.* Further, a combination of Bauer and Hogan would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating, and, thereby, render Bauer inoperative. Thus, claim 11 is not obvious over Bauer in view of Hogan because they do not teach or suggest all the elements of claim 11 and it would be improper to combine these references because of inoperability. |

With respect to claim 11, Bauer is again deficient as Bauer fails to disclose "movement of a piston," a pad eye, lifting lug or other device and a weld. In fact, the cited portions of Bauer make no mention of the word "piston, pad eye, lifting lug, other device or weld." For these reasons, and those stated with respect to claims 1 and 9, Bauer and Hogan do not render claim 11 obvious.

<u>Claim 12 is not obvious over Bauer in view of Hogan</u>

Claim 12 depends from claim 1. The Office Action has failed to show that Bauer and Hogan teach or disclose all elements of claim 1. As such, Bauer and Hogan do not render obvious claim 12. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

Further with respect to claim 12, Bauer fails to disclose, much less teach or suggest with the required enablement, at least the following elements: 1) "a pad eye, lifting lug or other device;" 2) "a tension load;" and, 3) "a weld." Hogan does not remedy these deficiencies because, for instance, Hogan's lug 23 is not a "lifting lug."

| Claim 12 | Do Bauer and Hogan Teach or Suggest Element? |
|---|---|
| 12. The apparatus in claim 1, | No – Bauer and Hogan do not disclose, teach or suggest all elements of claims 1. |
| wherein said mounted cylinder will exert a force substantially perpendicular to a plane formed between the pad eye, lifting lug or other device and said attachment weld attaching said pad eye, lifting lug or other device creating a substantially perpendicular force away from said pad eye, lifting lug or other device subjecting said attachment weld to a tension load. | No – As discussed above, Bauer does not disclose, teach or suggest a pad eye, a lifting lug or a weld. In addition, Bauer teaches applying a "compressive load" (*See* Col. 2, lines 59-61) to valve stem 20, not a "tension load." These deficiencies are not remedied by Hogan because Hogan's lug 23 is not a "pad eye or lifting lug." The '322 patent recites, "[p]ad eyes and lifting lugs are primarily used as an attachment point for any rigging employed to hoist, transport, or secure heavy equipment (such as drill string piping weighing many tons.) *See* '322 patent, |

|  | col. 1, lines 18-23. Hogan's lug 23 is not a pad eye or lifting lug comparable to these elements of claim 12. Further, a combination of Bauer and Hogan would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating, and, thereby, render Bauer inoperative. |
|---|---|

With respect to claim 12, Bauer is again deficient as Bauer fails to disclose "a pad eye, a lifting lug or an attachment weld." Bauer also fails to disclose "a tension load." For these reasons, and those stated with respect to claim 1, claim 12 is not obvious over Bauer in view of Hogan.


Claim 13 is not obvious over Bauer in view of Hogan

With respect to claim 13, Bauer and Hogan fail to disclose, much less teach or suggest with the required enablement, at least the following elements:  1) "a method for testing weld strength and integrity of an attachment weld when desired comprising the steps of:"; 2) "identifying a desired weld joining a pad eye, lifting lug, or other device to another structure;"; 3) "providing an attachment structure for attaching externally to said pad eye, lifting lug or other device joined to the other structure by the attachment weld to be tested;" 4) "urging fluid into the cylinder to cause the piston to tension the pad eye, lifting lug or other device joined to another structure thus testing the integrity of the attachment weld"; and 5) "whereby the testing technician or test operator can inspect the tested attachment weld and the pad eye, lifting lug or other device joined to another structure for any structural damage or deformation."

As discussed above, with respect to claim 13, Bauer fails to describe at least the following elements: 1) "a method for testing weld strength and integrity of an attachment weld when desired comprising the steps of:"; 2) "identifying a desired weld joining a pad eye, lifting lug or other device to another structure; 3) "providing an attachment structure for attaching externally to said pad eye, lifting lug or other device joined to the other structure by the

attachment weld to be tested;" 4) "urging fluid into the cylinder causes the piston to tension the pad eye, lifting lug or other device joined to another structure thus testing the integrity of the attachment weld"; and 5) "whereby the testing technician or test operator can inspect the tested attachment weld and the pad eye lifting lug or other device joined to another structure for any structural damage or deformation."

