**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE/OPELOUSAS DIVISION**

| | |
|---|---|
| **RANDALL SCARBOROUGH** | * |
| | * **CIVIL ACTION NO.: 6:12-CV-00396** |
| **Plaintiff** | * |
| | * |
| **VERSUS** | * **JUDGE REBECCA F. DOHERTY** |
| | * |
| | * **MAGISTRATE PATRICK J. HANNA** |
| **INTEGRICERT, LLC** | * |
| | * |
| **Defendant** | * |

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY OF U.S. PATENT NOS. 6,848,322 AND 7,284,447**</u>

**May it please the Court**:

Defendant, **IntegriCert, L.L.C.** ("IntegriCert"), has brought a motion for partial summary judgment of invalidity of the asserted claims of U.S. Patent Nos. 6,848,322 (the "´322 patent") and 7,284,447 (the "´447 patent")(collectively, "the '322 and '447 patents " or "the patents in suit"), owned by Plaintiff, Randall Scarborough.  As recited herein the asserted claims of the patents in suit are invalid for want of "novelty" pursuant to 35 U.S.C. § 102 or "obvious" pursuant to 35 U.S.C. § 103 and, accordingly as no genuine issue of material fact exists, IntegriCert is entitled to entry of a judgment of invalidity, and IntegriCert's motion for summary judgment should be granted.

# TABLE OF CONTENTS

I.      **STATEMENT OF THE CASE** ................................................................1

II.     **SUMMARY OF THE ARGUMENT** .....................................................2

III.    **LAW & ARGUMENT** ............................................................................3

   A.   **Legal Standard For Entry of Summary Judgment** ...............................3

   B.   **Legal Standard for Invalidity for Anticipation  or Obviousness** .......5
          a.   *Anticipatory Analysis Under 35 U.S.C. § 102* ...................................5
          b.   *Inherency* ................................................................................5
          c.   *Obviousness Analysis Under 35 U.S.C. § 103* ...............................6

   C.   **Construction of the Claims** .................................................................7

   D.   **Claims 1, 3-19, and 21 of the '322 patent  are Invalid under 35 U.S.C. 102(b) as being Anticipated by U.S. Patent 3,879,991 to Ristow, et. al.** ............................8

   E.   **Claims 1-21 of the '322 patent  are Invalid under 35 U.S.C. 103 as being obvious and unpatentable by U.S. Patent 3,879,991 to Ristow, et. al. in view of U.S. Pat. No. 4,736,633 to Duppong et al. and/or U.S. Patent No. 3,718,039 Bacon and/or U.S. Patent No. 5,548,997 to Bauer and/or U.S. Patent No. 6,398,188 to Salman.** ......................................................................11

   F.   **Claims** 14-15, 27-28, and 30-31 **of the '447 patent are invalid under 35 U.S.C. §103 as being obvious and unpatentable by U.S. Patent 3,879,991 to Ristow, et. al. in view of U.S. Pat. No. 4,736,633 to Duppong et al. and/or U.S. Patent No. 3,718,039 Bacon and/or U.S. Patent No. 5,548,997 to Bauer and/or U.S. Patent No. 6,398,188 to Salman or invalid under 35 U.S.C. §102(b) as being anticipated by one or more of these prior art references.** ...................................13

   G.   **ACTION IN REEXAMINATION PROCEEDINGS NOS. 90/012,840 and 90/012,842** ..................................................................17

IV.    CONCLUSION...............................................................................18

# TABLE OF AUTHORITIES

**Cases**:

*Abbott Labs v. Geneva Pharms., Inc.,* 182 F.3d 1315, 1319, 51 USPQ2d 1307, 1310 (Fed.Cir.1999) ..............................................................................................................................6

*Akron Brass Co. v. Elkhart Brass Mfg. Co.*, 353 F.2d 704, 706 (7th Cir. 1965) ............................7

*Akzo N.V. v. U.S. Intern. Trade Com'n*, 808 F.2d 1471 (C.A.F.C. 1986). ........................................2

*Am. Permahedge, Inc. v. Barcana, Inc.*, 105 F.3d 1441, 1442 (Fed. Cir. 1997) ............................3

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ........3

*Application of Hilmer*, 359 F.2d 859, 863 (C.C.P.A., 1966), citing *Alexander Milburn Co. v. Davis-Bournonville Co.*, 270 U.S. 390 (1926) ...........................................................................5

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578-79 (Fed. Cir. 1996) ...............8

*Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000) ........................3

*Celeritas Technologies, Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998); *see also ATD Corp. v. Lydall, Inc*., 159 F.3d 534, 545 (Fed. Cir. 1998) ........................................5

*Cooper v. Ford Motor Co.*, 748 F.2d 677, 678 (C.A.F.C. 1984) ........................................3

*EWP Corp. v. Reliance Universal Inc.*, 755 F.2d 898, 905 (Fed. Cir. 1985) ..................................5,7

*In re King*, 801 F.2d 1324, 1326, 231 USPQ 136, 138 (Fed.Cir.1986) ..............................6

In re Oelrich, 666 F.2d 578, 581 ..............................................................................6

