IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE/OPELOUSAS DIVISION

| | |
|---|---|
| **RANDALL SCARBOROUGH** | * |
| | * **CIVIL ACTION NO.: 6:12-CV-00396** |
| **Plaintiff** | * |
| | * |
| **VERSUS** | * **JUDGE REBECCA F. DOHERTY** |
| | * |
| | * **MAGISTRATE JUDGE HILL** |
| **INTEGRICERT, LLC** | * |
| | * |
| **Defendant** | * |

## MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EXPERT REPORT AND TESTIMONY OF SAM HAWKINS

Defendant, IntegriCert, L.L.C. ("IntegriCert"), pursuant to Federal Rule of Evidence 702, respectfully requests this Court exclude the expert report and proffered testimony of Samuel P. Hawkins, who has been identified as an expert witness by Plaintiff, Randall Scarborough ("Plaintiff"). The opinions proffered by Mr. Hawkins are not sufficiently reliable to satisfy the Court's gatekeeper function under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Based on his expert report and deposition, Mr. Hawkins fails to recite any experience, education, or training that would qualify him to opine on the subject matter of his report, and merely makes conclusory statements without providing any analysis or methodology to support his conclusions. Accordingly, as set forth below, the Court should exclude Mr. Hawkins' report and proffered testimony.

# **TABLE OF CONTENTS**

I.    **SUMMARY OF PROFFERED CURRICULUM VITAE AND EXPERT REPORT**……...1

II.   **ARGUMENT** ............................................................................................................................1

   A.  **Legal Standard** ...........................................................................................................1

   B.  **Mr. Hawkins Is Not Qualified To Testify As An Expert In This Litigation**......................3

   C.  **Mr. Hawkins's Opinions Are Not a Product of a Reliable Methodology** ..........................8

III.  **CONCLUSION**.......................................................................................................................11

# TABLE OF AUTHORITIES

**Cases:**

*Burleson v. Texas Dept. of Criminal Justice,* 393 F.3d 577, 587 (5th Cir. 2004) (quoting *GE v. Joiner,* 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d. 508 (1997))………………….....…11

*Dart v. Kitchen Bros. Mfg. Co.,* 253 Fed. Appx. 395, 398 (5th Cir. 2007)…..............................2

*Daubert v. Merrell Dow Pharmaceuticals, Inc,* 509 U.S. 579 (1993) ……..................... 2, 8, 10, 11

*Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d. 1351, 1360-61 (Fed. Cir. 2006)............................3, 7

*Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009) (citing *First United Fin. Corp.* v. *U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996)...................................................8

*Guile v. United States,* 422 F.3d. 221, 227 (5th Cir. 2005)………………………….………11

*Hathaway v. Bazany*, 504 F3d 312, 318 (5th Cir. 2007) ..............................................................2

*Sundance, Inc. v. DeMonte Fabricating Ltd.,* 550 F.3d 1356, 1362 n.4 (Fed. Cir. 2008) .............8

*U.S. v. Frabizio*, 445 F. Supp. 2d 152, 160 (D.Mass. 2006)……………………………………8

**Statutes and Rules:**

*LSA-R.S. 37:700(A)(7), (B), (N)*……………………………………….................................3

Federal Rule of Evidence ("Fed. R. Evid.") 702 ………....……………..………….………1, 2, 11

**I. SUMMARY OF PROFFERED CURRICULUM VITAE AND EXPERT REPORT**

Plaintiff has disclosed Samuel P. Hawkins as his technical expert on infringement claims relating to both U.S. Patent No. 6,848,322 ("the '322 Patent) and U.S. Patent No. 7,284,447 ("the '447 Patent).[1] On February 11, 2016, Plaintiff produced Mr. Hawkins' report, including his curriculum vitae. In that CV, he describes no education, licensure, or specialized training in any field of engineering. Instead, he lists experience in the oil and gas industry inapplicable to the qualifications required for an expert in a patent infringement suit, lists a number of issued patents attributed to himself (all of them in fields unrelated to the patents at issue), and asserts misleading association with organizations which operate in a tangential association with the engineering field.