For the same reasons as discussed with respect to the rejection of claim 1, Bauer relates to "valve stems" and not "pad eyes" or "lifting lugs." Bauer fails to describe "caus[ing] the piston to tension the pad eye." Bauer fails to describe, including failing to have any reference to a "weld," much less "testing the integrity of the weld," or "inspect[ing] the tested attachment weld for any structural damage or deformation."

The Office Action cites paragraph 112 on pages 140-141 of the Request for Examination as rendering claim 13 obvious because "Bauer '997 discloses each and every element of claim 13 but for welding testing a weld lug. Hogan '881 discloses moving fluid into a hydraulic cylinder 95 to cause the piston to move to test a lug attachment welded in a nondestructive manner. (See Hogan '881, col. 2, lines 42-54; Fig. 1 and 2, col. 4, lines 42-55)." As discussed above, Bauer does not disclose all of the elements of claim 13. Further, Hogan does not disclose, teach or suggest an eye pad or lifting lug. In fact, in the sections of Hogan cited by Requester, Hogan discloses that "clamping jaws 83 and 85 are tightly clamped to lug 23." As such, Hogan does not disclose, teach or suggest "a pad eye, lifting lug or other device joined to said another structure by an attachment weld."

Below, Patentee discusses some of the missing elements in claim 13.

| Claim 13 Elements | Do Bauer and Hogan Teach or Suggest Element? |
|---|---|
| 13. A method for testing weld strength and integrity of an attachment weld when desired comprising the steps of: | No –Requester admitted in the Request that Bauer describes, "a device for applying a known desired axial load by means of an hydraulic cylinder for testing a valve stem" – not the invention at issue. Moreover, Bauer fails to describe "an apparatus for testing weld strength and integrity of a well." Further, a combination of Bauer and Hogan |

| | would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating, and, thereby, render Bauer inoperative. |
|---|---|
| providing at least one fluid cylinder, having a first end and a second end,  mounted with the framework, for moving a piston therein inwardly and outwardly as fluid is moved out or in respectively; | No – Despite an allegation to the contrary, "actuator 52" is not "a fluid containing cylinder." In fact, Bauer would not function if a piston were pressed against Bauer's valve stem 20 because valve stem 20 would not be able to move due to the friction between the piston and the valve stem. Further, a combination of Bauer and Hogan would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating, and, thereby, render Bauer inoperative. |
| providing an attachment structure for attaching externally to said pad eye, lifting lug or other device joined to said another structure by the attachment weld to be tested; and | No – Bauer describes that the valve stem 20 rotates. Thus, Bauer's valve stem 20 is not "attached." In fact, if valve stem 20 were "attached," it could not rotate and Bauer's device would be inoperative. As such, Bauer does not describe this element and actually teaches away from "attaching" a test article. Further, Bauer does not teach testing a weld that is "joined to another structure." Further, a combination of Bauer and Hogan would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating, and, thereby, render Bauer inoperative. |
| assembling the framework with the mounted cylinder fixedly attached at the first end of said cylinder externally to said pad eye, | No – Bauer describes that the valve stem 20 rotates. Thus, Bauer's valve stem 20 is not "attached."  In fact, if valve stem 20 were |

| | |
|---|---|
| lifting lug or other device joined to said another structure; | "attached," it could not rotate and Bauer's device would be inoperative. As such, Bauer does not describe this element and actually teaches away from attaching to another structure. |
| urging fluid into the cylinder to cause the piston to move outwardly to tension the pad eye, lifting lug or other device joined to said another structure thus testing the integrity of the attachment weld, | No – Bauer does not describe "testing the integrity of the weld" or a "pad eye." In addition, Bauer only discusses "compressing" a valve stem 20. *See* Bauer, col. 2, lines 59-61, ("... to apply a compressive load in an upward direction to the valve stem.") Thus, Bauer does not disclose this element. Hogan cannot remedy this failure because a combination of Bauer and Hogan would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating, and, thereby, render Bauer inoperative. |
| whereby a testing technician or test operator can inspect the tested attachment weld and the pad eye, lifting lug or other device joined to another structure for any structural damage or deformation. | No – As discussed above, Bauer never describes weld strength or weld integrity. Hogan cannot remedy this failure because a combination of Bauer and Hogan would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating, and, thereby, render Bauer inoperative. |