*In re Schreiber,* 128 F.3d 1473, 1477, 44 USPQ2d 1429, 1431 (Fed.Cir.1997) ............................6

*Johnson Worldwide Associates, Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999) .............8

*King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 857 (C.A.F.C. 1985) ................................6

*KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007) . ..................................................2

*Lear Siegler, Inc. v. Aeroquip Corp.*, 733 F.2d 881, 885 (Fed. Cir. 1984) ......................................4

*Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1566 (C.A.F.C. 1983) ...................4

*MEHL/Biophile Intern. Corp. v. Milgraum*, 192 F.3d 1362 (1999) ...................................6

*Metabolite Laboratories, Inc. v. Laboratory Corp. of America Holdings*, 370 F.3d 1354, 1365

(C.A.F.C. 2004) ....................................................................................................................4

*Newell Companies, Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 763 (Fed. Cir. 1988) .........................4

*Nike Inc. v. Wolverine World Wide, Inc.,* 43 F.3d 644, 646 (Fed. Cir. 1994) ...................................3

*Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716 (Fed. Cir. 1991) ..................................4

*Schering Corp v. Geneva Pharmaceuticals*, 339 F.3d 1373, 1377, 67 U.S.P.Q2d 1664 (Fed. Cir.

2003); Transclean Corp. V. Bridgewood Services, Inc., 290 F.3d 1364,1373 ...............................5

*Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1576 (C.A.F.C. 1991),

*overruled on other grounds*, 566 F.3d 1282 (C.A.F.C. 2009) ..........................................................5, 7

*Semmler v. Am. Honda Co.*, 990 F. Supp. 967, 974 (S.D. Ohio 1997) *aff'd sub nom. Semmler v.

Honda Motor Co.*, 178 F.3d 1308 (Fed. Cir. 1998) ........................................................................4

*Standard Havens Products, Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1369 (Fed. Cir. 1991) ......5

*Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1535 (C.A.F.C. 1983) ..........................7

*Tokai Corp. v. Easton Enterprises, Inc.*, 632 F.3d 1358, 1366 (C.A.F.C. 2011) ...........................4

*Verdegaal Bros., Inc. v. Union Oil Co. of Cal.,* 814 F.2d 628, 630, 2 USPQ2d 1051, 1053

(Fed.Cir.1987) ....................................................................................................................6

*Wyers v. Master Lock Co.,* 616 F.3d 1231, 95 USPQ2d 1525 (Fed. Cir. 2010) .............................7

**Statutes and Rules:**

*35 U.S.C. § 282* ................................................................................................................4,5

*35 U.S.C. § 102(b)* ……………………………………………….........2, 5,9,10,11,17

*35 U.S.C. § 103(a)*……………………………………………………2,6,7,11,12,13

*F.R.C.P  Rule 56(c)* ..…………………………………………………………….3

## I. STATEMENT OF THE CASE

Defendant IntegriCert, LLC ("IntegriCert") is in the business of testing, inspecting, and certifying transit cargo containers, shipping containers, oilfield services equipment, skid units, and wire rope slings for regulatory compliance. The company has office locations in New Iberia and Houma. In conjunction with some of that business, IntegriCert utilizes a portable load testing device of its own design that conforms to its own patent, U.S. Patent No. 7,240,569[1] entitled "Load Test Apparatus for Shipping Containers," issued on July 10, 2007 (the '569 patent")(Rec. Doc. 163-4). The IntegriCert patent is not at issue in this case.

On February 10, 2012,  Randal Scarborough, ("Plaintiff") filed a complaint alleging that IntegriCert, LLC is infringing one or more of the claims of U.S. Patent 6,848,322 (the '322 patent ) and U.S. Patent 7,284,447 (the '447 patents), both for an "Apparatus and Method for Testing Weld Integrity".  The claims of the '322 and '447 patents are directed to apparatuses and methods for testing the integrity or strength of the welds attaching lifting lugs or pad eyes to equipment to be lifted.  The case is set for trial on September 26, 2016.

The apparatuses and methods covered by the '322 and '447 patents were subject to reexamination after which Claims 1-21 of the '322 patent and Claims 1, 14, 15, 27, and 29 of the '447 patent were rejected in a non-final office action. After amendment of the claims '322 and '447 patents, reexamination certificates were issued for the '322[2] and '447[3] patents on December 24, 2014 and January 13, 2015, respectively.  The U.S. Patent and Trademark Office ("USPTO") in subsequent ex parte reexamination proceedings[4] has now found that prior art not of record when the '322 and '447 patents issued, including U.S. Patent 4,736,633 to Duppong et al. and

---

[1] Rec. Doc. 1-3
[2] The '322 patent and its Reexamination Certificate are attached *in globo* as Exhibit A.
[3] The '447 patent and its Reexamination Certificate are attached *in globo* as Exhibit B.
[4] Reexamination Proceeding Ser. No. 90/013,669 for the '332 patent and Reexamination Proceeding Ser. No. 90/013,670 or the '447 patent.