In his report, Mr. Hawkins claims to have incorporated the documents and evidence contained within Exhibit A to his Report, including the prosecution histories and reexamination certificates of the '322 and '447 Patents, the Court's rulings (Rec. Docs. 150, 151, 153, 161, & 162), and a number of memoranda and transcripts of depositions taken. Yet, the report is virtually devoid of any reference to such documents and evidence, let alone application of such to support his conclusions. Rather, the majority of Mr. Hawkins' report is dedicated to claim tables referencing the language of Claims 1, 7, 9, 10, and 12 of the '322 Patent and Claim 14 of the '447 Patent followed by conclusory statements of law regarding IntegriCert's device without any reasoning or analysis.

**II. ARGUMENT**

   **A. Legal Standard**

Federal Rule of Evidence ("Fed. R. Evid.") 702 permits expert testimony if such

---

[1] Rec. Doc. 169 at 1.

1

testimony will be helpful to the trier of fact. An expert may be qualified by knowledge, skill, experience, training or education. Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court indicated that a trial court must act as a gatekeeper by making "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid or whether that reasoning or methodology can be applied to the facts in issue." *Id*. at 592-93. While *Daubert* allows for some flexibility in the determination of whether expert testimony will be allowed, "the existence of sufficient facts and a reliable methodology is in all instances mandatory." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). The court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Dart v. Kitchens Bros. Mfg. Co.*, 253 Fed. Appx. 395, 398 (5th Cir. 2007) (citations omitted). "The proponent of the expert testimony must prove reliability by a preponderance of the evidence." *Id*.

Accordingly, for an expert's testimony to be admissible, the expert must be qualified, the expertise asserted must be relevant to the facts of the case (helpful to the trier of fact), and the expert's testimony must be reliable (based on a valid methodology). *Daubert*, 509 U.S. at 588-89, 591-93; Fed. R. Evid. 702. Mr. Hawkins's "expert opinions" do not demonstrate any of these conditions for admissibility. For these reasons, IntegriCert moves this Court to exclude the expert report of Samuel P. Hawkins and to exclude any proffered testimony of Mr. Hawkins at any trial of this matter.

### B. Mr. Hawkins Is Not Qualified To Testify As An Expert In This Litigation.

In order to qualify as an expert in a patent case, the proffered expert must have the knowledge of a person of ordinary skill in the relevant art. *See Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1360-61 (Fed. Cir. 2006).

Plaintiff in his Rule 26(f) Report for Phase II (Rec. Doc. 169) disclosed Mr. Hawkins as "an engineer with significant experience in the oilfield industry".[2] Yet, Mr. Hawkins in his CV provides no such education, training, or license corroborating such assertion or any background that would be relevant to the products in question.

First and foremost, Mr. Hawkins is not an engineer – directly contradicting the assertions of Plaintiff's Phase II Rule 26(f) report. When questioned at his deposition as to his training and experience qualifying him to opine upon the subject matter involved in this case, Mr. Hawkins affirmed that he has only attended a single semester of college, has taken no coursework in structural analysis, and claims to be an "engineer" without the licensure requisite to use that title.[3] Mr. Hawkins relies on non-descript "on-the-job training" as his lone qualification for his report.[4]

It should be noted that, like architecture, law and other professions, engineering is a matter of licensure and not casual "by trade" usage in this (and every other) state. In fact, "use by any person of the words 'engineer' or 'engineering'… in [his] name or form of business or activity" except by a licensed engineer is a misdemeanor punishable by fine or imprisonment, LSA-R.S. 37:700(A)(7), (B), (N). Mr. Hawkins in his CV, wisely, does *not* hold himself out as an engineer, but Plaintiff in his Rule 26(f) report for some reason does – and falsely.