<u>Claims 14-19 are not obvious over Bauer in view of Hogan</u>

Claims 14-19 depend from claim 13. The Office Action has failed to show that claim 13 is obvious over Bauer in view of Hogan. As such, the Office Action has failed to establish a *prima facie* obviousness case with respect to claims 14-19. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

66

<u>Claim 20 is not obvious over Bauer in view of Hogan</u>

With respect to claim 20, Bauer fails to disclose at least the following elements:  1) "a method for testing weld strength and integrity of an attachment weld when desired with a single cylinder apparatus"; 2) "identifying a desired test piece wherein said test piece comprises the attachment weld joining a pad eye, lifting lug, or other device;" 3) "providing an attachment structure for attaching external to said test piece;" 4) retracting the cylinder shaft thereby exerting a force substantially perpendicular to a plane formed between the attachment weld, and the pad eye or other lifting lug joined to another structure by the attachment weld; and 5) "inspecting the test piece and its attachment weld for any structural damage or deformation."

For at least the same reasons as discussed with respect to the rejection of claims 1 and 13, Bauer relates to "valve stems" and not "pad eyes" or "lifting lugs." Bauer fails to disclose, teach or suggest "caus[ing] the piston to tension the attachment weld, pad eye or lifting lug." Bauer also fails to have any reference, much less teach or suggest with required enablement, a "weld," "testing the integrity of the weld," or "inspect[ing] the tested device and the weld for any structural damage or deformation." Likewise, Hogan fails to disclose, teach or suggest the elements missing from Bauer. Further, a combination of Bauer and Hogan would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating.

Below, Patentee further discusses elements that Bauer and/or Hogan fail to teach or suggest.

| Claim 20 Elements | Do Bauer and Hogan Teach or Suggest Element? |
|---|---|
| 20. A method for testing weld strength and integrity of an attachment weld when desired with a single cylinder apparatus comprising the steps of: | No – Requester admits that Bauer teaches, "a device for applying a known desired axial load by means of a hydraulic cylinder for testing a valve stem." Thus, the Office Action fails to show "an apparatus for testing weld strength and integrity of a weld. In fact, as discussed above, Bauer never discusses weld strength or weld integrity. Hogan fails to disclose testing weld |

| | strength or weld integrity of an attachment weld disclosed by the '322 patent. These deficiencies are not remedied by Hogan because Hogan's lug 23 is not a "lifting lug." The '322 patent recites, "[p]ad eyes and lifting lugs are primarily used as an attachment point for any rigging employed to hoist, transport, or secure heavy equipment (such as drill string piping weighing many tons.) *See* '322 patent, col. 1, lines 18-23. Hogan's lug 23 is not an attachment lug comparable to the lifting lug of claim 12. Further, a combination of Bauer and Hogan would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating, and, thereby, render Bauer inoperative. |
|---|---|
| identifying a desired test piece wherein said test piece comprises the attachment weld joining a pad eye, lifting lug, or other device to another structure; | No – Bauer does not disclose, teach or suggest a pad eye or lifting lug or other device to be tested. These deficiencies are not remedied by Hogan because Hogan's lug 23 is not a "lifting lug." The '322 patent recites that "[p]ad eyes and lifting lugs are primarily used as an attachment point for any rigging employed to hoist, transport, or secure heavy equipment (such as drill string piping weighing many tons.) *See* '322 patent, col. 1, lines 18-23. Hogan's lug 23 is not an attachment lug comparable to the lifting lug of claim 12. Further, a combination of Bauer and Hogan would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating, and, thereby, render Bauer inoperative. |