U.S. Patent No. 3,718,039 to Bacon, "raise a substantial new question of patentability".  These reexamination proceedings are currently ongoing.

Defendant IntegriCert brings this Motion for Summary Judgement for Invalidity of the '332 and '447 patents on the basis that, at the time the '322 and '447 patents  issued, that the invention claimed did not meet the requirements of "novelty" under *35 U.S.C. § 102(b)* and "non-obviousness" *35 U.S.C. § 103(a)*.

## II. SUMMARY OF THE ARGUMENT

Under *35 U.S.C. § 103(a)*, "[A] patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made3 to a person having ordinary skill in the art to which said subject matter pertains." In essence, an invention is not novel under *35 U.S.C. § 102* if the invention was previously disclosed, or "anticipated," by a single reference in the prior art.[5]  Even if no *single* piece of prior art discloses every element of a claimed invention, "when a patent [claim] simply arranges old elements with each performing the same function it had been known to perform and yields no more than one would expect from such an arrangement, the combination is obvious under *35 U.S.C. § 103*."[6]

The '322 and '447 patents, which disclose substantially the same device and methods, are directed to non-destructively testing attachment welds between pad eyes, lifting lugs, or other devices attached to another structure by the attachment weld.  Defendant IntegriCert asserts that the devices and methods recited in the claims of the '322 and '447 patents describe devices and techniques that were well known, established, and in common use at the time the patent

---

[5] *Akzo N.V. v. U.S. Intern. Trade Com'n*, 808 F.2d 1471 (C.A.F.C. 1986).
[6] *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007) (internal quotations omitted).

applications were filed.  Consequently, in light of the prior art submitted with this motion, summary judgment on invalidity of the '322 and '447 patents  and a judgment of non-infringement of the '322 and '447 patents  is appropriate and should be granted in favor of IntegriCert even w the court draws all reasonable inferences in favor of the non-movant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. LAW & ARGUMENT

### A.  Legal Standard For Entry of Summary Judgment

*F.R.C.P  Rule 56(c)* provides that a party is entitled to entry of summary judgment: "If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). The Federal Circuit has made it clear that summary judgment is as appropriate in patent cases as in any other case where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See Cooper v. Ford Motor Co.*, 748 F.2d 677, 678 (C.A.F.C. 1984); *Nike Inc. v. Wolverine World Wide, Inc.,* 43 F.3d 644, 646 (Fed. Cir. 1994).

Moreover, a material fact in dispute does not prevent the granting of a motion for summary judgment. Even where material facts are in dispute, summary judgements may be appropriate if, with all factual inferences drawn in favor of the nonmovant, the movant would nonetheless be entitled to judgment as a matter of law. *Am. Permahedge, Inc. v. Barcana, Inc.*, 105 F.3d 1441, 1442 (Fed. Cir. 1997). Even on the issue of obviousness, summary judgment may be granted even though the ultimate legal conclusion of obviousness may be disputed by

Scarborough and even if some facts favor obviousness and some non-obviousness. *Newell Companies, Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 763 (Fed. Cir. 1988); *Semmler v. Am. Honda Co.*, 990 F. Supp. 967, 974 (S.D. Ohio 1997) *aff'd sub nom. Semmler v. Honda Motor Co.*, 178 F.3d 1308 (Fed. Cir. 1998); *see also Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716 (Fed. Cir. 1991).

As movant, IntegriCert bears the burden of overcoming the '322 and '447 patents ' presumption of validity under 35 U.S.C. § 282, and "must prove patent invalidity under the clear and convincing evidentiary standard."[7] Although "the standard of proof does not depart from that of clear and convincing evidence, a party challenging validity shoulders an enhanced burden if the invalidity argument relies on the same prior art considered during examination" by the Patent Office.[8] However, when prior art presented by movant was not considered by the Patent Office in its examination or during reexamination, Plaintiff will not be given the benefit of that "enhanced burden." In fact, "the offering party is more likely to carry the burden of persuasion imposed by *35 U.S.C. § 282* when art *more* pertinent than that considered [in the patent's prosecution or reexamination] is introduced".[9]

Although *35 U.S.C. § 282* presumes a patent is valid, this presumption is "a procedural device which places on a party asserting invalidity the initial burden of going forward to establish a prima facie case on that issue." The court is thus required to begin by accepting the proposition that the patent is valid and then look to IntegriCert for proof to the contrary. [10]

---

[7] *Metabolite Laboratories, Inc. v. Laboratory Corp. of America Holdings*, 370 F.3d 1354, 1365 (C.A.F.C. 2004).
[8] *Tokai Corp. v. Easton Enterprises, Inc.*, 632 F.3d 1358, 1366 (C.A.F.C. 2011).
[9] *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1566 (C.A.F.C. 1983) (emphasis in original).
[10] *Lear Siegler, Inc. v. Aeroquip Corp.*, 733 F.2d 881, 885 (Fed. Cir. 1984).