Mr. Hawkins does attempt to bolster his CV by claiming membership with a number of

---

[2] Rec. Doc. 169 at 1.
[3] Exhibit D at p. 9 line 3, to p. 10 line 1; p. 11 lines 2-4, 15-20; p. 12 lines 7-9; p. 13 lines 8-22.
[4] *Id.*

3

engineering organizations[5], yet a simple search of the Louisiana Professional Engineering and Land Surveying Board, the Louisiana state board established for the purpose of registering licensed engineers in Louisiana,[6] provides no results whatsoever for Mr. Hawkins. The American Association of Drilling Engineers is not, in fact, an association of engineers, but simply of those "employed or interested in the drilling industry."[7] The American Petroleum Institute does not even provide for membership of individuals, much less require they be petroleum or any other kind of engineer.[8,9]

Most plainly, Mr. Hawkins himself admits that when he designs a piece of equipment he has "an engineer look at it to make sure [his] stresses fit what's calculated."[10] In short, Mr. Hawkins thinks things up, and then asks an engineer to figure out whether, and how, they work. In defending his infringement opinion, when asked to calculate and account for the load being placed upon the structures and welds, Mr. Hawkins conceded that he cannot calculate shear and/or tension on a pad eye under a pulling force.[11]

Moreover, Mr. Hawkins has no work experience relevant to the products or technology in question.[12] Mr. Hawkins only has experience in the oil and gas industry "involve[ed] in well-site drilling and "[d]rilling management".[13] When questioned as to his experience in non-destructive testing, Mr. Hawkins admitted that his expertise in non-destructive testing was based "[o]nly through watching [non-destructive testing inspectors] work", he has no

---

[5] Exhibit B, claiming memberships in the American Association of Drilling Engineers and the American Petroleum Institute.
[6] Registry found at https://renewals.lapels.com/Lookup/LicenseLookup.aspx.
[7] See American Association of Drilling Engineers website at http://www.aade.org/about-aade/;American Association of Drilling Engineers Membership Form, attached hereto as Exhibit C.
[8] http://www.americanpetroleuminstitute.com/GlobalItems/GlobalHeaderPages/Membership/FAQ-Membership, Regarding "May individuals join API?" stating "API's individual membership program was discontinued in 1997."
[9] http://www.americanpetroleuminstitute.com/GlobalItems/GlobalHeaderPages/Membership/FAQ-Membership regarding "What are the qualifications for membership?"
[10] Exhibit D at p. 13 line 23 to p. 14 line 1; p. 14 lines 11-17.
[11] Exhibit D at p. 72, lines 14-17.
[12] Exhibit B.
[13] Exhibit B.

experience in metallurgy, and that any determinations made were based upon his reliance on the expertise of other people.[14]

When attempting to assert his experience in applying hydraulic cylinders to impart moment upon a desired connection, Mr. Hawkins once more acknowledged his non-qualification as an engineering expert, stating that he himself did not conduct any analysis but rather again had an educated and properly licensed engineer conduct such investigation.[15] He claims to base his opinion upon industry standards and usages,[16] yet when questioned to elaborate what the standards are, he wholly contradicts himself asserting that the "industry standards" he relies upon are what is "either available in writing or available through a customer" citing a number of organizations having differing non-specific ethereal standards without any recitation to what those standards pertain.[17] Mr. Hawkins cannot recite the standard upon which he bases his opinion because he is not familiar with industry standards. Rather, he bases his opinion upon what he perceives to be industry standards without any actual knowledge of them.

Further, Mr. Hawkins bases his entire qualification upon his background working in the oil and gas industry in well-site drilling and drilling management.[18] As is clear from their face, the '322 and '447 patents do not concern drilling or drilling management. The nearest Plaintiff's patents come to oilfield drilling is the physical proximity of their potential use to a drilling site. Mr. Hawkins' experience in the drilling field has no relevance to the operation of the methods or devices involved for weld testing as disclosed in the '322 and '447 Patents.