| | |
|---|---|
| providing at least one fluid cylinder, mounted with the framework, for moving a piston therein inwardly and outwardly as fluid is moved out or in respectively; | No – The Office Action alleges that "actuator 52" is "a fluid containing cylinder." In fact, Bauer would not function if a piston were pressed against valve stem 20 because valve stem 20 would not be able to move due to the friction between the piston and the valve stem. The Office Action alleges that Bauer "discloses providing a fluid containing cylinder." However, a combination of Bauer and Hogan would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating, and, thereby, render Bauer inoperative. |
| providing an attachment structure for attaching external to said test piece; | No – Bauer teaches that valve stem 20 rotates. Thus, Bauer's valve stem 20 is not "attached." In fact, if valve stem 20 were "attached," it could not rotate and Bauer's device would be inoperative. Rather than acknowledging that valve stem 20 is being tested to determine if it will rotate, the Office Action alleges that Hogan "discloses an attachment structure, clamping jaws 83 and 85 for releaseably or permanently attaching to a lug 23 to be tested." *See* Request, page 182. As discussed above, if Bauer's valve stem 20 were held by "clamping jaws 83 and 85," it would not turn, which would defeat the purpose of valve stem 20. As such, it is improper to combine Bauer and Hogan. |
| assembling the framework with the mounted cylinder fixedly attached at the first end of said cylinder external to said test piece; | No – Bauer teaches that the valve stem 20 rotates. Thus, Bauer's valve stem 20 is not "attached." In fact, if valve stem 20 were |

|  | "attached," it could not rotate and Bauer's device would be inoperative. As such, Bauer teaches away from attaching a test article. Using Hogan to fixedly attach to the valve stem 20 would render Bauer inoperative. Thus, it is improper to combine these references. |
|---|---|
| retracting the cylinder shaft thereby exerting a force substantially perpendicular to a plane formed between the attachment weld, and the pad eye, lifting lug or other device joined to said another structure by the attachment weld; | No – Bauer does not disclose, teach or suggest a "pad eye, lifting lug or other device" or a "weld" attaching the pad eye, lifting lug or other device to another structure. In fact, Bauer fails to even mention a weld or testing of a weld. If Bauer's valve stem 20 were welded into position, Bauer would be inoperative. The Office Action alleges that Hogan discloses a weld. However, a combination of Bauer and Hogan would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating. Thus, it is improper to combine these references. |
| inspecting the test piece for any structural damage or deformation; | No – Bauer does not disclose, teach or suggest a weld or attaching a test piece using an "attachment weld." If Bauer's valve stem 20 were welded, Bauer would be unable to open or close and would be inoperative. Thus, Bauer teaches away from the use of "attachment welds." The Office Action alleges that Hogan discloses a weld. A combination of Bauer and Hogan, however, would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating. Thus, it is improper to combine these references. |

Rather than testing the integrity or weld strength of the valve stem, Bauer's apparatus "simulates the loading condition of a motor operated valve." The loading is monitored to ensure that the valve is capable of operating, such as to open or close, in the event of an unusual condition." Phrased differently, Bauer hydraulically loads the valve stem and determines if the motor can turn the valve stem. Thus, Bauer fails to teach or suggest a device used to test a weld between a pad eye and another object in a non-destructive manner.

Bauer instead relates to testing the ability of a motor to turn a valve stem under a fluid load. Bauer also fails to teach or suggest any reference to a "weld" or "testing the integrity of the weld." The term "weld" has an antecedent basis in the preamble, so the preamble's purpose language is applicable to this consideration. For the reasons described above, Bauer cannot render claim 20 obvious as each and every element is not taught or suggested, much less with the required enablement.

Further, a combination of Bauer and Hogan would render Bauer inoperative because Hogan's clamps 83 and 85 would prevent Bauer's valve stem 20 from rotating, and, thereby, render, Bauer inoperative. Thus, it is improper to combine Bauer and Hogan.

Finally, for the Office's obviousness rejections based on Bauer in view of Hogan, Patentee hereby incorporates his comments, above, because, in addition to not describing the missing elements from an anticipation viewpoint, Bauer also fails to teach or suggest the non-described portions of claims rejected under Bauer and Hogan, whereby Hogan fails to cure Bauer's failings.


**Lemoine in view of Hogan Pre-AIA 35 U.S.C. § 103(a) re: Claims 1, 3 and 12**

Patentee submits that Lemoine discloses a device for pulling or removing elongate objects, *e.g.*, stakes, spikes, and pins, having an end embedded in a second object, *e.g.*, the ground, by receiving and clamping to the free end of the object for applying an axial force thereto using one or more jacks. When the free end of the elongate object is received within the device, the base of the device contacts the second object into which the elongate object is

embedded. Actuating the jack(s) provides a separating force between the stake and ground while concurrently providing a clamping force to the stake to retain it in association with the device.