Moreover, when there is no PTO view on obviousness in view of cited prior art references, IntegriCert's burden of proof under *35 U.S.C. § 282* is more easily carried.[11]

## B. Legal Standard for Invalidity for Anticipation or Obviousness

### a. *Anticipatory Analysis Under 35 U.S.C. § 102*

It is well settled that a claim is anticipated under *35 U.S.C. § 102* if each and every limitation in the claim is found either expressly or inherently in a single prior art reference.[12] An anticipating reference discloses "no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention."[13] In evaluating earlier patents which anticipate later ones, there is no "distinction between claimed and unclaimed disclosure", any part of a patent, including its abstract, its specification and its drawings, may anticipate and invalidate the claims of a later one.[14] An anticipatory prior art patent need not duplicate word for word what is in the claim because anticipation "can occur when a claimed limitation is 'inherent' or otherwise implicit in the relevant reference."[15]

### b. *Inherency*

Inherency does not require that the prior art reference necessarily recognize the inherent limitation, only that the teachings of the cited prior art include the unstated inherent limitation.[16] If the disclosure is sufficient to show that the natural result flowing from the operation as taught in the prior art reference would result in the performance of the questioned

---

[11] *EWP Corp. v. Reliance Universal Inc.*, 755 F.2d 898, 905 (Fed. Cir. 1985)
[12] *Celeritas Technologies, Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998); *see also ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 545 (Fed. Cir. 1998).
[13] *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1576 (C.A.F.C. 1991), *overruled on other grounds*, 566 F.3d 1282 (C.A.F.C. 2009).
[14] *Application of Hilmer*, 359 F.2d 859, 863 (C.C.P.A., 1966), citing *Alexander Milburn Co. v. Davis-Bournonville Co.*, 270 U.S. 390 (1926).
[15] *Standard Havens Products, Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1369 (Fed. Cir. 1991).
[16] *Schering Corp v. Geneva Pharmaceuticals*, 339 F.3d 1373, 1377, 67 U.S.P.Q2d 1664 (Fed. Cir. 2003); Transclean Corp. V. Bridgewood Services, Inc., 290 F.3d 1364,1373.

function in the patent claim, it is well settled that the disclosure should be regarded as sufficient to establish inherency.  Thus, a prior art reference may anticipate when the claim limitation or limitations not expressly found in that reference are nonetheless inherent in it.[17]  The fact that a characteristic is a necessary feature or result of a prior-art embodiment is enough for inherent anticipation, even if that fact was unknown at the time of the prior invention.[18]

Under the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claimed limitations, it anticipates. Inherency is not necessarily coterminous with the knowledge of those of ordinary skill in the art. Artisans of ordinary skill may not recognize the inherent characteristics or functioning of the prior art.[19] The fact that a characteristic is a necessary feature or result of a prior-art embodiment is enough for inherent anticipation, even if that fact was unknown at the time of the prior invention."); *Abbott Labs v. Geneva Pharms., Inc.,* 182 F.3d 1315, 1319, 51 USPQ2d 1307, 1310 (Fed.Cir.1999)

### c.   Obviousness Analysis Under 35 U.S.C. § 103

The United States Supreme Court set forth guidelines[20] for evaluating a Section 103 obviousness challenge which include evaluation of (a) the scope and content of the prior art; (b) the level of ordinary skill in the art; (c) the differences between the claimed invention and the prior art; and so-called "secondary considerations," which may include, for example, a connection between the claimed invention and unexpected commercial success.  When making

---

[17] *In re Oelrich,* 666 F.2d 578, 581; *Verdegaal Bros., Inc. v. Union Oil Co. of Cal.,* 814 F.2d 628, 630, 2 USPQ2d 1051, 1053 (Fed.Cir.1987); *In re Schreiber,* 128 F.3d 1473, 1477, 44 USPQ2d 1429, 1431 (Fed.Cir.1997); *MEHL/Biophile Intern. Corp. v. Milgraum,* 192 F.3d 1362 (1999).
[18] *Abbott Labs v. Geneva Pharms., Inc.,* 182 F.3d 1315, 1319, 51 USPQ2d 1307, 1310 (Fed.Cir.1999)
[19] *In re King,* 801 F.2d 1324, 1326, 231 USPQ 136, 138 (Fed.Cir.1986).
[20] *See Graham v. John Deere Co.*, 383 U.S. 1 (1966). This enumeration of the *Graham* inquiries, which some courts vary in order, is from *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 857 (C.A.F.C. 1985).

an obviousness analysis, the Court may "reach beyond the boundaries of a single reference to provide missing disclosure of the claimed invention.[21]

In making a *Graham* inquiry, the Court must look at the scope of relevant prior art and determine if it is "reasonably pertinent to the particular problem with which the inventor was involved, determine the level of "ordinary skill in the art" of those who practice it, put the pertinent prior art before a "person of ordinary skill in the art" and asks whether, in sum, the claimed improvement is more than the predictable use of prior art elements according to their established functions."[22]   "The aggregation of old parts or elements into a new combination does not constitute invention, regardless of the added convenience or utility of the result achieved."[23]  Patentability under *35 U.S.C. § 103* is a decision made on the basis of a hypothesis: Would the invention have been obvious 'to a person having ordinary skill in the art to which the subject matter pertains' in the light of all knowledge conveyed by 'prior art' as defined by statute and case law.[24]    When making the Graham inquiries the factfinder is not denied recourse to common sense.  A legal determination of obviousness may include recourse to logic, judgment, and common sense, in lieu of expert testimony.[25]

## C.  Construction of the Claims

In construing the claims, this Court must look to the language of the claims themselves. The general rule is, of course, that terms in the claim are to be given their ordinary and accustomed meaning. General descriptive terms will ordinarily be given their full meaning; modifiers will not be added to broad terms standing alone. A court must presume that the terms

---

[21] *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1577 (C.A.F.C. 1991), *overruled on other grounds*, 566 F.3d 1282 (C.A.F.C. 2009).