He boasts of receiving "over twenty five (25) patents", yet such patents are utterly

---

[14] Exhibit D at p. 10 line 7 to p. 11 line 4; p. 11 lines 15-20.
[15] *Id.* at p. 18 line 7 to p. 19 line 10.
[16] Exhibit B at p. 2.
[17] Exhibit D at p. 40, lines 8-23.
[18] Exhibit B; Exhibit D at p. 8 lines 15-22; p. 14 lines 18-24.

unrelated to the technology at issue in this case.[19] Though commendable, being an inventor of an issued patent does not qualify a person as an expert when the field of the patents they invented do not pertain to the field of art of the patents at issue. This is especially the case here where all of the patents cited by Mr. Hawkins are directed to methods and apparatuses for drilling and drilling equipment.[20] None of the patents held by Mr. Hawkins are directed to testing equipment; none teaches testing of welds, let alone use of hydraulic cylinders to do so, or attachment to pad eyes, lifting lugs, or other devices to another structure.[21]

Mr. Hawkins asserts that he has invented "an apparatus employing hydraulic cylinders to pull oilfield tubulars",[22] referring to U.S. Patent No. 6,752,044 B2 ("the '044 Patent") for a Power Tong Assembly and Method, as a basis for his qualifications as an expert, but such patent merely teaches a general use of a hydraulic cylinder to rotate a frame member to move a pipe before connection of segments of pipe together.[23] Nothing in the '044 Patent teaches application of force by the cylinder to tension or test a weld, nor any use of forces to test anything.

The '322 and '447 Patents employ an hydraulic cylinder to test attachment points such as pad eyes, lifting lugs, or other devices welded to an attachment structure. IntegriCert's device is targeted at testing structures that are to be lifted or suspended such as "shipping containers" wherein the test simulates the application of loads present in the container when it is lifted or suspended. Neither the '322 and '447 Patents nor IntegriCert's device falls within the field of apparatuses and methods for drilling of oil and gas, let alone the field of applying a hydraulic

---

[19] Exhibit B at p. 2; See also Exhibit A.
[20] See list of issued U.S. Patents of Samuel P. Hawkins, Exhibit B.
[21] Exhibit D at p. 15, lines 5-13.
[22] Exhibit B at p. 2.
[23] Exhibit D p. 37, lines 7-18, p. 38, lines 1-6; Exhibit E, "the '044 Patent", Col. 4, Lines 35-43; Col. 6, Lines 30-45; Figs. 1 & 2.

cylinder for lifting and placing a tubular onto a rig floor.[24] Mr. Hawkins being an inventor of "over twenty-five (25) patents" all directed at apparatuses and methods of oil and gas drilling is immaterial and inapplicable to his qualifications as an expert for determining infringement of patents addressed to testing, including testing of welds.

Lastly, Mr. Hawkins has published no scientific articles in his life over approximately thirty-five years of experience[25] and has no experience as a patent infringement expert. In his deposition, Mr. Hawkins attests that he has only testified as a fact witness in a patent litigation offered for testimony as an inventor.[26] This wholly contradicts Mr. Hawkins' own assertion of qualifications in his expert report claiming, "I have served as an expert witness in patent infringement litigation and have testified in court during Markman proceedings".[27] The truth is that Mr. Hawkins has only testified as an expert in a faulty oil-field equipment case. In that case, he provided no structural or engineering analysis of equipment.[28] Even then, in such "expert testimony" Mr. Hawkins relied upon a doctor of engineering to check his calculations.[29]

Because Mr. Hawkins is not an engineer, does not have a degree, license, or any training in engineering, or any experience whatsoever in the field of welding, hydraulic testing, structural or mechanical analysis, or application of tensioning or shear load, and since any experience Mr. Hawkins possesses from his experience in the oil and gas industry is decidedly inapplicable to the state of the art to which the '322 and '447 Patents pertain, he is not a person of ordinary skill in the art at the time of the invention and he is not at all qualified to offer expert opinions in this case. *See also Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1360-1 (Fed.

---

[24] Exhibit D p. 37, lines 7-18, p. 38, lines 1-6.
[25] Exhibit A p. 2; Exhibit D p. 38, lines 7-13
[26] Exhibit D p. 28, line 22 to p. 29, line 12.
[27] Exhibit A at p. 2.
[28] Exhibit D, p. 29, line 17 to p. 30, line 6.
[29] Exhibit D at p. 31, lines 2-19.