Lemoine fails to teach or suggest a device used to non-destructively test a weld that attaches a pad eye to an object. Lemoine is intended to grip and remove stakes from the ground, which on its very nature is a destructive act and not non-destructive. Lemoine addresses the frictional forces between the sides of the elongate member and the ground; there is no weld or other feature attaching any part of the stake to the ground that is being tested. Lemoine is not used or intended to test the strength of any object; instead Lemoine is designed to remove embedded elongate members.

Lemoine additionally fails to teach or suggest a piston or shaft in a cylinder that moves, and/or a cylinder that exerts a force, along an axis substantially perpendicular to a plane formed between a pad eye or other lifting lug and a weld attaching said pad eye or lifting lug to another structure. Lemoine, instead, applies an axial force parallel to the axis of the stake being pulled, and parallel to the plane defined by the frictional engagement between the sides of the stake and the ground.

In the preceding obviousness section, Hogan is discussed, and Patentee incorporates those comments into this section of Patentee's response for obviousness rejections based on Lemoine in view of Hogan.

Below, Patentee discusses elements that Lemoine in view of Hogan fail to teach or suggest.

| Claim 1 Elements | Do Lemoine and Hogan Teach or Suggest Element? |
|---|---|
| 1. An apparatus for testing the weld strength and integrity of an attachment weld, comprising: | No – Lemoine fails to teach or suggest a device used to non-destructively test a weld that attaches a pad eye to an object.  Hogan fails to teach or suggest an apparatus for testing weld strength and integrity of an attachment weld. Thus, the Office Action has failed to show "an apparatus for testing weld strength and integrity of a well." |

| | |
|---|---|
| at least one fluid containing cylinder, mounted with the framework, for moving a piston therein inwardly and outwardly as fluid is moved out or in respectively; and | No – Neither Lemoine nor Hogan teach or suggest a cylinder, which moves both inwardly and outwardly. In fact, Lemoine teaches extracting a stake from the ground, not implanting a stake into the ground, and Hogan teaches tensioning a weld by pulling upwardly on it, not pushing downwardly on the weld. As such, neither Lemoine nor Hogan teach or suggest moving a piston inwardly and outwardly. |
| structure for releaseably or permanently attaching to a pad eye, lifting lug or other device joined by the attachment weld to another structure; | No – Neither Lemoine nor Hogan teach or suggest a pad eye. Lemoine does not teach or suggest a pad eye joined by an attachment weld. Lemoine discloses a "device for pulling objects"; it does not "test" to determine how much force was required to "pull the object" away from "another structure." |
| whereby moving fluid into the cylinder causes the piston to move outwardly to tension the pad eye, lifting lug or other device to test the integrity of the attachment weld in a non destructive manner. | No – neither Lemoine nor Hogan disclose a pad eye, lifting lug or other device joined by an attachment weld to another structure. Lemoine does not teach or suggest a test device. Lemoine discloses a "device for pulling objects"; it does not "test" to determine how much force was required to "pull the object." In fact, Hogan teaches or suggests applying a "predetermined force" (Hogan, col. 4, lines 46-47) in order to see if the weld fails or does not fail, *i.e.*, a rupture or does not rupture solution; that is, Hogan does not teach or suggest how to test a weld in a "non-destructive manner." |

<u>Claim 3 is not obvious over Lemoine in view of Hogan</u>

As discussed above, claim 3 depends from claim 1, and the Office Action has failed to show that Bauer teaches or discloses all elements of claim 1.  As such, claim 3 is not obvious over Lemoine in view of Hogan.  *In re Fine, supra* (if independent claim is allowable, then so are the dependent claims).

Below, Patentee discusses an element that Lemoine in view of Hogan fail to teach or suggest.

| Claim 3 Elements | Do Lemoine and Hogan Teach or Suggest Element? |
|---|---|
| 3. The apparatus of claim 1, further including: | No – Lemoine and Hogan do not disclose, teach or suggest all elements of claim 1. |
| a bridge plate or cross bar, having a left and right end, fixedly attached, on said left and right ends and near the center, to and supported by said beam or the cylinder. | No – Neither Lemoine nor Hogan teach or suggest "a bridge plate" or "cross bar" that "supports a cylinder near the center." In fact, Lemoine's cylinders 37 are not disposed at the center of device for pulling objects. Cylinder 95 of Hogan is above the structure that clamps to lug 23. As such, cylinder 95 of device 11 is supported by an "automatic machine (not shown)." *See* Hogan, col. 2, lines 56-57. Phrased differently, cylinder 95 is supported by the "(not shown) automatic machine," and is not supported by a "bridge plate or cross bar." |

For these reasons, and those stated with respect to claim 1, claim 3 is not obvious over Lemoine in view of Hogan.