[22] *Scripps Clinic & Research Foundation, supra,* 927 F.2d @ 1577; *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1535 (C.A.F.C. 1983); *KSR, supra*, 550 U.S. at 418.

[23] *Akron Brass Co. v. Elkhart Brass Mfg. Co.*, 353 F.2d 704, 706 (7th Cir. 1965).

[24] EWP Corp. v.Reliance Universal, Inc., 755 F.2d 898, 907 (Fed.Cir.1985)

[25] *Wyers v. Master Lock Co.,* 616 F.3d 1231, 95 USPQ2d 1525 (Fed. Cir. 2010),

in the claim mean what they say, and, unless otherwise compelled, give full effect to the ordinary and accustomed meaning of claim terms.  *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578-79 (Fed. Cir. 1996). Claim terms cannot be narrowed by reference to the written description <u>unless</u> the language of the claims invites reference to those sources. In other words, there must be a textual reference in the actual language of the claim with which to associate a proffered claim construction.  *Johnson Worldwide Associates, Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999).

Plaintiff has argued and asserts that claim terms of the '322 and '447 patents  not yet construed by the Court must be given their ordinary meaning.  IntegriCert has argued and asserted that claim terms not yet construed by the Court must be construed in light of the written description because the actual language of the claims of the '322 and '447 patent do indeed invite reference to those sources for construction.   Nevertheless, for the proposes of this motion only, IntegriCert suggests that even if the claim terms are given the full scope of their ordinary meaning, the Claims 1-21 of the '322 patent and Claims 14-15, 27-28, and 30-31 of the '447 are invalid under either 35 U.S.C. 102(b) or 35 U.S.C. 103(a) as shown in the Claim Comparison Charts attached as Exhibits C, D, and E.

**D.  Claims 1, 3-19, and 21 of the '322 patent are Invalid under 35 U.S.C. 102(b) as being Anticipated by U.S. Patent 3,879,991 to Ristow, et. al.**

U.S. Patent 3,879,991 to Ulrich Ristow, et al ("Ristow"), attached as Exhibit F, was issued and published on April 29, 1975 was filed on Aug. 24, 1973 over 27 years before the '322 patent  was filed.  Ristow was not disclosed by Scarborough or cited by the patent examiner during the prosecution and first reexamination of the '332 patent.  Ristow discloses an apparatus for testing load bearing members that have to be periodically submitted to legally prescribed load tests in order to ensure the safety of their operation. Each of the limitations of Claims 1 – 21 of

the '322 patent are found either expressly or inherently in Ristow.  Exhibit C is a Claim Comparison Chart that compares Claims 1-21 of the '322 with the disclosures of Ristow for anticipation and invalidity under *35 U.S.C. § 102*.

Referring to Claim Comparison Chart No. 1 of Exhibit C, it can be seen that Ristow teaches a load testing device that discloses all of the limitations of Claim 1 of the '322 patent . While Ristow does not specifically mention "attachment welds", attachment welds are inherent in the teachings of Ristow.  The '322 patent admits that pad eyes are load bearing members that are typically attached by attachment welds as it states that "when drill string piping is off loaded, from a barge or supply boat, the failure of the pad eyes does cause loss of human life due to the extreme weight of the pipe and its uncontrolled fall" and that "pad eyes and lifting lugs are primarily used as an attachment point for any rigging employed to *hoist, transport, or secure* heavy equipment. These pad eyes are typically welded either to the equipment or to some device on which the equipment is transported on." (See '322 patent, Col. 1, lines 17-25.)

Under the principles of inherency set forth above, prior art anticipates a claim if the prior art necessarily includes the unstated claim limitation.[26]  If result flowing from the operation as taught in the prior art reference would result in the performance of the questioned function in the patent claim, the prior art disclosure is sufficient to establish inherency.[27]  Ristow clearly functions the same way as the invention recited in the claim 1 and is intended for the same purpose.  The Ristow device would perform and function in testing a pad eye attachment weld exactly the same way and give the same result as described in Claim 1.  Consequently, the invention recited in Claim 1 of the '322 patent is anticipated by Ristow and invalid because all of the limitations of Claim 1 are disclosed or inherent in Ristow.