Cir. 2006); *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1362 n.4 (Fed. Cir. 2008). *See also U.S. v. Frabizio*, 445 F. Supp. 2d 152, 160 (D.Mass. 2006).

The Court has been presented with absolutely nothing that would qualify Mr. Hawkins as a person of ordinary skill of the '322 and '447 Patent art. The Court has further been presented, both in Plaintiff's Rule 26(f) report and in Mr. Hawkins' own report, with plain misrepresentations concerning Mr. Hawkins' licensure and testimonial experience.

An expert cannot go beyond the scope of his expertise in giving his opinion. *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009) (citing *First United Fin. Corp. v. U.S. Fid. & Guar. Co.,* 96 F.3d 135, 136 (5th Cir.1996). Thus, under its gatekeeping authority pursuant to *Daubert* and *Kumho*, the Court must exclude the report and any proffered testimony of Mr. Hawkins.

### C. Mr. Hawkins's Opinions Are Not a Product of a Reliable Methodology.

Aside from his lack of qualification to arrive at them, the conclusions themselves of Mr. Hawkins' report would be problematic even if rendered by a true expert, because he offers no evidence to support them.

Mr. Hawkins merely creates a table for each patent, in which a first column displays the patent claims, a second column refers to any construction of claim language provided by the Court in its ruling (Rec. Doc. 153), the joint claim construction chart (Rec. Doc. 78), or presenting his own version of "ordinary meaning" for the elements not addressed, and a third column wherein he refers to IntegriCert's '569 Patent including the transcript of the deposition testimony of Jarrod Segura.[30]

Mr. Hawkins' report does not assist the Court in resolving the issue of "infringement"

---

[30] Rec. Doc. 163.

and it fails to be based on any reliable methodology. Rather, the majority of Mr. Hawkins' report is dedicated to mere restatements of the claim language and unexplained conclusions that IntegriCert's device infringes such claim language.[31] At no point in his report does Mr. Hawkins cite to a single treatise or direct attention to a conventional standard of analysis to support his conclusions. Instead, Mr. Hawkins relies only upon and wishes the Court to take him at his word that his opinions are "based upon [his] education, training, knowledge and experience with mechanical tools", "industry standards and usages of certain hardware and related terminology", and his familiarity with "this particular field and the standards and specifications for the use of mechanical devices in this field".[32] Yet, Mr. Hawkins does not even once describe 1) how his limited education, training, knowledge and experience with drilling tools, as discussed above, relate to his analysis; 2) what industry standards and usages he is relying upon; or 3) the background of how he is "familiar" with the "particular field", let alone even name the field of the mechanical devices of the '322 and '447 Patents.[33]

Throughout Mr. Hawkins' report, the reader is never provided any reasoning or rationale for finding infringement of the claims of the '322 and '447 Patents. Rather, Mr. Hawkins blindly agrees with reproductions of the color-coded figures and charts in Plaintiff's Memorandum in Support of his Motion for Summary Judgment on Infringement,[34] a motion which the Court summarily denied based on Mr. Scarborough's failure to show IntegriCert's device met the very first element of "a framework" recited in independent claim 1 of the '322 Patent and independent claim 14 of the '447 Patent (Rec. Doc. 181), stating, "I have reviewed the color-coded

---

[31] Exhibit A at pp. 6-11 & 13-15.
[32] Exhibit A at p. 2-3.
[33] Exhibit A at p. 2-3.
[34] Rec. Doc. 155-1 at p. 12-16; Rec. Doc. 155-12; Rec. Doc. 155-13.

9

figures therein and agree with their contents."[35]

Mr. Hawkins simply recites what the Court has already seen in the filings and discovery of the Parties, failing to apply any analysis or in any way indicate how these citations are relevant or how they disclose each and every claim limitation. Occasionally, Mr. Hawkins does actually put his own words into his table, but only in the form of conclusions.[36] He offers no support, analysis or discussion – only his conclusions and statements without justification or explanation for his conclusion that Claims 1, 7, 9, 10 and 12 of the '322 Patent and Claim 14 of the '447 Patent are infringed.[37]