Claim 12 is not obvious over Lemoine in view of Hogan

Claim 12 depends from claim 1. The Office Action has failed to show that Lemoine and Hogan teach or disclose all elements of claim 1. As such, claim 12 is not obvious over Lemoine in view of Hogan. *In re Fine, supra* (if independent claim is allowable, then so are the dependent claims).

With respect to claim 12, Lemoine fails to teach or suggest at least the following elements: 1) "a pad eye, lifting lug or other device attached to another structure;" 2) "a tension load;" and 3) "an attachment weld." Hogan does not remedy these deficiencies because, for instance, Hogan's lug 23 is not a "lifting lug."

Below, are example elements that Lemoine in view of Hogan fail to teach or suggest.

| Claim 12 | Do Lemoine and Hogan Teach or Suggest Element? |
|---|---|
| 12. The apparatus in claim 1, | No – Lemoine and Hogan do not disclose, teach or suggest all elements of claims 1. |
| wherein said mounted cylinder will exert a force substantially perpendicular to a plane formed between the pad eye, lifting lug or other device and said attachment weld attaching said pad eye, lifting lug or other device creating a substantially perpendicular force away from said pad eye, lifting lug or other device subjecting said attachment weld to a tension load. | No – As discussed above, Lemoine does not disclose, teach or suggest a pad eye, a lifting lug, other device or an attachment weld. Also, Lemoine does not teach or suggest a "testing device"; it discloses a "device for pulling objects," and does not non-destructively test to determine how much force would be required to "pull the stake." These deficiencies are not remedied by Hogan because Hogan's lug 23 is not a "lifting lug." The '322 patent recites that "[p]ad eyes and lifting lugs are primarily used as an attachment point for any rigging employed to hoist, transport, or secure heavy equipment" (such as drill string piping weighing many tons.) *See* '322 patent, col. 1, lines 18-23. Hogan's lug 23 is not an attachment lug comparable to the lifting lug of claim 12. |

For these reasons, and those stated with respect to claim 1, claim 12 is not obvious over Lemoine in view of Hogan.  Hogan does not remedy Lemoine's deficiencies because, for example, Hogan's lug 23 is not a "lifting lug."

**McEntire in view of Hogan Pre-AIA 35 U.S.C. § 103(a) re: Claims 1, 3 and 6**

Examiner cites McEntire in view of Hogan as rendering claims 1, 3 and 6 of the '322 Patent obvious.  Patentee respectfully traverses these rejections.

As previously discussed, Patentee submits that McEntire discloses "a device for testing anchors (dead men) embedded in the earth so that a force can be applied to the anchor at a known and desired angle, the device employing an inclined support surface which carries a piston and cylinder means. The piston and support means can be moved and stopped at a plurality of points along the length of the support surface." *See* Abstract of McEntire.  Phrased differently, McEntire discloses pulling an anchor out of concrete after implanting the anchor while the concrete is uncured.

McEntire fails to disclose, teach or suggest any reference to a "weld" or "testing the integrity of the weld." The term "weld" has an antecedent basis in the preamble, so the preamble's purpose language is applicable to this consideration. *Id.*  For the reasons described above, Bauer cannot anticipate claim 1 as each and every element is not taught or suggested, much less with the required enablement.

In the first section of this response to the obviousness rejections, Hogan is discussed, and Patentee incorporates those comments into this section of Patentee's response for obviousness rejections based on McEntire in view of Hogan.

With respect to claim 1, McEntire and Hogan fail to teach or suggest at least the following elements:

a) "an apparatus for testing the weld strength and integrity of an attachment weld;"

b) "moving [the] piston therein inwardly and outwardly as fluid is moved out or in respectively;" and,

c) moving fluid into the cylinder causes the piston to move outwardly to tension the pad eye to test the integrity of the attachment weld.