---

[26] *Transsclean Corp, supra*  290 F.3d at 1373.
[27] *In re Oelrich, supra* 666 F.2d at 581

This Court's construction ruling defined "pad eyes" and "lifting lugs", respectively, as "an attachment point welded to a structure to be lifted, through which a line or pin can be placed" and "an attachment point welded to a structure to be lifted". [Doc 153 at 16]. The "load bearing members" of Ristow are described as being members in the field of conveyance such as chains, cables, crane hooks, hangers, girders, and the like. (See Ristow Col. 1, Lines 5-10.) From the admissions of the '322 patent and the definitions provided by the Court, the teachings of Ristow inherently include testing attachment welds of "*a pad eye, lifting lug or other device joined by the attachment weld to another structure.*"

The remaining Claim Charts in Exhibit C provide an analysis of Claims 3-19, and 21 and the disclosure of the limitations of these claims by Ristow and the basis for their invaliding under *35 U.S.C. § 102*.  Note that Ristow refers generally to hydraulic cylinders 5 and does not specify the type of cylinder utilized.  A double acting hydraulic cylinder has two fluid attachment points so that the cylinder piston may be moved upward and downward by moving fluid into and out of the cylinder above or below the piston.  This will control the direction in which a force is applied.  Hydraulic cylinders of this type are shown in Duppong and Bauer.  A single acting cylinder is a cylinder with one attachment point and cylinder piston can be pushed in only one direction by the pressurized fluid.  Hydraulic cylinders of this type are shown in Salman.  Double acting cylinders are well known and are inherent in the disclosure of Ristow because a double acting cylinder as the cylinder of Ristow would perform and function in testing a pad eye attachment weld exactly the same way and give the same result as described in Claim 1.



**APPARATUS FOR TESTING LOAD BEARING MEMBERS**

**U.S. PAT. NO. 3,879,991 TO RISTOW**

Framework including: a base, top, side pieces

Top of Framework

At least one fluid containing cylinder

At least one fluid containing cylinder

Side of Framework

Mechanism for moving fluid into cylinder

Base of framework

Structure for releaseably or permanently attaching to a pad eye, lifting lug or other device tested joined by the attachment weld to another structure

*FIG.1*

*FIG.3*

E. **Claims 1-21 of the '322 patent are Invalid under 35 U.S.C. 103 as being obvious and unpatentable by U.S. Patent 3,879,991 to Ristow, et. al. in view of U.S. Pat. No. 4,736,633 to Duppong et al. and/or U.S. Patent No. 3,718,039 Bacon and/or U.S. Patent No. 5,548,997 to Bauer and/or U.S. Patent No. 6,398,188 to Salman.**

While the limitations of Claim 1 of the '322 patent are disclosed and inherent in

Ristow and invalid under 35 U.S.C. § 102, Claim 1 is also invalid for obviousness under *35*

*U.S.C. § 103*.  Exhibit D has Claim Comparison Charts that compare Claims 1-21 of the '322 with the disclosures of Ristow and other prior art for anticipation and invalidity under *35 U.S.C. § 103*.  The Ristow, Duppong, Bacon, and Salman references were not disclosed by Scarborough or cited by the patent examiner during the prosecution and first reexamination of the '332 patent.

Claim Comparison Chart No. 15 of Exhibit D, compares the limitations of Claim 1 of the '322' patent with Ristow and with the disclosures of Duppong, Bacon, and Bauer under *35 U.S.C. § 103*.   Ristow teaches a load testing device that discloses all of the limitations of Claim 1 of the '322 patent but does not specifically mention "pad eyes" or "attachment welds".  Duppong (Exhibit G) discloses non-destructive testing of pad eyes 26 or 26a by applying a tension force from a hydraulic cylinder 278 or 278a.[28]   Bacon (Exhibit H) discloses non-destructive testing of the attachment welds attaching bail ears E.

General common sense would motivate a person (including a person of ordinary skill) to combine the teachings of Ristow with those of Duppong and Bacon, because applying a test force of a desired magnitude for nondestructive testing load bearing members, including pad eyes and attachment welds, was a well-known technique as shown by Duppong and Bacon, as admitted in the '322 patent.  Further, such persons would be motivated to combine Ristow with Duppong and or Bacon to use hydraulic cylinders for testing pad eyes and their attachment welds employed for other uses and equipment because an attachment weld is a common technique of fastening load bearing parts together (*pad eye, lifting lug or other device joined by the attachment weld to another structure*) because hydraulic cylinders are commonly used in testing devices to apply test loads.

12

The remaining Claim Comparison Charts in Exhibit D provide an analysis of Claims 3-19, and 21 and the disclosure of the limitations of these claims by Ristow alone or by the combination of Ristow with the disclosures of Duppong, Bacon, Bauer, and Salman among others and the basis for their invaliding under *35 U.S.C. § 103*.  Again, note that the '322 patent recites limitations directed to a description of double acting cylinders and their controls.  Such limitations are shown in Duppong and Bauer.  Both Duppong and Bauer describe the use of double acting cylinders that extend and retract to provide axial test loads in two axial directions and both provided descriptions and diagrams of fluid flow control mechanisms for doing so.