A brief review of the *Daubert* factors makes it clear that Mr. Hawkins' analysis, if it can be called that, proffered here lacks the requisite evidentiary reliability. No testing methodology or empirical evidence is offered to support Mr. Hawkins' conclusions. Indeed, the report is presented in an entirely conclusory manner – Mr. Hawkins opines, without proffering any specific technical or scientific information as to basis of his opinion, that "IntegriCert [*sic*] apparatus includes each and every element of Claims 1, 7, 9, 10 and 12 and therefore infringes the '322 Patent" and "that IntegriCert's method includes each and every element of Claim 14 and therefore infringes the '447 Patent".[38] The Report provides no basis, analysis, or reasoning upon which Mr. Hawkins' can support his conclusions. *Daubert,* 509 U.S. at 593. Nor does the report cite any published authority in support of its conclusions, much less proffer any evidence of peer review of the causal theory. *Id.*

The lack of any substantive discussion and the repeated inclusion of conclusions without supporting analysis renders Mr. Hawkins's opinion meaningless and wholly unreliable. Mr.

---

[35] Exhibit A at p. 5 & 12.
[36] Exhibit A at p. 6-11, 13-15, e.g.: "it is my opinion that the pivot plates in the IntegriCert device are equivalent to side pieces" at 6 and "The IntegriCert device includes a control mechanism…" at 10.
[37] Exhibit A at p. 5 & 12.
[38] Exhibit A at p. 5 & 12.

Hawkins has proffered no information whatsoever from which the Court can gauge general acceptance of his methodology, since he offers no methodology at all. *Id.* The proffered report thus fails all of the reliability measures outlined by the Supreme Court in *Daubert*. *See Kumho Tire,* 526 U.S. at 157, "[n]othing in either [*Daubert*] or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *See also Burleson v. Texas Dept. of Criminal Justice,* 393 F.3d 577, 587 (5th Cir. 2004)(quoting *GE v. Joiner, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d. 508 (1997)*); *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005).

In light of, as noted above, that Mr. Hawkins does not qualify as an expert or a person of ordinary skill in the art of the '322 and '447 Patents, that he has recited exclusively conclusions without any semblance of analysis regarding infringement, and has not provided any reliable methodology to base his conclusions upon, Mr. Hawkins' conclusions in no way assists the Court and therefore fail the relevancy requirement. Accordingly, all testimony and opinions of Mr. Hawkins are not based on sufficient facts, data, or accepted methodology and therefore cannot be the product of reliable principles and methods and must be excluded. S*ee* Fed. R. Evid. 702.

### III.   CONCLUSION

Coupled with an absence of analysis and his lack of meaningful experience in the field of non-destructive weld testing, or any field related to it, the conclusory statements by Mr. Hawkins in his "expert report" and proffered testimony is useless to the Court and the trier of fact. For the foregoing reasons, the deficiencies presented in Mr. Hawkins' qualifications, Expert Report, and proffered testimony are insurmountable on their face. Mr. Hawkins' Report is not helpful to the determination of the issues before the Court, is far outside the scope of his expertise, presents absolutely no analysis or reasoning to support his conclusions, and is not based upon any

methodology for applying to a determination of infringement of patent claims. IntegriCert therefore respectfully requests that this Court exclude the Report of Mr. Hawkins and any and all further opinions and testimony offered by Samuel P. Hawkins.

Respectfully submitted,
/s/ Ryan M. Goudelocke_____
William W. Stagg, T.A. (No. 1613)
Ryan M. Goudelocke (No. 30525)
Chase A. Manuel (No. 35223)
*Durio, McGoffin, Stagg & Ackermann*
220 Heymann Boulevard, Lafayette, LA  70503
Post Office Box 51308, Lafayette, LA  70505
Telephone: (337) 233-0300
Fax: (337) 233-0694
*Counsel for IntegriCert, L.L.C.*

## CERTIFICATE OF SERVICE

I certify that I have, this 22nd day of June, 2016, provided all parties with a copy of the foregoing pleading by means of the Western District's CM/ECF electronic filing system.

_____/s/ Ryan M. Goudelocke_____
Ryan M. Goudelocke