Below, Patentee discusses example elements that McEntire and Hogan fail to teach or suggest.

| Claim 1 Elements | Do McEntire and Hogan Teach or Suggest Element? |
|---|---|
| 1. An apparatus for testing the weld strength and integrity of an attachment weld, comprising: | No – McEntire discloses an apparatus for testing a concrete anchor. Nothing in McEntire discloses, teaches or suggests testing weld strength or the integrity of a weld, as required by claim 1 of the '322 patent. Hogan fails to disclose, teach or suggest an apparatus for testing weld strength and integrity of an attachment weld.  Thus, the Office Action has failed to show "an apparatus for testing weld strength and integrity of a well." |
| a framework including a base, top, and side pieces; | No – In order for the McEntire Anchor Tester to test a concrete anchor that is "embedded into the earth," cylinder 15 is pressured to set claws 4 and 5 "into the earth up to the support surfaces of feet 2 and 3. *See* McEntire, col. 3, lines 52-55. Phrased differently, McEntire's Anchor Tester is embedded into the ground before the user attempts to test anchor 6 by pulling on it and there is no "top" piece above the cylinder. *See* Fig. 1 of McEntire. Similarly, Hogan fails to disclose a "top" because cylinder 95 is disposed above all of the other structure disclosed in Hogan. *See* Fig. 1 of Hogan. |

| at least one fluid containing cylinder, mounted with the framework, for moving a piston therein inwardly and outwardly as fluid is moved out or in respectively; and | No – McEntire discloses a compressor 17 with a single conduit 16 to actuate piston and cylinder means 14 and 15. Phrased differently, compressor 17 pulls piston 14 to pull test anchor 6 upwardly. *See* McEntire, col. 3, lines 18-25 ("Thus, in operation, after the device is connected to anchor 6 as shown in FIGS. 1 and 2 and piston means 14 is actuated by way of compressor means 17, piston 14 will move outwardly of cylinder means 15 and away from anchor 6 and support means 8 and 9. Since piston 14 is in contact with nut means 18, it will force connecting means 13 in the same direction thereby applying a force to anchor 6 at an angle.") Thus, McEntire's cylinder does not move piston 14 "inwardly and outwardly," only "outwardly." These deficiencies are not remedied by Hogan because Hogan's lug 23 is not a "lifting lug." The '322 patent recites, "[p]ad eyes and lifting lugs are primarily used as an attachment point for any rigging employed to hoist, transport, or secure heavy equipment" (such as drill string piping weighing many tons.) *See* '322 patent, col. 1, lines 18-23. Hogan's lug 23 is not an attachment lug comparable to the lifting lug of claim 1. |
| structure for releasably or permanently attaching a pad eye, lifting lug or other device joined by the attachment weld to another structure; | Neither McEntire, nor Hogan discloses a pad eye, lifting lug or other device joined by an attachment weld to another structure. |
| whereby moving fluid into the cylinder causes the piston to move outwardly to tension the pad eye, lifting lug or other | No – Neither McEntire nor Hogan does teach or suggest "testing the integrity of the welding in a non-destructive manner." In fact, McEntire does not |

| | |
|---|---|
| device to test the integrity of the attachment weld in a non-destructive manner. | disclose welding.   Hogan fails to remedy this deficiency.   In fact, Hogan teaches or suggests applying a "predetermined force" (Hogan, col. 4, lines 46-47) in order to see if the weld fails or does not fail, *i.e.*, a rupture or does not rupture solution; that is, Hogan does not teach or suggest how to test a weld in a "non-destructive manner." |

For any of the foregoing reasons, claim 1 is not obvious over McEntire in view of Hogan.


## Claim 3 is not obvious over McEntire in view of Hogan

As discussed above, claim 3 depends from claim 1 and the Office Action has failed to show that McEntire in view of Hogan teaches or suggests all elements of claim 1.  As such, claim 3 is not obvious over McEntire in view of Hogan. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

Furthermore, Patentee discusses example elements that McEntire and Hogan fail to teach or suggest.