These descriptions show that the use of such double acting cylinders and their control systems are well-known and persons (including a person of ordinary skill in the art) would find such double acting cylinders an obvious choice for the cylinders of Ristow.  Such persons would be motivated to double acting cylinders in the device of Ristow, among other reasons, to make the Ristow device easier to use because reversing the direction of the cylinder piston would allow the testing device to be more easily reset for a subsequent test and because its versatility would be enhanced as double action cylinders would allow testing loads to be provided in more than one direction.

**F.  Claims** 14-15, 27-28, and 30-31 **of the '447 patent are invalid under 35 U.S.C. §103 as being obvious and unpatentable by U.S. Patent 3,879,991 to Ristow, et. al. in view of U.S. Pat. No. 4,736,633 to Duppong et al. and/or U.S. Patent No. 3,718,039 Bacon and/or U.S. Patent No. 5,548,997 to Bauer and/or U.S. Patent No. 6,398,188 to Salman or invalid under 35 U.S.C. §102(b) as being anticipated by one or more of these prior art references.**

Claim Comparison Chart No. 37 of Exhibit E shows that Ristow teaches a load testing device that discloses all of the limitations of Claim 14 of the '447 patent but does not specifically mention "pad eyes" or "attachment welds" or the structure of a double acting cylinder which would have "a first and second attachment apparatus, wherein a pressurized fluid can enter in or

exhaust from said at least one fluid cylinder".  Duppong discloses non-destructive testing of pad

eyes 26 or 26a by applying a tension force from a double acting hydraulic pull cylinder 278 or

278a.   The hydraulic circuit diagram for the pull cylinder 278 shown in Fig. 13 of Duppong is

presented below.



*The test pull cylinder 278 for testing the padeye is retracted to apply a pulling force against the padeyes by shifting valve V3 into its parallel passage position at which time the tensioning force is displayed on a pressure gauge 308, and/or by the test pull indicator warning device 290 (FIG. 12). The valve V3 is held in its parallel passage position when the desired testing force is reached. The oil is relieved across relief valve RVl, which is setable from operator's station, and returns to tank. This allows for cylinder extension and retraction during pull testing, to compensate for ship movement.* Duppong, Col. 7, lines 26-38

Bauer disclosed a load testing device with a double acting hydraulic cylinder that are

used to provide forces by both extending and retracting a cylinder shaft.  Referring to Bauer, Fig.

9:

*Solenoid operated valve SOV C, also referred to as the diverting valve, is positioned to pass hydraulic fluid from the pump PMP through SOV C and SOV B to the hydraulic cylinder 104 along hydraulic line 116. The pump PMP is then started to pressurize the hydraulic cylinder 104 to place an upwardly directed load on the valve stem 20 which in tum loads the operator to normal closing thrust at the start of the cycle.* Duppong, Col. 5, lines 23 – 30.

14



Fluid attachment

FIG. 9

*The SOV B is then closed and the pump PMP stopped. The SOV C is then positioned so as· to bleed hydraulic fluid from the cylinder through SOV B to the accumulator via line 119. The operator is energized and stem loading is controlled by throttling SOV B to restrict hydraulic cylinder 104 bleed rate as the operator pulls the loading beams 30,32 downward, thus pulling the hydraulic cylinder piston (not shown) downward as well.* Duppong, Col. 5, lines 35-42.

The Bacon discloses non-destructive testing of the attachment welds attaching bail ears E

to a pail.  Referring to the description of Bacon and Figs. 1 and 3:

*In the manufacture of pails having bail ears affixed by welding to the pail bodies, it is essential that the ears be tested to determine whether they are affixed to the pail body securely enough to prevent separation from the pail body when a full pail is lifted by its bail.* Bacon, Col.1, lines 6-10.

\* \* \*

*It is, accordingly, the primary object of our invention to provide a novel testing apparatus whereby bail ears can be tested non-destructively to determine their resistance to predetermined pressures.* Bacon, Col.1, lines 17-20

\* \* \*

*In operation, the device is used by inserting the up turned end 10 of the bar 8 into the bail hole of a bail ear E to be tested and the plate 24 is rested against the side of the pail body B. A predetermined pressure is then applied downwardly manually on the end of the handle 2 remote from its capped end while the opposite side of the pail is held down manually. When the peg 18 reaches the indicia mark indicating the predetermined pressure the bail ear is required to*

15

*withstand and the bail ear remains affixed to the pail body, the ear is considered adequately secured to the pail body and passes inspection. If the weld affixing the bail ear to the pail body is faulty, the car will become detached from the pail body without damage to the pail body before the peg reaches the mark indicating the predetermined pressure.* Bacon, Col. 2, lines 13-29.



Bacon addresses the same problem addressed by the '322 patent.  The testing of attachment welds of the bails or hangers of a load carrying device, in the case of Bacon a pail or bucket.  However, the rationale for the test of Bacon is the same as that of the '322 patent, to prevent separation of the bail or the pad eye from the device to which it is attached by a weld. The '322 patent admits that pad eyes are load bearing members that are typically attached by attachment welds as it states that "when drill string piping is off loaded, from a barge or supply boat, the failure of the pad eyes does cause loss of human life due to the extreme weight of the pipe and its uncontrolled fall" and that "pad eyes and lifting lugs are primarily used as an attachment point for *any* rigging employed to *hoist, transport, or secure* heavy equipment. These pad eyes are typically welded either to the equipment or to some device on which the equipment is transported on." (See '322 patent, Col. 1, lines 17-25.) Emphasis added.