| Claim 3 Elements | Do McEntire and Hogan Teach or Suggest Element? |
|---|---|
| 3.  The apparatus of claim 1, further including: | No – McEntire and Hogan do not disclose, teach or suggest all elements of claim 1. |
| a bridge plate or cross bar, having a left and right end, fixedly attached, on said left and right ends and near the center, to and supported by said beam or the cylinder. | No – The Office Action recites McEntire's legs 7 and 7' as "support beams having a top and bottom end." *See* pages 46-47 of the Request. Accepting this claim construction only for the purpose of argument, the Office Action continues that "McEntire '163 [has] a bridge plate or cross bar (member 10) fixedly attached on its right and left ends and at its center by the frame legs 3 or at cylinder 15." *Id*.  In fact, as |

| | best seen in Figure 2 of McEntire, legs 7 are rotatably (not fixedly) attached to only the left end of member 10. In other words, member 10 is not fixedly attached to and not supported at both its left and right ends. In addition, member 10 is not supported by compressor means 17 because, as seen in Figure 1, compressor 17 does not carry any load because it is separate from member 10. As previously discussed, Hogan fails to remedy this deficiency because Hogan's cylinder 95 does not support any structure. In addition, use of Hogan's "fixedly attached members" would render McEntire pivotally mounted members inoperative. *See* McEntire, Fig. 2, col. 3, lines 3-8 ("FIG. 2 shows the device of FIG. 1 and the angle A at which connecting means 13 is connected to anchor 6.") |
|---|---|

McEntire and Hogan fail to teach or suggest all elements of claims 1 and 3. Therefore, McEntire and Hogan cannot render claim 3 obvious. As such, claim 3 is not obvious over Lemoine in view of Hogan. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

## Claim 6 is not obvious over McEntire in view of Hogan

Claim 6 recites: "[t]he apparatus in claim 3, wherein said bridge plate or cross bar can be angled." As discussed immediately above, McEntire and Hogan do not render claim 3 obvious, and, therefore, cannot render claim 6 obvious, which depends from claims 1and 3. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

**Bauer or McEntire in view of Kriesten, and Eksergian as evidence by Gleeson Pre-AIA 35 U.S.C. § 103(a) re: Claim 5**

Examiner has rejected claim 5 as being rendered obvious by Bauer or McEntire in view of Kriesten and Eksergian as evidenced by Gleeson. Claim 5 depends from claim 3, which, in turn, depends from claim 1. As such, Bauer or McEntire, Kriesten and Eksergian as evidenced by Gleeson must teach or suggest all of the elements of claim 5. As discussed above, Bauer and McEntire fail to disclose all of the elements of claims 1 and 3, and Kriesten or Eksergian, even in view of Gleeson, cannot render obvious Patentee's claim 5 because Kriesten or Eksergian do not cure Bauer's or McEntire's failed teachings on which the Office relies for its obviousness rejections. Accordingly, claim 5 is not obvious over Bauer or McEntire in view of Kriesten and Eksergian as evidenced by Gleeson. *In re Fine*, *supra* (if independent claim is allowable, then so are the dependent claims).

Additionally and alternatively, claim 5, due to its dependence on claim 1, requires that a "cylinder tension the pad eye, lifting lug or other device thereby testing the integrity of the attachment weld." Kriesten, Eksergian and Gleeson all teach or suggest a compressive load. As such, these references would render either Bauer or McEntire inoperative. For example, an anchor cannot be pulled out of the ground by pushing on it. Thus, it is inappropriate to combine these references with either Bauer or McEntire. As such, none of these references, alone or in combination, render claim 5 obvious.

**Further Comments Regarding Other References Submitted by Requester**

Examiner has stated that other references and proposed rejections submitted by Requester are relevant; however, additional rejections based on those references would be redundant and unnecessary. Patentee submits that these additional references are cumulative to the present rejections, and, as such, are overcome for the same reasons stated within this response, among other reasons.

Conclusion

In view of the foregoing, Patentee respectfully requests an early allowance of the reexamination certificate.  Patentee believes no fees are due; however, if any fees are due, Patentee authorizes Commissioner to deduct any required fees from Deposit Account Number 13-2166.

In the event that Examiner believes the application is not in condition for allowance, but that some amendment to the claims would place the application in condition for allowance, a telephone conference with the undersigned or an official interview is requested so that any necessary claim amendments can be considered and the application passed to issuance as soon as possible.

Respectfully submitted,

Date:  July 7, 2014

/Erik J. Osterrieder/
Erik J. Osterrieder
Reg. No.  48,966
Terry L. McCutcheon
Reg. No. 68,122
Malcolm E. Whittaker
Reg. No. 37,965
Matthews Lawson, PLLC
Customer # 021897
2000 Bering, Ste. 700
Houston, TX  77057
Tel.:  (713) 355-4200
Fax:  (713) 355-9689
Attorneys for Patentee