16

A person of ordinary skill would be motivated to combine the teachings of Ristow with those of Bauer and/or Bacon to use hydraulic cylinders including double acting cylinders to apply loads to attachment welds in a desired direction for testing attachment welds, because apply forces of a desired magnitude and in a desired direction (inward or outward) is a commonly utilized technique as evidence by these references and attachment welds as load bearing members are commonly known as shown by Bacon, admitted  in the '447 patent, and implicit in Duppong and Ristow, and because such double acting cylinders would enhance the versatility of the Ristow device.   This rationale for combining Ristow with Bacon and/or Duppong and/or Bauer is applicable for anticipation and obviousness of all of the contested claims of the '447 patent and is equally applicable to the contested claims of the '322.

The subsequent Claim Comparison Charts in Exhibit E provide an analysis of Claims 14-15, 27-28, and 30-31 and the disclosure of the limitations of these claims by Ristow alone or by the combination of Ristow with the disclosures of Duppong, Bacon, Bauer, and Salman among others and the basis for their invaliding under *35 U.S.C. § 103*.

Claim Comparison Chart No. 42 and 43 show that Claims 30 and 31 of the '447 are invalid under *35 U.S.C. § 102(b)* by Duppong alone.

## G.  ACTION IN REEXAMINATION PROCEEDINGS NOS. 90/012,840 and 90/012,842.

The '322 and '447 patents were the subject of Ex Parte Reexamination Proceeding Nos. 90/012,840 and 90/012,842, respectively.   In these proceedings the Patent Examiner issued a Notice of Intent to Issue Ex Parte Reexamination Certificate (Exhibit L for the '322 patent and Exhibit M for the '447 patent).

Those statements read as follows:

> For the '322 patent. (Ex Parte Reexamination Proceeding Nos 90/012,840):

> > Claims 1-21 are patentable.

> > It is agreed with the Patent Owner in his Remarks dated 07/08/14 that none of the references of record teach or suggest an apparatus or method for testing weld strength and integrity of an attachment weld including structure for attaching to a pad eye, lifting lug, or other device joined by the attachment weld to another structure as now amended in claims 1, 13, 20, and 21.

> For the '447 patent. (Ex Parte Reexamination Proceeding Nos 90/012,842):

> > Claims 1, 14, 15, 27 are patentable.

> > It is agreed with the Patent Owner in his Remarks dated 08/01 /14 that none of the references of record teach or suggest an apparatus for non-destructive testing weld strength and integrity of at least one attachment weld including an attachment structure for attaching to a pad eye or other device joined by the at least one attachment weld to another structure as now amended in claim 1; or providing the attachment weld joining a pad eye, lifting lug, or other device to another structure as now amended in claim 14; or providing at least one test piece comprising a pad eye and the attachment weld joining the pad eye to another structure as now amended in claim 27.

As noted above the Examiner in these Reexamination Proceedings did not have the benefit of reviewing Ristow, Duppong, Bacon when making the allowablilty determinations. Duppong and Bacon show devices for non-destructive testing of pad eyes and the weld strength and integrity of attachment welds. The disclosures of Duppong and Bacon alone when added to the prior art in the record render both the '322 and '447 patents unpatentable and invalid.

## V. CONCLUSION

The differences between the subject matter of Claims 1-21 of the '332 and Claims 14-15, 27-28, and 30-31 of the '447 patent and the prior art, cited herein, are such that they are anticipated by the prior art or are such that their subject matter as a whole would have been

obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

For the reasons enumerated above and depicted in the attached Claim Comparison Charts, Claims 1-21 of the '322 patent  and Claims 14-15, 27-28, and 30-31 of the '447 patent are invalid under either Section 102, Section 103, or both, of Title 35.  IntegriCert has cited prior art patents which were not reviewed by the USPTO during prosecution or reexamination of the '322 and '447 patents and which teach the limitations argued by Scarborough during reexamination.  Accordingly, claims 1-21 of the '322 patent and claims 14-15, 27-28, and 30-31 of the '447 patent must fall due to their invalidity.

Respectfully submitted,


_/s/ William W. Stagg_____
William W. Stagg, T.A. (#1613)
Ryan M. Goudelocke  (#30525)
Chase A. Manuel (#34223)
*Durio, McGoffin, Stagg & Ackermann*
220 Heymann Boulevard
Lafayette, Louisiana  70503
Telephone:  (337) 233-0300
Facsimile:  (337) 233-0694
*Counsel for IntegriCert, LLC*


## CERTIFICATE OF SERVICE

I certify that I have, this 13th day of June, 2016, provided all parties with a copy of the foregoing pleading by means of the Western District's CM/ECF electronic filing system.


__**/s/ William W. Stagg/**_____
William W. Stagg (#1613)